George W. Burbidge II, #6503
CHRISTENSEN & JENSEN, P.C.
275 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone: (801) 323-5000
George.burbidge@chrisjen.com
*Attorney for Transworld Systems Inc.*

Milo Steven Marsden (4879)
Adam C. Buck (12043)
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, UT  84111
Telephone: (801) 933-7360
marsden.steve@dorsey.com
buck.adam@dorsey.com
*Attorneys for U.S. Bank National Association and NCSLT 2006-3*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| James T. Snarr, *on behalf of Plaintiff and Class*,<br><br>        Plaintiffs,<br><br>v.<br><br>Transworld Systems Inc., U.S. Bank, and National Collegiate Student Loan Trust 2006-3,<br><br>Defendants. | **NOTICE OF REMOVAL**<br><br>Civil Action No.:<br><br>Judge: |

PLEASE TAKE NOTICE that Transworld Systems Inc. ("TSI"), U.S. Bank National

Association ("U.S. Bank"), and National Collegiate Student Loan Trust 2006-3 ("NCSLT 2006-

3" and, together with TSI and U.S. Bank, "Defendants") hereby jointly remove to this Court the State Court Action described below pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, and, as grounds for their removal state as follows:

## I.        STATEMENT OF THE CASE

1.        On December 3, 2020, plaintiff, James T. Snarr, filed a putative class action complaint (the "Complaint") in the Third Judicial District Court of Salt Lake County, Utah, captioned *James T. Snarr, on behalf of Plaintiff and Class v. Transworld Systems Inc., U.S. Bank, and National Collegiate Student Loan Trust 2006-3*, Case No. 200907478 (the "State Court Action").  Attached as Exhibit A are true and correct copies of the process served on TSI and U.S. Bank, along with the pleadings filed in the State Court Action.  No further proceedings have taken place in the State Court Action.

2.        On December 9, 2020, TSI and U.S. Bank were each served with summons and a copy of the Complaint.

3.        On current information and belief, NCSLT 2006-3 has not been served.

4.        The Complaint purports to assert four causes of action, including: Count I - Civil Conspiracy to violate the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq*.; Count II - violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.; Count III - for injunctive relief; and Count IV - common-law invasion of privacy and intrusion upon seclusion.  *See* Complaint, Exh. A, at ¶¶ 80-109.

5.        Plaintiff purports to bring claims on behalf of himself as well as a putative class seeking various individual and class-wide relief, including: (1) "actual damages/statutory damages  against  each  of  the  Defendants,  jointly  and  severally,  including  actual

damages/statutory damages pursuant to the Utah Consumer Sales Practices Act"; (2) "punitive damages in an amount to be determined"; (3) "costs, including attorney fees, pursuant to the Utah Consumer Sales Practices Act"; (4) "injunctive relief"; and (5) "such other and further relief as may be appropriate and proper." *Id*. at Request for Relief, pp. 21-22.

## II.    FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331

6.      This Court has original jurisdiction under 28 U.S.C. § 1331 because this dispute arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., in particular, §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f.  *See* Exh. A at ¶ 92.

## III.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

7.      This Court also independently has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) there exists "minimum diversity" between the parties; (2) the number of putative class members exceeds 100; and (3) the amount in controversy exceeds $5,000,000.  28 U.S.C. §§ 1332(d)(2), (d)(5)(B).

8.      There exists minimum diversity between the parties.  Plaintiff alleges he is a citizen of the State of Utah (*see* Exh. A at ¶ 5), and TSI is a California Corporation with its principal place of business in the State of Illinois.  *See* 28 U.S.C. §§ 1332(d)(2)(A) (Minimum diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant.").

9.      The number of putative class members exceeds 100.  The Complaint defines the putative class as "[t]hose persons in the State of Utah whom the trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by a Trust since December 3, 2016," and contends "NCSLT Trusts, including NCSLT Trust 2006-3, have

sued thousands of consumers nationwide, including hundreds of cases in Utah." *See* Exh. A at ¶¶ 62a, 68.  From December 3, 2016 through December 3, 2020, when the State Court Action was filed, NCSLT 2006-3 communicated directly or indirectly with more than 100 residents of the State of Utah relating to a loan owned by NCSLT 2006-3.

10.     The amount in controversy exceeds $5,000,000.  The Complaint claims that "Defendants do not have the right to collect any sums from the Plaintiff and the Class members because the accounts they sought to collect on do not have the documentation necessary to prove the NCSLT Trust's ownership of the loans." *Id*. at ¶ 2a.  Plaintiff further claims that his loans, and the loans of all Utah residents whom the trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by [the] Trust" "are completely uncollectable."   In addition to damages, Plaintiff seeks injunctive relief "which would enjoin Defendants from collecting debts in the manner described above from the Plaintiff and Class members and from any other person similarly situated." *See* Exh. A at ¶¶ 61, 69j, 99. The outstanding balances and payments made on post-default loans owned by NCSLT 2006-3 with Utah borrowers exceed $7,200,000.

## IV.     COMPLIANCE WITH PROCEDURAL REQUIREMENTS

11.     Removal of the State Court Action is proper under 28 U.S.C. §§ 1441 and 1446.

12.     The State Court Action is pending within the District of Utah.  Therefore, venue is proper in the United States District Court for the District of Utah because this Court embraces the place in which the removed action was pending.  28 U.S.C. § 1441(a).

13.     Because the State Court Action was filed on December 3, 2020 and TSI and U.S. Bank were served with summons and a copy of the Complaint on December 9, 2020, this removal is timely pursuant to 28 U.S.C. 1446(b).

14.     A copy of this Notice of Removal is being served upon plaintiff and will concurrently be filed in the State Court Action.

**V.     CONCLUSION**

By this Notice of Removal, Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections they may have to this action. Defendants intend no admission of fact, law, or liability by this Notice and expressly reserve all defenses, motions, and/or pleas.

DATED: December 30, 2020                    CHRISTENSEN & JENSEN, P.C.

*/s/ George W. Burbidge II*
George W. Burbidge II
*Attorney for Transworld Systems Inc.*

DORSEY & WHITNEY LLP

/s/ *Adam C. Buck*
Milo Steven Marsden
Adam C. Buck
*Attorneys for U.S. Bank and NCSLT 2006-3*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 30, 2020, a copy of the foregoing Notice of

Removal was electronically filed with the Clerk of the Court, United States District Court

for the District of Utah, and served via CM/ECF and Email upon the following:

Daniel M. Baczynski
BACZYNSKI LAW, PLLC
12339 S. 800 E., Suite 101
Draper, UH 84020
Telephone: (708) 715-2234
Email: dan@bskilaw.com

*/s/ George W. Burbidge II*
George W. Burbidge II

# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
12/09/2020
CT Log Number 538718535

TO:  Erik Podbutzky
Transworld Systems Inc.
500 Virginia Dr Ste 514
Fort Washington, PA 19034-2707

RE:  **Process Served in Utah**

FOR:  Transworld Systems Inc.  (Domestic State: CA)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JAMES T SNARR, etc., Pltf. vs. Transworld Systems Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 200907478 |
| **NATURE OF ACTION:** | - |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Midvale, UT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/09/2020 at 12:02 |
| **JURISDICTION SERVED :** | Utah |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/09/2020, Expected Purge Date: 12/14/2020 |
| | Image SOP |
| | Email Notification,  Erik Podbutzky  lawsuits@tsico.com |
| | Email Notification,  Richard Drezek  legal.review@tsico.com |
| | Email Notification,  James Schultz  jschultz@sessions-law.biz |
| | Email Notification,  Lori Schmitt  lschmitt@sessions.legal |
| | Email Notification,  Diana Orellana  dorellana@sessions.legal |
| | Email Notification,  Donielle Lambert  dlambert@sessions.legal |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>1108 E. South Union Avenue<br>Midvale, UT 84047<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

 **CT Corporation**

**Service of Process Transmittal**
12/09/2020
CT Log Number 538718535

**TO:**     Erik Podbutzky
            Transworld Systems Inc.
            500 Virginia Dr Ste 514
            Fort Washington, PA 19034-2707

**RE:**     **Process Served in Utah**

**FOR:**    Transworld Systems Inc.  (Domestic State: CA)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Date: 12/7   Time: 11:45
Allen Rollins Deputy Constable Washington County
Private Investigator #A103345
Statewide Process Servers 801-809-4133
PO Box 845 West Jordan UT 84084

Daniel M. Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
12339 S. 800 E., Ste 101
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com
Attorney for Plaintiffs and Class

---

## THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| JAMES T. SNARR,<br><br>On behalf of Plaintiff and Class,<br><br>vs.<br><br>TRANSWORLD SYSTEMS, INC.; U.S. BANK; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3,<br><br>Defendants. | **SUMMONS**<br><br>Case No: 200907478<br><br>Judge: Hon. JAMES GARDNER |

The State of Utah to:      RE:   TRANSWORLD SYSTEMS, INC.
                                               CT CORPORATION
                                               1108 E. South Union Ave.
                                               Midvale, UT 84047

You are summoned and required to answer the attached Complaint. Within 21 days after service of this summons, you must file your written answer with the clerk of the court at the court address shown above. Within that same time, you must mail or deliver a copy of your answer to the party or the party's attorney at the address shown above. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint, which has been filed with the clerk of the court.

DATED: December 3rd, 2020.

/s/      Daniel Baczynski
Attorneys for Plaintiff and Class Members

1

Daniel M. Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
12339 S. 800 E., Ste 101
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com
*Attorneys for Plaintiff*

## THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMES T SNARR, <br><br> On behalf of Plaintiff and Class, <br><br> vs. <br><br> TRANSWORLD SYSTEMS, INC.; U.S. BANK; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, <br><br> Defendant. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Case No: <br><br> Judge: |

Plaintiff JAMES T SNARR, by and through his attorney of record, makes a demand for a jury trial and complains of Defendants as follows:

### INTRODUCTION

1. The Defendants have worked together and collectively orchestrated to illegally collect and attempt to collect allegedly owed debts. The issue has already been litigated and resolved against by a court of competent jurisdiction in a decision that estops the Defendants from contesting their liability.

2. Specifically, the Defendants knew but recklessly disregarded:

   a. The Defendants do not have the right to collect any sums from the Plaintiff and the Class members because the accounts they sought to collect on do not have the documentation necessary to prove the NCSLT Trust's ownership of the loans.

1

b. The Defendants do not have the right to flood the courts with consumer debt collection actions, under the color of law, based upon records they know are unreliable and are otherwise infected with inaccurate information.

c. National Collegiate Student Loan Trust was not licensed as a collection agency in the State of Utah and therefore all collection activity, including the filing of collection actions, was unlawful.

d. Notwithstanding this knowledge, as part of their pattern and practice related to their unfair, deceptive, or otherwise unconscionable debt collection practices, Defendants act through their affiliates and authorized agents to collect and attempt to collect on the hundreds and thousands of purported consumer debts they acquire for pennies on the dollar of what they claim is due

3. Here, the debts the Defendants are attempting to collect upon are (i) non-governmental loans (ii) that originated for student borrowers with co-signers.

4. As a direct and proximate result of the Defendants acts and omissions, the Plaintiff and Class members have sustained damages and losses in the form of incurred out of pocket expenses to determine his rights and responsibilities about whether the debt was legally owed. Plaintiff and the Class members are also entitled to statutory damages and injunctive relief.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff James Snarr is a citizen of the State of Utah and a signer on the loan at issue in this matter.

6. Defendant Transworld Systems, Inc. ("Transworld") is a debt collector which acts on behalf of US Bank for the NCSLT Trust and is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts allegedly owed to others. Transworld does business in the State of Utah. In addition:

2

a. Transworld is a debt collector as defined in the FDCPA. It acquired the alleged consumer loan accounts of the Plaintiff and putative class members at a time when it knew they were in default on or about November 1, 2014. Among the debts Transworld collects are "private student loans" allegedly owed to the NCSLT Trusts.

b. Transworld is managed by a Board of Directors.

c. To carry-out part of its consumer collections business, it also operates and manages an Attorney Network business unit, that files debt collection lawsuits in Utah and nationwide to collect on behalf of the NCSLT Trusts.

d. Transworld is a licensed Utah collection agency.

e. Transworld is subject to the Fair Debt Collection Practices Act and Utah Consumer Sales Practices Act.

7. Defendant National Collegiate Student Loan Trust 2006-3 is a Delaware statutory trust, found and existing pursuant to the laws of the state of Utah for the purposes of acquiring purported consumer debt.

8. Defendant U.S. Bank, NA is a National Banking Association which does business in Utah.

9. U.S. Bank National Association serves as the "indenture trustee" for the NCSLT 2006-3 Trust. U.S. Bank's role in the trusts is not related to its consumer banking activities whatsoever.

10. U.S. Bank was designated as a Back-Up Special Servicer to the Trusts, a Back-Up to First Marblehead Education Resources, Inc. ("FMER"). In 2012, FMER resigned as Special Servicer and US Bank assumed that role.

11. U.S. Bank, rather than perform as Special Servicer, delegated its responsibilities, negligently, to a company named Turnstile Capital Management, LLC ("Turnstile"). US Bank, directly or

through Turnstile, had the duty to properly supervise and control the activities of Transworld and its Attorney Network, and for breach of that duty is vicariously liable for the torts and other wrongful conduct committed against Plaintiff and others in Utah by Transworld and/or its Attorney Network.

12. Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trusts, by way of a Verified Amended Complaint against U S. Bank, sued U.S. Bank, Turnstile, and GSS Data Services, Inc. and made, among others, the following allegations which, on information and belief, after investigation, Plaintiff asserts are accurate, and on information and belief reallege:

13. ¶45 "Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits."

14. ¶46. "To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . . .'"

15. ¶47. "U.S. Bank's duties further included monitoring the performance of Turnstile and replacing it if it was deficient or negligent in performing its duties. As set forth herein,

Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor Turnstile's performance and failed to replace Turnstile as Subservicer.

16. The remainder of the allegations as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank was in a position to prevent and avoid the unfair and deceptive acts and practices performed by Transworld, and the attorneys from Transworld's Attorney Network acting in Utah and elsewhere, that U.S. Bank knew of and was fully informed about said unfair and deceptive acts and practices being performed in Utah and elsewhere, that U.S. Bank had a duty to prevent and avoid such unfair and deceptive acts and practices, and that U.S. Bank negligently and/or grossly negligently and/or intentionally, failed to prevent such unfair and deceptive acts and practices in Utah and elsewhere, and in fact aided and abetted the commission of such unfair and deceptive acts and practices in Utah and elsewhere by Transworld and the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Utah and elsewhere.

17. The doctrine of respondeat superior applies to U.S. Bank, and renders it responsible for the wrongful conduct of Transworld in Utah and elsewhere as herein alleged and for the wrongful actions of the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Utah and elsewhere.

18. U.S. Bank and Transworld were fully aware, that the (variously Schedule 1, Schedule 2, or Schedule 3; collectively the "Loan Schedules") Loan Schedules do not exist. Despite that knowledge, Transworld, with the knowledge and consent of U.S. Bank, has continued in many cases, in Utah and elsewhere, to file affidavits and/or declarations under oath which falsely and knowingly testify that such schedules do exist, and that the affiant or declarant has personal knowledge of their existence.

5

19. U.S. Bank, and Transworld, knew that the declarations and affidavits submitted to support claims made in the name of NCSLT Trusts concerning loan documentation were false.

20. In fact, Transworld created false documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and Transworld, through its employees and through its Attorney Network, falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine loan documents and that the attorney, affiant or declarant had personal knowledge of their authenticity.

21. U.S. Bank has been fully aware of the Transworld Consent Order issued by the Consumer Financial Protection Bureau ("CFPB") and fully aware of the unfair and deceptive acts and practices by Transworld and U.S. Bank permitted, consented to, and aided and abetted those unfair and deceptive acts and practices.

22. U.S. Bank was, and is, bound by the Transworld Consent Order issued by the CFPB. In fact, that order imposed both affirmative and prohibitory duties upon U.S. Bank, and U.S. Bank has failed and/or refused to act in accordance with its duties under said Transworld Consent Order. The failure of U.S. Bank to act in accordance with its duties under the Transworld Consent Order, and to ensure and enforce Transworld's compliance with that Consent Order, establish that US Bank's consent to, and aiding and abetting in the commission of, unfair and deceptive acts and practices by Transworld were willful and knowing.

23. The actions, and non-actions of US Bank in consenting to, and aiding and abetting, the unfair and deceptive acts and practices of Transworld are themselves unfair practices in violation of the UCSPA, when committed by a national banking association in, or related to, its status as a trustee.

6

24. Wilmington Trust Company serves as the "owner trustee" for the Trusts acting solely on behalf of the investors who purchase offered notes or shares of the Trusts. Wilmington Trust's role in the trusts is not related to consumer banking activities whatsoever.

25. At all times relevant to this Complaint, Transworld has acted as the debt collector on behalf of the Trusts and the Trusts expressly authorized Transworld to carry out all work that it has done on their behalf.

26. The Trusts each have an organizational structure that exercises immediate control over the Trusts' activities, has regular meetings in various offices, and decides how to conduct the affairs of the Trusts' business in Utah and elsewhere.

27. The Trusts also work to carry out their business activities through a group of affiliates, partners, and agents.

28. National Collegiate Student Loan Trust 2006-3 is subject to the Utah Consumer Sales Practices Act and Utah Code 12-1-1.

29. This Court has jurisdiction over all civil matters occurring in the State of Utah pursuant to Utah Code § 78A-5-102(1).

30. Venue is proper pursuant to Utah Code § 78B-3-307 where the Defendant does not reside in the State.

31. Defendant is subject to personal jurisdiction within the State of Utah because Defendants engaged in business activities within the State of Utah.

## GENERAL ALLEGATIONS

32. Based on publicly available documents and information and belief, the Trusts are investment vehicles that engaged in the practice of buying large numbers of education-related consumer loans and collecting payments from the borrowers for the benefit of investors. As a collection

7

agency, bureau, or office, the Trusts were required to be licensed under Utah Code 12-1-1 prior to engaging in debt collection activities in the State of Utah. National Collegiate Student Loan Trust 2006-3 operated and continues to operate in the State without a license.

33. The Trusts have been subject to significant litigation, including some discussed infra, and are aware that the assets (i.e. purported student loans) acquired by them subject to this action are unenforceable.

34. As the Trusts have no employees, any actions performed nominally by a Trust or on its behalf are actually performed by its board and management structure, servicers, or by attorneys hired by the servicers. On information and belief, NCO Financial Systems, Inc. was the default servicer for the Trusts until November 1, 2014, at which time Transworld became the new servicer and successor in interest to NCO.

35. Transworld became the default loan servicer for the loan accounts at issue here and the loan accounts of certain of the putative class members at a time when it believed the loans were in default. Transworld became the servicer for the loan accounts and the loan accounts of the putative class members at a time then it knew the records were inaccurate, prone to errors, and otherwise were enforceable. This knowledge was based, upon information and belief, upon the records Transworld received from NCO and the Trusts and their affiliates at the time of the servicing transfer. However, Transworld has concealed this material information from the Plaintiff and putative class member Plaintiffs until a period of twelve months before the commencement of this action.

8

### 1.    Transworld attorney network

36. Based upon public disclosures, and upon information and belief, Transworld retains a national network of law firms and attorneys to pursue delinquent borrowers by filing collection lawsuits in state courts.

37. On information and belief, Transworld is licensed as a collection agency in the State of Utah, and is therefore subject to laws that govern the practice of such agencies, including the federal Fair Debt Collection Practices Act ("FDCPA") and the Utah Consumer Sales Practices Act ("UCSPA").

### 2.    The Trust Files Suit

38. On December 3rd, 2019, James T. Snarr was sued by National Collegiate Student Loan Trust 2006-3 in Case 199402928 in the Fourth District Court, State of Utah.

39. In the case, the NCSLT Trust and Transworld alleged that James T. Snarr, as cosigner on the loan, had liability for a Bank of America loan, and which, the Trust alleged, had subsequently been purchased by the Trust in the form of consolidated loan pools.

40. The complaint filed by the Trust, with the aid and assistance of U.S. Bank and their debt collector Transworld, was unfair and deceptive in multiple ways, as explained herein:

### 3.    The Trusts could not substantiate their ownership of the loans

41. In the case, the NCSLT Trust filed an affidavit signed by Aaron Motin, an employee of Transworld, the NCSLT Trusts' debt collector. Motin's Affidavit claimed that Motin had personal knowledge regarding the records pertaining to the loan at issue, had verified that there was an outstanding principal balance on a loan currently owned by one of the Trusts, and was authorized by Transworld and US Bank, National Association to make the

representations in the affidavit. The Affidavit also claimed that the associated loan had been transferred, sold and assigned to the NCSLT Trusts.

42. The Affidavit notes and allegedly incorporates a trio of exhibits purporting to substantiate the chain of assignment for the loan. Exhibit A was a notice from U.S. Bank identifying itself as the special servicer for a number of the Trusts, including the defendants, and confirming Transworld as the trusts' subservicer. Exhibit B was a document titled "Loan Application/Promissory Note" or "Loan Request /Credit Agreement" allegedly signed by Osure Brown as borrower and Tommy Brown as cosigner and submitted to BOA, along with a document titled "Note Disclosure Statement" that includes additional information about the alleged loan. Exhibit C consisted of a "Pool Supplement" evidencing the purported sale of certain loans from BOA to The National Collegiate Funding LLC, which would in turn sell them to one of the NCSLT Trusts, followed by a "Deposit and Sale Agreement" that purports to record the sale of the pool of loans from National Collegiate Funding to the designated Trust.

43. None of these exhibits were actually attached to the affidavit or submitted into the record.

44. Indeed, no documents were submitted in the case establishing the chain of assignments to the Trust because the Trust does not have documents substantiating its ownership of the debt.

**B.    The Trust's Other Legal Woes Which Further Demonstrate Their Knowledge that They Chose to Conceal from the Plaintiff, Putative Class Members, and State Courts**

45. The Trusts were recently the subject of investigation by the CFPB.

46. On September 18, 2017 a complaint was filed by the CFPB against fifteen National Collegiate Student Loan Trusts, including all of the defendant trusts in the instant matter

(collectively the "the Trusts"), in the United States District Court for the District of Delaware, Cause No. 17-cv-01323-GMS.

47. The same day, the parties jointly moved therein for entry of a consent judgment (ECF No. 3 therein).

48. That consent judgment, having been submitted in federal court by the NCSLT Trusts under FRCP 11, in response to a complaint, is a knowing statement by a party and admission against interest.

49. That consent judgment is incorporated by reference here as if fully set forth.

50. On September 15, 2017, more than two years before filing suit against Snarr, the CFPB issued a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts, filing it as 2017-CFPB-0018.

51. That Consent Order was issued specifically as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of Transworld on behalf of, or in the name of, the NCSLT Trusts identified above.

52. In the Consent Order, the CFPB found that Transworld and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

    a.    Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

11

b.       Filing tens of thousands of affidavits in support of collections lawsuits in

which the affiant swore they had personal knowledge of the debt, when in fact the

affiants frequently merely reviewed data on a computer screen, did not know the source

of the data or how it was collected and maintained, and lacked knowledge of the chain of

assignment records necessary to prove that the relevant Trust owned the loans;

c.       Filing numerous lawsuits without the intent or ability to prove the claims,

if contested.

53. The Consent Order further found that these acts constituted violations of the Consumer

Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

54. In 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust

Agreements), filed suit in Delaware Chancery Court against Transworld and two

codefendants (*The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank

National Association, GSS Data Services Inc., Turnstile Capital Management, LLC and

Transworld Systems, Inc.*; Chancery Court of Delaware, Cause #2018-0167-JRS), for breach

of contract, charging them with costing the Collective NCSLT Trusts billions of dollars and

with causing "wrongful and fraudulent ...... cases being brought against thousands of

borrowers."[1]

55. Specifically, the Collective NCSLT Trusts have accused Transworld of injurious falsehood

for, among other things:

d.       Recklessly making false and misleading representations to borrowers that

the Collective NCSLT Trusts had a right to sue the Plaintiff and putative class members,

when they did not;

---

[1] As of 2020, this suit has been consolidated with three others as *In re National Collegiate Student Loan Trusts Litigation*, C.A. No. 12111-VCS (Del. Ch. Jan. 21, 2020).

e.      Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not;

f.      In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

56. At the time NCSLT Trust 2006-3 filed suit against James T. Snarr on December 3rd, 2020, the Trusts were aware of the CFPB Consent Order, and of their lawsuit against Transworld and other codefendants in Delaware Chancery Court.

57. At the time NCSLT Trust 2006-3 filed suit against James T. Snarr, the Trusts were aware of the reckless and injurious practices of Transworld as explained in the Delaware lawsuit.

58. At the time NCSLT Trust 2006-3 filed suit against James T. Snarr, with the aid and assistance of Transworld, the NCSLT Trust, U.S. Bank, and Transworld were aware of Transworld's reckless and injurious practices. Yet, Transworld, U.S. Banks and the NCSLT Trust continued their unfair and deceptive practices of flooding the courts with hundreds of debt collection actions without a reasonable basis to do so and without the right to due so based on their prior admissions in the CFPB Consent Orders.

59. The actions of the NCSLT Trust, Transworld, and U.S. Bank in regard to James T. Snarr were substantially identical to the actions that the Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act.

60. The NCSLT Trust, U.S. Bank, and Transworld were aware that they lacked the ability to prove their ownership of any loans taken out by James T. Snarr at the time they filed their collection action against the Browns.

61. NCSLT Trust 2006-3 and U.S. Bank are aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. No entity has the Loan Schedules and thus these loans are completely uncollectible.

## II.   CLASS ALLEGATIONS

62. Plaintiff James T. Snarr also sues on behalf of others, pursuant to Utah Rule of Civil Procedure 23 and Utah Code 13-11-20, who are similarly situated to Mr. Snarr as a Utah Class. This Class of similar persons are defined as follows:

   a. **Utah Class: Those persons in the State of Utah** whom the trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by a Trust since December 3, 2016.

63. Excluded as members of the Utah Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants; (ii) a relative of an employee or independent contractor of any of the Defendants; or (iii) is an employee of the Court where this action is pending.

64. The Class definition may be amended or modified.

65. James Snarr proposes to represent himself and the Utah Class defined above.

66. James Snarr qualifies as a person who is a member of the respective Class definition he seeks to represent.

67. The members of the Utah Class are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

14

68. Upon information and belief based on public records the Utah Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that NCSLT Trusts, including NCSLT Trust 2006-3, have sued thousands of consumers nationwide, including hundreds of cases in Utah.

69. There are questions of law and fact common to the Utah Class and, in fact, the wrongs alleged against the Defendants are identical. The common issues include, but are certainly not limited to:

    a.  Whether the Defendants repeatedly filed lawsuits without adequate investigation and without adequate or reasonable investigation by counsel;

    b.  Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents;

    c.  Whether all Defendants were properly licensed as a collection agency, bureau, or office under Utah Code 12-1-1 prior to engaging in collection activity in the State;

    d.  Whether the Defendants both negligently and intentionally caused false evidence to be submitted in student loan collection actions commenced in the state of Utah;

    e.  Whether the Defendants have used false, deceptive or misleading statements in connection with its attempts to collect debts from the Plaintiff;

    f.  Whether the Defendants have made false statements concerning the character, amount or legal status of any debts;

    g.  Whether the Defendants have made any threat to take legal action that they do not have the right to take;

15

h. Whether the Defendants have used any unfair and deceptive means to collect or attempt to collect any debt;

i. Whether the Defendants sued the Plaintiff for a debt not owed to the Defendants;

j. Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt;

k. The Defendants net worth.

l. Whether the Defendants have engaged in the unauthorized practice of law;

m. Whether the Defendants collecting debts in the name of the Trusts deceptive when the Trusts have no employees and act only through their affiliates and agents;

70. The Plaintiff James Snarr's claims are the same as each member of the Utah Class and are based on the same legal and factual theories.

71. There is nothing unusual about the Plaintiff to warrant a material difference between his claims and the claims of the members of the class he seeks to represent.

72. The Defendants' likely defenses (though unavailing) are and will be typical of and the same or identical for each of the Utah Class and will be based on the same legal and factual theories. There are no valid, unique defenses or defenses that will become the major focus of the action.

73. James Snarr will fairly and adequately represent and protect the interests of the class members.

74. James Snarr does not have any interests antagonistic to the members of the class he seeks to represent.

75. James Snarr seeks certification pursuant to Utah Rule of Civil Procedure 23 and Utah Code 13-11-20.

16

76. The Defendants has acted on grounds that applies uniformly across the Utah Class so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the class as a whole. Further, the common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

77. There are no individual questions to establish the claims of the Plaintiff and the Utah members. The claims are based on Defendants' omissions and failure to have either a permissible purpose to collect sums from the class members or attempt to collect sums from the class members.

78. James Snarr's claims are typical of the claims of the Utah Class members.

79. The Utah Class members have suffered damages, losses, and harm similar to those sustained by Snarr in relation to the improper, unfair, and deceptive collect activities of the Defendants in violation of state and federal laws governing their activities.

### III.    CAUSES OF ACTION

#### A.    Count 1:  Civil Conspiracy To Violate The Utah Consumer Sales Practices Act On Behalf of The Named Plaintiff And The Utah Class Members

80.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Utah Class members against each of the Defendants.

81. Defendants have engaged in unfair, deceptive, and unconscionable business practices in violation of the Utah Consumer Sales Practices Act.

17

82. Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Utah.

83. Such practices are likely to be repeated further, as illustrated by, among other things, the recent filings in the District of Delaware District Court and entry of the final and not appealed Transworld Consent Order by the CFPB.

84. Such conduct has damaged Plaintiff and the Utah Class members by without limitation, loss of time away from their work having to defend the Defendants' improper debt collection actions in state court proceedings against them without the right to do so.

85. Such conduct constitutes an unacceptable risk to and/or damages the public interest.

86. Such conduct should be enjoined as authorized under the Utah Consumer Sales Practices Act.

87. Plaintiff and the Utah Class members are entitled to recover actual or statutory damages together with reasonable attorney's fees and reasonable costs.

88. The Defendants have, amongst themselves, expressly or impliedly agreed to undertake unlawful debt collection efforts and/or violations of the Utah Consumer Sales Practices Act.

89. The Defendants, and each of them, have taken at least one overt wrongful act in furtherance of the said conspiracy.

90. The Defendants are jointly and severally liable for the wrongful acts of the others in furtherance of the said conspiracy.

**B.   Count II: Violation of the Fair Debt Collection Practices Act on Behalf Of The Named Plaintiff and Utah Class**

91. Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on his behalf and on behalf of the Utah Class members against the Defendants.

92. Defendants' conduct violates the FDCPA through the following conduct as follows:

18

a.      Transworld acquired its interest in the Named Plaintiff and Utah Class members' consumer loans during a period in which it alleges (directly and indirectly) the loans of the Plaintiff and the Class were in default and were otherwise delinquent pursuant to the loan documents. In fact, Transworld presented to various state courts in relation to the Plaintiff and the class members the sworn testimony under penalties of perjury Transworld's testimony of these facts on behalf of the Trusts. Therefore Transworld is a Debt Collector within the meaning of 15 U.S.C. § 1692a(6). Transworld is also a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity utilizes instrumentalities of interstate commerce or the mails related to the collection of consumer debts on behalf of others including the Trusts.

b.      By communicating with the Plaintiff and the class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiff and the class members, Transworld used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiff and the Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

c.      Transworld's actions and omissions described herein in relation to their knowledge of the Trust's inaccurate and incomplete records which are not sufficient to pursue debt collection actions also constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiff and the Class Members in violation of 15 U.S.C. § 1692f.

d.      Named Plaintiff and the Class members have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred harm,

19

including making it impossible to manage their finances due to Transworld's illegal debt collection practices and direct and indirect actions described herein.

93. Defendants' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiff and Class members.

94. Class members generally are unaware that Defendants' collection practices are unlawful, and that Defendants are using false affidavits to obtain judgments

95. Plaintiff and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

96. Plaintiff and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants' continuing misconduct

97. Preliminary and injunctive relief is necessary to prevent further injury to Plaintiff and Class members

98. Defendants' conduct in violation of the FDCPA has proximately caused and continues to cause injury to Plaintiff and Class members in their business or property.

## C.    Count III: Injunctive Relief

99. Plaintiff and Class members seek injunctive relief from this Court which would enjoin Defendants from collecting debts in the manner described above from the Plaintiff and Class members and from any other person similarly situated.

100.    Specifically, Plaintiff and Class members seek an injunction prohibiting Defendants from its unlawful collection tactics, including but not limited to demanding money that is not owed, using Utah courts to extort payments and monies out of its residents by disregarding court rules and applicable law, misstating the law in collection lawsuits, providing

20

insufficient or false affidavits and attempting to collect grossly inflated and illegal collection fees.

101.   Plaintiff and Class members have reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

102.   Injunctive relief is necessary to prevent further injury to Plaintiff and Class members and to the Utah public as a whole.

103.   Injunctive relief should therefore issue as described herein.

### D.   Count IV: Invasion of Privacy/ Intrusion upon Seclusion Against All Defendants on Behalf of the Utah Class.

104.   Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Utah Class members against the Defendants.

105.   The Defendants have intruded upon the solitude and seclusion of the Plaintiff and members of the Utah Class.

106.   The Plaintiff and the members of the Utah Class each had a reasonable expectation that their solitude would not be intruded by demand letters and lawsuits by the Defendants.

107.   The Defendants intrusion given their knowledge that they did not have any legitimate claims against the Plaintiff and the members of the Utah Class and Defendants actions would be highly offensive to a reasonable person.

108.   The Plaintiff and the members of the State of Utah have been damaged by the Defendants' invasion of their privacy, including their right to solitude and seclusion.

109.   The Defendants' intentional and malicious conduct warrants the imposition of punitive damages.

### IV.    REQUEST FOR RELIEF

A.    WHEREFORE, the Plaintiff prays for the following relief and judgment in his favor

21

and the other members of the Class and against the Defendants for Counts I, III, and IV of the Complaint and against Transworld for Counts I-IV.

    i.    The Court certify a Utah Class of persons defined herein as may be modified or amended;

    ii.    The Court appoint Plaintiff and his counsel to represent the Utah Class certified;

    iii.    The Plaintiff and Utah Class be awarded actual damages against each of the Defendants, jointly and severally, including actual damages/statutory damages pursuant to the Utah Consumer Sales Practices Act;

    iv.    The Plaintiff and Utah Class be awarded punitive damages in an amount to be determined;

    v.    The Plaintiff and the Utah Class be awarded their costs, including attorney fees, pursuant to the Utah Consumer Sales Practices Act;

    vi.    For injunctive relief as described above; and

    vii.    The Plaintiff and Utah Class be awarded such other and further relief as may be appropriate and proper.

        DATED: December 3rd, 2020.

                BACZYNSKI LAW, PLLC

                /s/     Daniel Baczynski_____
                Attorneys for Plaintiff

 CT Corporation

**Service of Process
Transmittal**
12/09/2020
CT Log Number 538718475

TO:     Laurie Swansen
        U.S. Bancorp
        U.S. Bancorp Center, 800 Nicollet Mall
        Minneapolis, MN 55402-

RE:     **Process Served in Utah**

FOR:    U.S. Bank  (Cross Ref Name)  (Domestic State: N/A)
        U.S. Bank National Association (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JAMES T. SNARR, etc., Pltf. vs. TRANS WORLD SYSTEMS, INC., et al., Dfts. // To: U.S. Bank |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 200907478 |
| **NATURE OF ACTION:** | - |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Midvale, UT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/09/2020 at 12:02 |
| **JURISDICTION SERVED :** | Utah |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/09/2020, Expected Purge Date: 12/14/2020<br><br>Image SOP<br><br>Email Notification,  Laurie Swansen  legal.process@usbank.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>1108 E. South Union Avenue<br>Midvale, UT 84047<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Daniel M. Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
12339 S. 800 E., Ste 101
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com
Attorney for Plaintiffs and Class

Date: 12/9   Time: 11:45
Allen Roams Deputy Constable Washington County
Private Investigator #A103345
Statewide Process Servers 801-809-4133
P.O Box 845 West Jordan UT 84084

---

## THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMES T. SNARR,<br><br>On behalf of Plaintiff and Class,<br><br>vs.<br><br>TRANSWORLD SYSTEMS, INC.; U.S. BANK; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3,<br><br>Defendants. | **SUMMONS**<br><br>Case No: 200907478<br><br>Judge: Hon. JAMES GARDNER |

The State of Utah to:        RE:    U.S. BANK
                                          CT CORPORATION
                                          1108 E. South Union Ave.
                                          Midvale, UT 84047

You are summoned and required to answer the attached Complaint. Within 21 days after service of this summons, you must file your written answer with the clerk of the court at the court address shown above. Within that same time, you must mail or deliver a copy of your answer to the party or the party's attorney at the address shown above. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint, which has been filed with the clerk of the court.

DATED: December 3rd, 2020.

                                          /s/      Daniel Baczynski
                                          Attorneys for Plaintiff and Class Members

1

Daniel M. Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
12339 S. 800 E., Ste 101
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com
*Attorneys for Plaintiff*

## THIRD JUDICIAL DISTRICT COURT
## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMES T SNARR,<br><br>On behalf of Plaintiff and Class,<br><br>vs.<br><br>TRANSWORLD SYSTEMS, INC.; U.S. BANK; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No:<br><br>Judge: |

Plaintiff JAMES T SNARR, by and through his attorney of record, makes a demand for a jury trial and complains of Defendants as follows:

### INTRODUCTION

1. The Defendants have worked together and collectively orchestrated to illegally collect and attempt to collect allegedly owed debts. The issue has already been litigated and resolved against by a court of competent jurisdiction in a decision that estops the Defendants from contesting their liability.

2. Specifically, the Defendants knew but recklessly disregarded:

    a. The Defendants do not have the right to collect any sums from the Plaintiff and the Class members because the accounts they sought to collect on do not have the documentation necessary to prove the NCSLT Trust's ownership of the loans.

    b.  The Defendants do not have the right to flood the courts with consumer debt collection actions, under the color of law, based upon records they know are unreliable and are otherwise infected with inaccurate information.

    c.  National Collegiate Student Loan Trust was not licensed as a collection agency in the State of Utah and therefore all collection activity, including the filing of collection actions, was unlawful.

    d.  Notwithstanding this knowledge, as part of their pattern and practice related to their unfair, deceptive, or otherwise unconscionable debt collection practices, Defendants act through their affiliates and authorized agents to collect and attempt to collect on the hundreds and thousands of purported consumer debts they acquire for pennies on the dollar of what they claim is due

3. Here, the debts the Defendants are attempting to collect upon are (i) non-governmental loans (ii) that originated for student borrowers with co-signers.

4. As a direct and proximate result of the Defendants acts and omissions, the Plaintiff and Class members have sustained damages and losses in the form of incurred out of pocket expenses to determine his rights and responsibilities about whether the debt was legally owed. Plaintiff and the Class members are also entitled to statutory damages and injunctive relief.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff James Snarr is a citizen of the State of Utah and a signer on the loan at issue in this matter.

6. Defendant Transworld Systems, Inc. ("Transworld") is a debt collector which acts on behalf of US Bank for the NCSLT Trust and is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts allegedly owed to others. Transworld does business in the State of Utah. In addition:

2

    a.  Transworld is a debt collector as defined in the FDCPA. It acquired the alleged consumer loan accounts of the Plaintiff and putative class members at a time when it knew they were in default on or about November 1, 2014. Among the debts Transworld collects are "private student loans" allegedly owed to the NCSLT Trusts.

    b.  Transworld is managed by a Board of Directors.

    c.  To carry-out part of its consumer collections business, it also operates and manages an Attorney Network business unit, that files debt collection lawsuits in Utah and nationwide to collect on behalf of the NCSLT Trusts.

    d.  Transworld is a licensed Utah collection agency.

    e.  Transworld is subject to the Fair Debt Collection Practices Act and Utah Consumer Sales Practices Act.

7.  Defendant National Collegiate Student Loan Trust 2006-3 is a Delaware statutory trust, found and existing pursuant to the laws of the state of Utah for the purposes of acquiring purported consumer debt.

8.  Defendant U.S. Bank, NA is a National Banking Association which does business in Utah.

9.  U.S. Bank National Association serves as the "indenture trustee" for the NCSLT 2006-3 Trust. U.S. Bank's role in the trusts is not related to its consumer banking activities whatsoever.

10. U.S. Bank was designated as a Back-Up Special Servicer to the Trusts, a Back-Up to First Marblehead Education Resources, Inc. ("FMER"). In 2012, FMER resigned as Special Servicer and US Bank assumed that role.

11. U.S. Bank, rather than perform as Special Servicer, delegated its responsibilities, negligently, to a company named Turnstile Capital Management, LLC ("Turnstile"). US Bank, directly or

through Turnstile, had the duty to properly supervise and control the activities of Transworld and its Attorney Network, and for breach of that duty is vicariously liable for the torts and other wrongful conduct committed against Plaintiff and others in Utah by Transworld and/or its Attorney Network.

12. Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trusts, by way of a Verified Amended Complaint against U S. Bank, sued U.S. Bank, Turnstile, and GSS Data Services, Inc. and made, among others, the following allegations which, on information and belief, after investigation, Plaintiff asserts are accurate; and on information and belief reallege:

13. ¶45 "Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits."

14. ¶46. "To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . . .'"

15. ¶47. "U.S. Bank's duties further included monitoring the performance of Turnstile and replacing it if it was deficient or negligent in performing its duties. As set forth herein,

4

Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor Turnstile's performance and failed to replace Turnstile as Subservicer.

16. The remainder of the allegations as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank was in a position to prevent and avoid the unfair and deceptive acts and practices performed by Transworld, and the attorneys from Transworld's Attorney Network acting in Utah and elsewhere, that U.S. Bank knew of and was fully informed about said unfair and deceptive acts and practices being performed in Utah and elsewhere, that U.S. Bank had a duty to prevent and avoid such unfair and deceptive acts and practices, and that U.S. Bank negligently and/or grossly negligently and/or intentionally, failed to prevent such unfair and deceptive acts and practices in Utah and elsewhere, and in fact aided and abetted the commission of such unfair and deceptive acts and practices in Utah and elsewhere by Transworld and the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Utah and elsewhere.

17. The doctrine of respondeat superior applies to U.S. Bank, and renders it responsible for the wrongful conduct of Transworld in Utah and elsewhere as herein alleged and for the wrongful actions of the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Utah and elsewhere.

18. U.S. Bank and Transworld were fully aware, that the (variously Schedule 1, Schedule 2, or Schedule 3; collectively the "Loan Schedules") Loan Schedules do not exist. Despite that knowledge, Transworld, with the knowledge and consent of U.S. Bank, has continued in many cases, in Utah and elsewhere, to file affidavits and/or declarations under oath which falsely and knowingly testify that such schedules do exist, and that the affiant or declarant has personal knowledge of their existence.

19. U.S. Bank, and Transworld, knew that the declarations and affidavits submitted to support claims made in the name of NCSLT Trusts concerning loan documentation were false.

20. In fact, Transworld created false documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and Transworld, through its employees and through its Attorney Network, falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine loan documents and that the attorney, affiant or declarant had personal knowledge of their authenticity.

21. U.S. Bank has been fully aware of the Transworld Consent Order Issued by the Consumer Financial Protection Bureau ("CFPB") and fully aware of the unfair and deceptive acts and practices by Transworld and U.S. Bank permitted, consented to, and aided and abetted those unfair and deceptive acts and practices.

22. U.S. Bank was, and is, bound by the Transworld Consent Order issued by the CFPB. In fact, that order imposed both affirmative and prohibitory duties upon U.S. Bank, and U.S. Bank has failed and/or refused to act in accordance with its duties under said Transworld Consent Order. The failure of U.S. Bank to act in accordance with its duties under the Transworld Consent Order, and to ensure and enforce Transworld's compliance with that Consent Order, establish that US Bank's consent to, and aiding and abetting in the commission of, unfair and deceptive acts and practices by Transworld were willful and knowing.

23. The actions, and non-actions of US Bank in consenting to, and aiding and abetting, the unfair and deceptive acts and practices of Transworld are themselves unfair practices in violation of the UCSPA, when committed by a national banking association in, or related to, its status as a trustee.

6

24. Wilmington Trust Company serves as the "owner trustee" for the Trusts acting solely on behalf of the investors who purchase offered notes or shares of the Trusts. Wilmington Trust's role in the trusts is not related to consumer banking activities whatsoever.

25. At all times relevant to this Complaint, Transworld has acted as the debt collector on behalf of the Trusts and the Trusts expressly authorized Transworld to carry out all work that it has done on their behalf.

26. The Trusts each have an organizational structure that exercises immediate control over the Trusts' activities, has regular meetings in various offices, and decides how to conduct the affairs of the Trusts' business in Utah and elsewhere.

27. The Trusts also work to carry out their business activities through a group of affiliates, partners, and agents.

28. National Collegiate Student Loan Trust 2006-3 is subject to the Utah Consumer Sales Practices Act and Utah Code 12-1-1.

29. This Court has jurisdiction over all civil matters occurring in the State of Utah pursuant to Utah Code § 78A-5-102(1).

30. Venue is proper pursuant to Utah Code § 78B-3-307 where the Defendant does not reside in the State.

31. Defendant is subject to personal jurisdiction within the State of Utah because Defendants engaged in business activities within the State of Utah.

## **GENERAL ALLEGATIONS**

32. Based on publicly available documents and information and belief, the Trusts are investment vehicles that engaged in the practice of buying large numbers of education-related consumer loans and collecting payments from the borrowers for the benefit of investors. As a collection

7

agency, bureau, or office, the Trusts were required to be licensed under Utah Code 12-1-1 prior to engaging in debt collection activities in the State of Utah. National Collegiate Student Loan Trust 2006-3 operated and continues to operate in the State without a license.

33. The Trusts have been subject to significant litigation, including some discussed infra, and are aware that the assets (i.e. purported student loans) acquired by them subject to this action are unenforceable.

34. As the Trusts have no employees, any actions performed nominally by a Trust or on its behalf are actually performed by its board and management structure, servicers, or by attorneys hired by the servicers. On information and belief, NCO Financial Systems, Inc. was the default servicer for the Trusts until November 1, 2014, at which time Transworld became the new servicer and successor in interest to NCO.

35. Transworld became the default loan servicer for the loan accounts at issue here and the loan accounts of certain of the putative class members at a time when it believed the loans were in default. Transworld became the servicer for the loan accounts and the loan accounts of the putative class members at a time then it knew the records were inaccurate, prone to errors, and otherwise were enforceable. This knowledge was based, upon information and belief, upon the records Transworld received from NCO and the Trusts and their affiliates at the time of the servicing transfer. However, Transworld has concealed this material information from the Plaintiff and putative class member Plaintiffs until a period of twelve months before the commencement of this action.

### 1.   Transworld attorney network

36. Based upon public disclosures, and upon information and belief, Transworld retains a national network of law firms and attorneys to pursue delinquent borrowers by filing collection lawsuits in state courts.

37. On information and belief, Transworld is licensed as a collection agency in the State of Utah, and is therefore subject to laws that govern the practice of such agencies, including the federal Fair Debt Collection Practices Act ("FDCPA") and the Utah Consumer Sales Practices Act ("UCSPA").

### 2.   The Trust Files Suit

38. On December 3rd, 2019, James T. Snarr was sued by National Collegiate Student Loan Trust 2006-3 in Case 199402928 in the Fourth District Court, State of Utah.

39. In the case, the NCSLT Trust and Transworld alleged that James T. Snarr, as cosigner on the loan, had liability for a Bank of America loan, and which, the Trust alleged, had subsequently been purchased by the Trust in the form of consolidated loan pools.

40. The complaint filed by the Trust, with the aid and assistance of U.S. Bank and their debt collector Transworld, was unfair and deceptive in multiple ways, as explained herein:

### 3.   The Trusts could not substantiate their ownership of the loans

41. In the case, the NCSLT Trust filed an affidavit signed by Aaron Motin, an employee of Transworld, the NCSLT Trusts' debt collector. Motin's Affidavit claimed that Motin had personal knowledge regarding the records pertaining to the loan at issue, had verified that there was an outstanding principal balance on a loan currently owned by one of the Trusts, and was authorized by Transworld and US Bank, National Association to make the

9

representations in the affidavit. The Affidavit also claimed that the associated loan had been transferred, sold and assigned to the NCSLT Trusts.

42. The Affidavit notes and allegedly incorporates a trio of exhibits purporting to substantiate the chain of assignment for the loan. Exhibit A was a notice from U.S. Bank identifying itself as the special servicer for a number of the Trusts, including the defendants, and confirming Transworld as the trusts' subservicer. Exhibit B was a document titled "Loan Application/Promissory Note" or "Loan Request /Credit Agreement" allegedly signed by Osure Brown as borrower and Tommy Brown as cosigner and submitted to BOA, along with a document titled "Note Disclosure Statement" that includes additional information about the alleged loan. Exhibit C consisted of a "Pool Supplement" evidencing the purported sale of certain loans from BOA to The National Collegiate Funding LLC, which would in turn sell them to one of the NCSLT Trusts, followed by a "Deposit and Sale Agreement" that purports to record the sale of the pool of loans from National Collegiate Funding to the designated Trust.

43. None of these exhibits were actually attached to the affidavit or submitted into the record.

44. Indeed, no documents were submitted in the case establishing the chain of assignments to the Trust because the Trust does not have documents substantiating its ownership of the debt.

### B. The Trust's Other Legal Woes Which Further Demonstrate Their Knowledge that They Chose to Conceal from the Plaintiff, Putative Class Members, and State Courts

45. The Trusts were recently the subject of investigation by the CFPB.

46. On September 18, 2017 a complaint was filed by the CFPB against fifteen National Collegiate Student Loan Trusts, including all of the defendant trusts in the instant matter

10

(collectively the "the Trusts"), in the United States District Court for the District of Delaware, Cause No. 17-cv-01323-GMS.

47. The same day, the parties jointly moved therein for entry of a consent judgment (ECF No. 3 therein).

48. That consent judgment, having been submitted in federal court by the NCSLT Trusts under FRCP 11, in response to a complaint, is a knowing statement by a party and admission against interest.

49. That consent judgment is incorporated by reference here as if fully set forth.

50. On September 15, 2017, more than two years before filing suit against Snarr, the CFPB issued a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts, filing it as 2017-CFPB-0018.

51. That Consent Order was issued specifically as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of Transworld on behalf of, or in the name of, the NCSLT Trusts identified above.

52. In the Consent Order, the CFPB found that Transworld and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

      a.    Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

      b.      Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

      c.      Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

53. The Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

54. In 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust Agreements), filed suit in Delaware Chancery Court against Transworld and two codefendants (*The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank National Association, GSS Data Services Inc., Turnstile Capital Management, LLC and Transworld Systems, Inc.*; Chancery Court of Delaware, Cause #2018-0167-JRS), for breach of contract, charging them with costing the Collective NCSLT Trusts billions of dollars and with causing "wrongful and fraudulent …… cases being brought against thousands of borrowers."[1]

55. Specifically, the Collective NCSLT Trusts have accused Transworld of injurious falsehood for, among other things:

      d.      Recklessly making false and misleading representations to borrowers that the Collective NCSLT Trusts had a right to sue the Plaintiff and putative class members, when they did not;

---

[1] As of 2020, this suit has been consolidated with three others as *In re National Collegiate Student Loan Trusts Litigation*, C.A. No. 12111-VCS (Del. Ch. Jan. 21, 2020).

e. Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not;

f. In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

56. At the time NCSLT Trust 2006-3 filed suit against James T. Snarr on December 3rd, 2020, the Trusts were aware of the CFPB Consent Order, and of their lawsuit against Transworld and other codefendants in Delaware Chancery Court.

57. At the time NCSLT Trust 2006-3 filed suit against James T. Snarr, the Trusts were aware of the reckless and injurious practices of Transworld as explained in the Delaware lawsuit.

58. At the time NCSLT Trust 2006-3 filed suit against James T. Snarr, with the aid and assistance of Transworld, the NCSLT Trust, U.S. Bank, and Transworld were aware of Transworld's reckless and injurious practices. Yet, Transworld, U.S. Banks and the NCSLT Trust continued their unfair and deceptive practices of flooding the courts with hundreds of debt collection actions without a reasonable basis to do so and without the right to due so based on their prior admissions in the CFPB Consent Orders.

59. The actions of the NCSLT Trust, Transworld, and U.S. Bank in regard to James T. Snarr were substantially identical to the actions that the Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act.

60. The NCSLT Trust, U.S. Bank, and Transworld were aware that they lacked the ability to prove their ownership of any loans taken out by James T. Snarr at the time they filed their collection action against the Browns.

13

61. NCSLT Trust 2006-3 and U.S. Bank are aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. No entity has the Loan Schedules and thus these loans are completely uncollectible.

## II.   CLASS ALLEGATIONS

62. Plaintiff James T. Snarr also sues on behalf of others, pursuant to Utah Rule of Civil Procedure 23 and Utah Code 13-11-20, who are similarly situated to Mr. Snarr as a Utah Class. This Class of similar persons are defined as follows:

   a. **Utah Class: Those persons in the State of Utah** whom the trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by a Trust since December 3, 2016.

63. Excluded as members of the Utah Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants; (ii) a relative of an employee or independent contractor of any of the Defendants; or (iii) is an employee of the Court where this action is pending.

64. The Class definition may be amended or modified.

65. James Snarr proposes to represent himself and the Utah Class defined above.

66. James Snarr qualifies as a person who is a member of the respective Class definition he seeks to represent.

67. The members of the Utah Class are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

14

68. Upon information and belief based on public records the Utah Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that NCSLT Trusts, including NCSLT Trust 2006-3, have sued thousands of consumers nationwide, including hundreds of cases in Utah.

69. There are questions of law and fact common to the Utah Class and, in fact, the wrongs alleged against the Defendants are identical. The common issues include, but are certainly not limited to:

   a. Whether the Defendants repeatedly filed lawsuits without adequate investigation and without adequate or reasonable investigation by counsel;

   b. Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents;

   c. Whether all Defendants were properly licensed as a collection agency, bureau, or office under Utah Code 12-1-1 prior to engaging in collection activity in the State;

   d. Whether the Defendants both negligently and intentionally caused false evidence to be submitted in student loan collection actions commenced in the state of Utah;

   e. Whether the Defendants have used false, deceptive or misleading statements in connection with its attempts to collect debts from the Plaintiff;

   f. Whether the Defendants have made false statements concerning the character, amount or legal status of any debts;

   g. Whether the Defendants have made any threat to take legal action that they do not have the right to take;

    h.   Whether the Defendants have used any unfair and deceptive means to collect or attempt to collect any debt;

    i.   Whether the Defendants sued the Plaintiff for a debt not owed to the Defendants;

    j.   Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt;

    k.   The Defendants net worth.

    l.   Whether the Defendants have engaged in the unauthorized practice of law;

    m.   Whether the Defendants collecting debts in the name of the Trusts deceptive when the Trusts have no employees and act only through their affiliates and agents;

70. The Plaintiff James Snarr's claims are the same as each member of the Utah Class and are based on the same legal and factual theories.

71. There is nothing unusual about the Plaintiff to warrant a material difference between his claims and the claims of the members of the class he seeks to represent.

72. The Defendants' likely defenses (though unavailing) are and will be typical of and the same or identical for each of the Utah Class and will be based on the same legal and factual theories. There are no valid, unique defenses or defenses that will become the major focus of the action.

73. James Snarr will fairly and adequately represent and protect the interests of the class members.

74. James Snarr does not have any interests antagonistic to the members of the class he seeks to represent.

75. James Snarr seeks certification pursuant to Utah Rule of Civil Procedure 23 and Utah Code 13-11-20.

76. The Defendants has acted on grounds that applies uniformly across the Utah Class so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the class as a whole. Further, the common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

77. There are no individual questions to establish the claims of the Plaintiff and the Utah members. The claims are based on Defendants' omissions and failure to have either a permissible purpose to collect sums from the class members or attempt to collect sums from the class members.

78. James Snarr's claims are typical of the claims of the Utah Class members.

79. The Utah Class members have suffered damages, losses, and harm similar to those sustained by Snarr in relation to the improper, unfair, and deceptive collect activities of the Defendants in violation of state and federal laws governing their activities.

### III.    CAUSES OF ACTION

**A.    Count I: Civil Conspiracy To Violate The Utah Consumer Sales Practices Act On Behalf of The Named Plaintiff And The Utah Class Members**

80. Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Utah Class members against each of the Defendants.

81. Defendants have engaged in unfair, deceptive, and unconscionable business practices in violation of the Utah Consumer Sales Practices Act.

17

82. Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Utah.

83. Such practices are likely to be repeated further, as illustrated by, among other things, the recent filings in the District of Delaware District Court and entry of the final and not appealed Transworld Consent Order by the CFPB.

84. Such conduct has damaged Plaintiff and the Utah Class members by without limitation, loss of time away from their work having to defend the Defendants' improper debt collection actions in state court proceedings against them without the right to do so.

85. Such conduct constitutes an unacceptable risk to and/or damages the public interest.

86. Such conduct should be enjoined as authorized under the Utah Consumer Sales Practices Act.

87. Plaintiff and the Utah Class members are entitled to recover actual or statutory damages together with reasonable attorney's fees and reasonable costs.

88. The Defendants have, amongst themselves, expressly or impliedly agreed to undertake unlawful debt collection efforts and/or violations of the Utah Consumer Sales Practices Act.

89. The Defendants, and each of them, have taken at least one overt wrongful act in furtherance of the said conspiracy.

90. The Defendants are jointly and severally liable for the wrongful acts of the others in furtherance of the said conspiracy.

### B.  Count II: Violation of the Fair Debt Collection Practices Act on Behalf Of The Named Plaintiff and Utah Class

91. Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on his behalf and on behalf of the Utah Class members against the Defendants.

92. Defendants' conduct violates the FDCPA through the following conduct as follows:

a.      Transworld acquired its interest in the Named Plaintiff and Utah Class members' consumer loans during a period in which it alleges (directly and indirectly) the loans of the Plaintiff and the Class were in default and were otherwise delinquent pursuant to the loan documents. In fact, Transworld presented to various state courts in relation to the Plaintiff and the class members the sworn testimony under penalties of perjury Transworld's testimony of these facts on behalf of the Trusts. Therefore Transworld is a Debt Collector within the meaning of 15 U.S.C. § 1692a(6). Transworld is also a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity utilizes instrumentalities of interstate commerce or the mails related to the collection of consumer debts on behalf of others including the Trusts.

b.      By communicating with the Plaintiff and the class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiff and the class members, Transworld used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiff and the Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

c.      Transworld's actions and omissions described herein in relation to their knowledge of the Trust's inaccurate and incomplete records which are not sufficient to pursue debt collection actions also constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiff and the Class Members in violation of 15 U.S.C. § 1692f.

d.      Named Plaintiff and the Class members have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred harm,

19

including making it impossible to manage their finances due to Transworld's illegal debt collection practices and direct and indirect actions described herein.

93. Defendants' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiff and Class members.

94. Class members generally are unaware that Defendants' collection practices are unlawful, and that Defendants are using false affidavits to obtain judgments

95. Plaintiff and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

96. Plaintiff and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants' continuing misconduct

97. Preliminary and injunctive relief is necessary to prevent further injury to Plaintiff and Class members

98. Defendants' conduct in violation of the FDCPA has proximately caused and continues to cause injury to Plaintiff and Class members in their business or property.

### C.    Count III: Injunctive Relief

99. Plaintiff and Class members seek injunctive relief from this Court which would enjoin Defendants from collecting debts in the manner described above from the Plaintiff and Class members and from any other person similarly situated.

100.    Specifically, Plaintiff and Class members seek an injunction prohibiting Defendants from its unlawful collection tactics, including but not limited to demanding money that is not owed, using Utah courts to extort payments and monies out of its residents by disregarding court rules and applicable law, misstating the law in collection lawsuits, providing

insufficient or false affidavits and attempting to collect grossly inflated and illegal collection fees.

101.     Plaintiff and Class members have reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

102.     Injunctive relief is necessary to prevent further injury to Plaintiff and Class members and to the Utah public as a whole.

103.     Injunctive relief should therefore issue as described herein.

      **D.**    **Count IV: Invasion of Privacy/ Intrusion upon Seclusion Against All Defendants on Behalf of the Utah Class.**

104.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Utah Class members against the Defendants.

105.     The Defendants have intruded upon the solitude and seclusion of the Plaintiff and members of the Utah Class.

106.     The Plaintiff and the members of the Utah Class each had a reasonable expectation that their solitude would not be intruded by demand letters and lawsuits by the Defendants.

107.     The Defendants intrusion given their knowledge that they did not have any legitimate claims against the Plaintiff and the members of the Utah Class and Defendants actions would be highly offensive to a reasonable person.

108.     The Plaintiff and the members of the State of Utah have been damaged by the Defendants' invasion of their privacy, including their right to solitude and seclusion.

109.     The Defendants' intentional and malicious conduct warrants the imposition of punitive damages.

      **IV.**    **REQUEST FOR RELIEF**

      A.    WHEREFORE, the Plaintiff prays for the following relief and judgment in his favor

21

and the other members of the Class and against the Defendants for Counts I, III, and IV of the Complaint and against Transworld for Counts I-IV.

i.      The Court certify a Utah Class of persons defined herein as may be modified or amended;

ii.     The Court appoint Plaintiff and his counsel to represent the Utah Class certified;

iii.    The Plaintiff and Utah Class be awarded actual damages against each of the Defendants, jointly and severally, including actual damages/statutory damages pursuant to the Utah Consumer Sales Practices Act;

iv.    The Plaintiff and Utah Class be awarded punitive damages in an amount to be determined;

v.     The Plaintiff and the Utah Class be awarded their costs, including attorney fees, pursuant to the Utah Consumer Sales Practices Act;

vi.    For injunctive relief as described above; and

vii.   The Plaintiff and Utah Class be awarded such other and further relief as may be appropriate and proper.

DATED: December 3rd, 2020.

BACZYNSKI LAW, PLLC

/s/      Daniel Baczynski
Attorneys for Plaintiff

22