# EXHIBIT A

## SPECIAL SERVICING AGREEMENT

This Special Servicing Agreement, dated as of March 1, 2009 (this "Agreement"), is entered into by and among First Marblehead Education Resources, Inc. ("FMER"), as the Special Servicer (together with its successors and assigns, the "Special Servicer"), U.S. Bank National Association, as the Back-Up Special Servicer (the "Back-Up Special Servicer") and each of the Trusts listed on Schedule A attached hereto (the "Trusts").

WHEREAS, the Special Servicer, and other subservicing agents appointed from time to time by the Special Servicer, as provided herein, are experts in the management of student loan collections and default prevention services;

WHEREAS, each of the Trusts is appointing the Special Servicer as a Servicer under each Trust's respective Indenture, as listed on Schedule A attached hereto (the "Indentures"), to perform certain limited duties with respect to student loans (the "Student Loans") owned by the Trusts, including Student Loans that are delinquent or defaulted loans ("Delinquent Loans" and "Defaulted Loans," as defined below).

WHEREAS, the Trusts are appointing the Back-Up Special Servicer to serve in such capacity pursuant to the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties agree as follows:

Section 1.    Definitions.   Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Indentures. For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below:

"Defaulted Loan" means any Student Loan as to which any of the following: (a) a TERI Guaranty Event has occurred, (b) the Servicer has determined that a TERI Guaranty Event has occurred and has submitted documents supporting that determination to the Special Servicer or (c) if the Student Loan is no longer subject to a valid TERI Guaranty Agreement, the Servicer has determined that a borrower has defaulted under his respective student loan credit agreement and has notified the Special Servicer of such occurrence.

"Delinquent Loan" means a Student Loan that is at least 31 days past due but is not yet a Defaulted Loan.

Section 2.    Appointment: Special Servicing Duties.

A.    Appointment.   Each of the Trusts hereby hires, designates and appoints the Special Servicer as a Servicer under each Trust's respective Indenture to perform the special servicing duties (as defined below), and the Special Servicer accepts such appointment and agrees to perform such duties with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, in accordance with the terms of this Agreement and each Indenture.

B.    Special Services.   The Special Servicer shall take such actions as it shall deem reasonably necessary or appropriate to administer and oversee Early Awareness Services (as

defined below) with respect to Student Loans as generally described below and the enforcement and collection of Delinquent Loans and Defaulted Loans to maximize the collection of amounts payable on the Student Loans (collectively, the "Special Services"), including without limitation:

(i) Retaining and entering into agreements with licensed collection agencies and other legally authorized persons (the "Subservicers") engaged in providing default prevention services, in form and substance satisfactory to the Special Servicer, pursuant to which the Subservicers, for and on behalf of the applicable Trust, will contact borrowers with respect to the Student Loans, including without limitation borrowers with respect to Delinquent Loans or Defaulted Loans, and seek enforcement and collection of such Loans;

(ii) At the sole discretion of the Special Servicer, (a) performing periodic audits of Subservicers for compliance and performance reviews and (b) providing oversight of the activities of Subservicer with regard to account management, litigation assistance, and/or settlement strategies;

(iii) Replacing any Subservicer who, in the sole judgment of the Special Servicer, is deemed to be deficient or negligent in performing the duties outlined in its subservicing agreement with the Special Servicer;

(iv) Requiring in the applicable subservicing agreement, the Subservicers to provide certain monthly reports to the Special Servicer with respect to Student Loans serviced by such Subservicer, in each case, in form and substance satisfactory to the Special Servicer;

(v) With respect to Student Loans, retaining one or more Subservicers to perform Early Awareness Services. "Early Awareness Services" shall mean such services determined by the Special Servicer to be desirable to reduce the number and percentage of student borrowers becoming subsequently delinquent in the repayment process, including without limitation, services that are intended to alert student borrowers and coborrowers as to their repayment obligations, available borrower benefits (such as ACH automatic payments) and contact information for the Servicer. Early Awareness Services may include both telephonic and mail contacts, as well as address verification and skip tracing;

(vi) With respect to Delinquent Loans, the Special Servicer shall transfer all collection activities from the applicable Servicer to Subservicers who will seek enforcement and collection of such Loans and provide monthly reports to the Special Servicer in form and substance satisfactory to the Special Servicer, provided that the Special Servicer shall not be required to transfer such collection activities if First Marblehead Data Services, Inc. ("FMDS") is the Administrator and FMDS determines that collections would not be maximized on such Delinquent Loans if the collection activities were transferred to Subservicers;

(vii)    With respect to Defaulted Loans, review claim packages as described in subparagraph (xi);

(viii)   With respect to Defaulted Loans that are the subject of a TERI Guaranty Event, as determined by the Special Servicer: (a) submit a claim under the Guaranty Agreement to TERI for the benefit of the Trust, and/or (b) refer the loan for collection by a Subservicer on behalf of such Trust;

(ix)     With respect to Defaulted Loans that are over 180 days delinquent, the Special Servicer will cause the Subservicer to (a) roll or reassign accounts from 180 days delinquent into a default recovery queue for collection efforts and (b) remit weekly to the FMER Collection Account (as hereinafter defined) for the receipt of collections from a Subservicer for the benefit of the respective trusts as their interest may appear, cash collected on all Defaulted Loans serviced by such Subservicer for the Trusts.

(x)      Establishing and maintaining an account or accounts ("FMER Collection Account") in the name of the Indenture Trustee (or its agent or custodian) for benefit of the applicable secured parties of the Trusts under the respective Indentures for the deposit by a Subservicer of net collections on all Defaulted Loans serviced by such Subservicer for the respective Trust and in connection therewith preparing or causing to be prepared such control agreement or agreements as may be necessary or desirable to maintain and preserve the lien and security interest therein of the Indenture Trustee under the respective Indentures;

(xi)     Reviewing claim packages (which packages shall contain the information, reports and documents required in the Program Manual for the related TERI Guaranty Agreement and identified on the checklist or lists attached hereto as Exhibit I) prepared by the Servicer with respect to Defaulted Loans to confirm, on the basis of such review, that (a) Servicer has complied with applicable servicing guidelines and (b) the loan originator has complied with applicable program guidelines;

(xii)    Receiving reports from Servicers and Subservicers related to payments with respect to Delinquent Loans and Defaulted Loans and updating records with respect to Student Loans as interest and other charges accrue and amounts are collected;

(xiii)   Remitting or causing the Subservicer to remit net collections received on Defaulted Loans to the FMER Collection Account;

(xiv)    With respect to Defaulted Loans, the Special Servicer shall transfer all collection activities to Subservicers, provided that the Special Servicer shall not be required to transfer such collection activities if FMDS is the Administrator and FMDS determines that it is likely that collections would

not be maximized on such Defaulted Loans if the collection activities were transferred to Subservicers;

(xv)    Retaining counsel on behalf of the applicable Trust (whether directly or through collection agencies) to further pursue enforcement and collection of Delinquent Loans and Defaulted Loans, including through litigation and bankruptcy or probate proceedings; and

(xvi)    Negotiating any settlement or compromise of any claim with respect to a Defaulted Loan, which in the reasonable judgment of the Special Servicer or the applicable Subservicer is more likely to produce greater proceeds of collection than by virtue of a forbearance, payment arrangement or other accommodation with the borrower.

Section 3.    Incorporation.    As of the date hereof, the definition of "Servicing Agreement" in each of the Indentures shall include this Agreement, the definition of "Servicer" in each of the Indentures shall include the Special Servicer and any Servicing Fee and other fees and expenses payable under this Agreement to the Special Servicer or the Back-Up Special Servicer shall be a "Servicing Fee" for purposes each of the Indentures.

Section 4.    Subservicers.    In carrying out its duties under this Agreement with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, the Special Servicer may retain and employ Subservicers to perform any of the Special Services with respect to the Student Loans owned by any of the Trusts, and to commence any actions or proceedings the Subservicers deem necessary or appropriate in connection with such enforcement or collection efforts on such Student Loans, the costs of such services with respect to Delinquent Loans shall be subject to the Monthly Reimbursement Limit described in Section 5(B) below.

Section 5.    Servicing Fee.    As compensation for the performance of the Special Servicer's obligations under this Agreement and as reimbursement for its expenses related thereto, the Special Servicer shall be entitled to a fee and expense reimbursement (the "Servicing Fee") payable from each Trust in accordance with the related Indenture on each Distribution Date consisting of:

A.    A fixed fee at a rate equal to 1/12 of 0.01% of the aggregate outstanding Pool Balance (for the Student Loans owned by such Trust) as of the last day of the prior calendar month.

B.    Reimbursement by each Trust for all of the Special Servicer's expenses incurred in performing its obligations hereunder for such Trust, including all fees and expenses of all Subservicers and other persons appointed as agents of the Special Servicer pursuant to this Agreement and any other expenses incurred by the Special Servicer on behalf of each Trust, including costs and expenses incurred by the Special Servicer in establishing and maintaining the FMER Collection Account; provided that the fees and expenses of Subservicers with respect to collections on Defaulted Loans shall be paid from such collections prior to remittance to such FMER Collection Account, as described in Section 2(B)(x) and (xiii) above. The reimbursement described in this Section 5(B) with respect to Special Services for Delinquent Loans (but not

with respect to Early Awareness Services for Student Loans or with respect to Special Services for Defaulted Loans) shall not exceed the dollar amount listed for each Trust on Schedule B, attached hereto, in the aggregate per calendar month per respective Trust (the "Monthly Reimbursement Limit"). The reimbursement described in this Section 5(B) with respect to Special Services for Early Awareness Services for Student Loans shall not exceed the dollar amount listed for each Trust on Schedule C, attached hereto, in the aggregate for each such Trust until its respective Indenture is discharged.

C.     The Administrator of each Trust may (and shall, at the direction of the Back-Up Special Servicer if it shall be acting as Special Servicer) arrange direct payments of the Servicing Fee from each Trust to the Subservicers by delivering written instructions to the Indenture Trustee to make such payments, as the same may be calculated, apportioned and charged to each of the Trusts by the Administrator based on the expenses of the Subservicers relating to the Trust's private student loan portfolio. The payment of the Servicing Fee payable by each Trust shall be solely an obligation of such Trust, payable in accordance with the Indentures, and none of the parties hereto, including the Back-Up Special Servicer in such capacity or in its capacity as successor Special Servicer, or any of the Trusts shall be liable to any Subservicer for any amounts owed by FMER pursuant to its arrangements with Subservicers except as provided in Sections 5(A) and (B) hereof to the extent funds are reimbursed by the Trusts.

Section 6.     Term of Agreement; Resignation and Removal of Special Servicer.

A.     This Agreement shall continue in force with respect to each Trust until the dissolution of such Trust and the payment in full of the Notes under the related Indenture, upon which event this Agreement shall automatically terminate with respect to that Trust. The Back-Up Special Servicer's duties and obligations hereunder (including in its capacity as successor Special Servicer, if applicable) and its right to receive compensation as provided in Section 8(F) shall terminate upon the payment in full of the Notes under the related Indenture.

B.     Subject to Section 6(E) of this Agreement, the Special Servicer may resign its duties hereunder by providing the Trusts, the Administrator, the Back-Up Special Servicer and the Indenture Trustee with at least 10 days' prior written notice.

C.     [RESERVED]

D.     Subject to Section 6(E) of this Agreement, the Indenture Trustee shall remove the Special Servicer by delivering to the Special Servicer written notice of termination if any of the following events shall occur:

  (i)     The Special Servicer shall default in the performance of any of its duties under this Agreement and, after written notice of such default, shall not cure such default within forty-five days (or such longer period as shall be reasonably satisfactory to the Indenture Trustee);

  (ii)     A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Special Servicer under any applicable bankruptcy, insolvency or other similar law

now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Special Servicer or any substantial part of its property or order the winding-up or liquidation of its affairs;

(iii)     The Special Servicer shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due; or

(iv)     Either: (a) The First Marblehead Corporation ("FMC") no longer has sufficient assets to pay debts as they come due in the ordinary course of FMC's business or (b) FMC reports in its consolidated financial statements cash, cash equivalents, investments and federal funds sold, in the aggregate, of less than $30 million at the end of any fiscal quarter.

The Special Servicer agrees that if any of the events specified in clauses (ii), (iii) or (iv) of this Section shall occur, it shall give written notice thereof to the Owner Trustee, the Back-Up Special Servicer, each of the Rating Agencies and the Indenture Trustee within two Business Days after the happening of such event. Concurrently with the giving of such notice as provided above (and in any event no later than five (5) Business Days after receipt of notice of termination), the Special Servicer shall (i) notify NCO (or, if applicable, such other Subservicer or Subservicers under such agreements with Subservicers as may then be in effect) of its removal (and provide the Back-Up Special Servicer with a copy of such notice), and (ii) cause the Servicers to provide to NCO (or such other Subservicer or Subservicers) such data files, information and access to Servicer's systems as may be required by the NCO Agreement (or successor agreements) or as may be necessary or desirable for NCO (or such Subservicer or Subservicers) to perform under the NCO Agreement (or such other agreements with Subservicers as may then be in effect).

E.     No resignation or removal of the Special Servicer pursuant to this Section shall be effective until a successor Special Servicer (which Servicer, if other than the Back-Up Special Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Special Servicer is bound hereunder, subject, with respect to the Back-Up Special Servicer, the terms of this Agreement. The appointment of any successor Special Servicer (other than the Back-Up Special Servicer) shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

Section 7.     Action upon Termination, Resignation or Removal.  Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal.  The Special Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Student Loans then in the custody of the Special Servicer pursuant to this Agreement.  In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and the Back-Up Special Servicer and take all reasonable steps requested to assist the Trusts and Back-Up Special Servicer in making an orderly transfer of the duties of the Special Servicer to the Back-Up Special Servicer or other successor Special Servicer, as applicable.

Section 8.     Back-Up Special Servicer.

A.     In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Back-Up Special Servicer shall become the Special Servicer and shall assume the rights, duties and obligations of the Special Servicer to the extent expressly required to be assumed and performed by the Back-Up Special Servicer under this Agreement; provided that the Back-Up Special Servicer shall not under any circumstances be responsible for any representations and warranties made by FMER as the Special Servicer, or for any payment and indemnity obligations of FMER as the Special Servicer under this Agreement, or for any liability incurred by FMER as the Special Servicer prior to the date of the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer under this Agreement or for any obligation to pay the fees and expenses of any Subservicer (except to the extent it receives funds from the Trusts for such purposes). In addition, nothing in this Agreement shall be construed to require or permit the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities including, without limitation, Early Awareness Services, with respect to consumer borrowers or other consumer obligors.  Notwithstanding any term hereof or elsewhere to the contrary, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall have no liability hereunder or otherwise in the event that it is unable to engage one or more Subservicers, upon reasonably acceptable terms and conditions (including compensation) and in accordance with the applicable terms and requirements of this Agreement, to perform Early Awareness Services, enforcement, collection and servicing of Delinquent Loans and Defaulted Loans; so long as the Back-Up Special Servicer shall have taken commercially reasonable efforts to engage one or more Subservicers to perform such Special Services. Notwithstanding the foregoing, the Back-Up Special Servicer, if it is unwilling or unable to so act, may designate a successor Special Servicer under this Agreement, subject to the satisfaction of the conditions set forth in Sections 6(E) hereof.

B.     In the event that the Special Servicer resigns or is removed as Special Servicer and the Back-Up Special Servicer begins performing Special Servicer's duties as Special Servicer under this Agreement, the Back-Up Special Servicer shall be compensated as the Special Servicer in accordance with this Agreement.  Upon assuming the duties of Special Servicer pursuant to this Section 8, except as otherwise provided herein, the Back-Up Special

Servicer will be subject to all of the terms and conditions of this Agreement as "Special Servicer" insofar as such terms and conditions apply to the Back-Up Special Servicer's duties as set forth above. Without limiting the foregoing, in the performance or non-performance of its duties contemplated by this Section 8, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall be subject to the same standard of care as the Special Servicer and shall be entitled to the same rights, privileges, protections, immunities and benefits given to the Special Servicer hereunder. The Back-Up Special Servicer as successor Special Servicer may employ and act through agents, attorneys and independent contractors and shall not be responsible or accountable for performance of such agents and independent contractors appointed by it with due care. In carrying out the duties or obligations of the Special Servicer under this Agreement, the Back-Up Special Servicer may enter into transactions or otherwise deal with any of its Affiliates. In no event will the Back-Up Special Servicer be responsible for the obligations of the Special Servicer (or any Servicer or Subservicer) or be responsible for any actions, omissions or malfeasance of the Special Servicer under this Agreement prior to the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer (or any Servicer or Subservicer) under this Agreement or any agreement with a Servicer or Subservicer. The Back-Up Special Servicer (in such capacity and in its capacity as successor Special Servicer) shall not be liable for any errors contained in any reports, certificate or other data or document delivered to the Back-Up Special Servicer (in such capacity and in its capacity as successor Special Servicer) hereunder or on which it must rely in order to perform its obligations hereunder (including in its capacity as Special Servicer). In no event shall the Back-Up Special Servicer have any responsibility to monitor, supervise, verify or administer the performance of the Special Servicer or any Servicer or Subservicer, prior to the date it assumes the duties of the Special Servicer. The Back-Up Special Servicer (including in its capacity as successor Special Servicer, if applicable) undertakes to perform only such duties and obligations as are specifically set forth in this Agreement, it being expressly understood by all parties hereto that there are no implied duties or obligations of the Back-Up Special Servicer hereunder. In no event will the Back-Up Special Servicer (including in its capacity as successor Special Servicer) be liable for any indirect damages, lost profits, special, punitive, or consequential damages which arise out of or in connection with the services contemplated by this Agreement even if the Back-Up Special Servicer has been informed of the possibility of such damages. If the Back-Up Special Servicer (including in its capacity as successor Special Servicer) is prevented from fulfilling its obligations hereunder as a result of government actions, regulations, fires, strikes, accidents causing a material disruption in the operations of the Back-Up Special Servicer, acts of god or other causes beyond its control, its obligations shall be suspended for a reasonable time during which such conditions exist.

C.    In order to facilitate the performance of the Back-Up Special Servicer's duties under this Agreement, for a period of not less than 120 days following the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement the Special Servicer will provide to the Back-Up Special Servicer reasonable access, during normal business hours and upon reasonable prior notice, to all files, systems and employees of the Special Servicer then used in the provision of the Special Services. Without limiting the generality of the foregoing, the Special Servicer agrees to cooperate with the Back-Up Special Servicer (or its designee) to facilitate the orderly transfer of its duties under this Agreement, including without limitation, notifying the Servicers, Subservicers, the Custodians, their collection agents and other appropriate parties of the transfer of the Special Servicer function and providing (or causing the

Servicers, Subservicers and/or Custodians, as applicable, to provide) the Back-Up Special Servicer with all documents and records in electronic or other form reasonably requested by the Back-Up Special Servicer to enable the Back-Up Special Servicer or its designee to assume the Special Servicer's functions under this Agreement (including without limitation such information relating to Delinquent Loans and Defaulted Loans) and shall transfer (and cause any collection agent to transfer) to the Indenture Trustee for deposit into the Collection Account for the benefit of each Trust net collections received by it with respect to the Defaulted Loans.

D.     In the event that the Back-Up Special Servicer begins performing the Special Servicer's duties, it shall be authorized to accept and rely on all of the accounting, records (including computer records) and work of the Special Servicer, any Servicer or any Subservicer (collectively, the "Predecessor Work Product") without any audit or other examination thereof, and it shall have no duty, responsibility, obligation or liability for the acts and omissions of the Special Servicer or of a Servicer or Subservicers. If any error, inaccuracy, omission or incorrect or non-standard practice or procedure (collectively, "Errors") exist in any Predecessor Work Product and such Errors make it materially more difficult to service or should cause or materially contribute to the successor Special Servicer making or continuing any Errors (collectively, "Continued Errors"), the Back-Up Special Servicer as successor Special Servicer or otherwise shall have no duty, responsibility, obligation or liability for such Continued Errors; provided that the Back-Up Special Servicer agrees to use its commercially reasonable efforts to prevent further Continued Errors. In the event that the Back-Up Special Servicer upon succeeding to the Special Servicer becomes aware of Errors or Continued Errors, it shall use commercially reasonable efforts to reconstruct and reconcile such data in order to correct such Errors and Continued Errors and to prevent future Continued Errors. In performing the obligations of the Special Servicer under this Agreement, the Back-Up Special Servicer in its capacity as successor Special Servicer, shall be entitled to rely conclusively on the reports and other information which it may receive from a Servicer or Subservicer, including as to the accuracy and completeness thereof, and shall not be required to reconcile such information nor shall it be required to otherwise supervise or monitor the performance of such Servicers or Subservicers. The Back-Up Special Servicer (including in its capacity as Special Servicer) shall have no liability for the acts or omissions of any such Servicer or Subservicer in performing its obligations under the applicable Servicing Agreement.

E.     Subject to the foregoing, the Back-Up Special Servicer will be required to begin performing its duties as successor Special Servicer under this Agreement within 30 days of receiving notice of the resignation or removal of FMER as Special Servicer under this Agreement (or, if later, the effective date of the resignation or removal). Administrator shall be responsible for and hereby covenants to provide such notice promptly upon such resignation or removal of FMER as Special Servicer. Out of pocket costs and expenses (including the fees of its counsel and agents) incurred by the Back-Up Special Servicer in connection with the transition of services hereunder during the 120 day period following notice of the resignation or removal of FMER as Special Servicer (including without limitation any costs and expenses associated with any Subservicer engagement described in Section 8G below) shall be borne by FMER. To the extent that such expenses are not paid by FMER (but without limiting or discharging its liability therefor), such expenses shall be paid by FMDS, as Administrator who may seek reimbursement from the Trusts (and to the extent not paid by the Administrator, such expenses shall be reimbursed to the Back-Up Special Servicer by the Trusts first, as a Servicer

expense up to the Monthly Reimbursement Limit, with any remaining amounts for a Distribution Date payable as indemnities, fees and expenses of the Servicer after the payment on such date of the principal and interest due on the Notes on such Distribution Date), such reimbursement by the Trusts to be apportioned in accordance with the respective Pool Balance of Student Loans owned by each Trust as of the resignation or removal of FMER.

F. As compensation for the performance of the Back-Up Special Servicer's obligations under this Agreement, the Back-Up Special Servicer shall be entitled to a monthly fee of $1,000 per Trust payable by the Trusts on each Distribution Date as a Servicing Fee pursuant to the terms of each Indenture, until such time as the Back-Up Special Servicer either begins performing the duties of the Special Servicer under this Agreement or otherwise ceases to be the Back-Up Special Servicer.

G. The initial Special Servicer hereby represents and warrants that the Default Prevention and Collection Services Agreement, dated as of March 1, 2009 (the "NCO Agreement"), between the Special Servicer and NCO Financial Systems, Inc. ("NCO") (attached hereto as Exhibit II) is in full force and effect; and the initial Special Servicer hereby covenants and agrees with the Back-Up Special Servicer that the initial Special Servicer shall at all times maintain in full force (i) the NCO Agreement, and the engagement of NCO thereunder as Subservicer, or (ii) one or more other agreements upon terms reasonably acceptable to the Back-Up Special Servicer, with a Subservicer or Subservicers reasonably acceptable to the Back-Up Special Servicer and capable of performing the obligations of a Subservicer as contemplated by this Agreement. Without limiting or discharging any other liability or obligation the Special Servicer may have hereunder or otherwise in respect thereof, the initial Special Servicer hereby expressly agrees to indemnify and hold harmless the Back-Up Special Servicer for and from any and all losses, liabilities, damages, costs and expenses (including reasonable attorney's fees) that may be suffered, incurred or paid by the Back-Up Special Servicer as a result of, or arising from, any breach on the part of the Special Servicer of the representations, warranties, covenants or agreements set forth in the preceding sentence, including without limitation any cost associated with the engagement by the Back-Up Special Servicer of one or more acceptable Subservicers necessitated thereby. FMER shall give 10 days' prior notice to the Back-Up Special Servicer of any amendment, modification or waiver relating to the NCO Agreement (or such other agreement or agreements contemplated in subclause (ii) above), which notice shall be accompanied by the form of the proposed amendment, modification, waiver or agreement or agreements, as applicable.

Section 9. Representations and Warranties.

A. The Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Back-Up Special Servicer:

(i) Organization and Good Standing. The Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

(ii) <u>No Violation</u>.  Neither the execution and delivery by the Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Special Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Special Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Special Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Special Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Special Servicer with the provisions hereof, will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Special Servicer.  The Special Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Special Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Special Servicer.

(iii) <u>Authorization and Enforceability</u>.  The execution and delivery by the Special Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Special Servicer with the terms hereof are within the powers of the Special Servicer, and have been duly authorized by all necessary action on the part of the Special Servicer. All organizational resolutions and consents necessary for the Special Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Special Servicer and constitutes the legal, valid and binding obligation of the Special Servicer, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Special Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Special Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and

valid execution, delivery, and performance of this Agreement by the Special Servicer.

(iv) <u>Approvals and Permits</u>. The Special Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Special Servicer to perform its obligations hereunder.

(v) <u>No Litigation</u>. No litigation is pending or, to the best of the Special Servicer's knowledge, threatened against it, which, if determined adversely to the Special Servicer would prohibit the Special Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Special Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Special Servicer.

B.    The Back-Up Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Special Servicer:

(i) <u>Organization and Good Standing</u>. The Back-Up Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

(ii) <u>No Violation</u>. Neither the execution and delivery by the Back-Up Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Back-Up Special Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Back-Up Special Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Back-Up Special Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Back-Up Special Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Back-Up Special Servicer of this Agreement, nor the consummation by it

of the transactions contemplated hereby, nor the performance of and compliance by the Back-Up Special Servicer with the provisions hereof, will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Back-Up Special Servicer. The Back-Up Special Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Back-Up Special Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Back-Up Special Servicer.

(iii)    Authorization and Enforceability.    The execution and delivery by the Back-Up Special Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Back-Up Special Servicer with the terms hereof are within the powers of the Back-Up Special Servicer, and have been duly authorized by all necessary action on the part of the Back-Up Special Servicer. All organizational resolutions and consents necessary for the Back-Up Special Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Back-Up Special Servicer and constitutes the legal, valid and binding obligation of the Back-Up Special Servicer, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Back-Up Special Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Back-Up Special Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Back-Up Special Servicer.

(iv)    Approvals and Permits.    The Back-Up Special Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Back-Up Special Servicer to perform its obligations hereunder.

(v)  No Litigation.  No litigation is pending or, to the best of the Back-Up Special Servicer's knowledge, threatened against it, which, if determined adversely to the Back-Up Special Servicer would prohibit the Back-Up Special Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Back-Up Special Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Back-Up Special Servicer.

Section 10.  Indemnification.  The Special Servicer will indemnify each of the Trusts, the Owner Trustee, the Back-Up Special Servicer (including in its capacity as Special Servicer) and the Indenture Trustee and their officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Back-Up Special Servicer or the Indenture Trustee (as applicable) and their agents, arising out of the willful misconduct, negligence or bad faith of the Special Servicer (or its agents) in the performance of the Special Servicer's duties contemplated by this Agreement; provided that neither the Special Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Administrator or the Indenture Trustee or in accordance with this Agreement and provided further however that the Back-Up Special Servicer (in its capacity as successor Special Servicer) shall only be responsible for any such loss or expense to the extent such are determined to be proximately caused by its own gross negligence or willful misconduct.  To the extent any indemnification amounts are not paid by the Special Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Student Loans then owned by each Trust.

Section 11.  Records; Inspection.  The Special Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours.  The Special Servicer hereby grants the Back-Up Special Servicer and the Indenture Trustee the right for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Special Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Special Servicer and the Indenture Trustee.  All expenses associated with the performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(B).

Section 12.  Reporting; Additional Information to be Furnished.  On the tenth Business Day after the end of each calendar month, the Special Servicer shall furnish the Back-Up Special Servicer and the Administrator on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Delinquent Loans or Defaulted Loans in a form satisfactory to the Administrator.  On the tenth Business Day after the end of each calendar month, the Special Servicer shall furnish the Administrator on behalf of the Trusts and the Back-Up Special Servicer an electronically transferred data file containing recovery data for Defaulted Loan owned by each respective Trust and other information as required by Regulation AB, each

for investor reporting purposes. The Special Servicer shall furnish to the Administrator on behalf of the Trusts and the Back-Up Special Servicer from time to time such additional information regarding the Student Loans, including Delinquent Loans or Defaulted Loans, as the Administrator on behalf of the Trusts or the Back-Up Special Servicer shall reasonably request.

Section 13. <u>Subservicing Agreements</u>. The Special Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Student Loan and its performance. Each subservicing agreement shall be terminable by the Special Servicer (including for the avoidance of doubt, the Back-Up Special Servicer acting as successor Special Servicer) upon thirty days written notice, and shall provide that any successor to the Special Servicer shall succeed to the Special Servicer thereunder. The Special Servicer shall promptly provide the Back-Up Special Servicer copies of all existing subservicing agreements with a Subservicer, including the NCO Agreement, and any additional subservicing agreements between the Special Servicer and Subservicers or any amendments to existing subservicing agreements with a Subservicer entered into after the date of this Agreement.

Section 14. <u>Regulation AB</u>. On or before September 15 of each calendar year beginning in 2009, the Special Servicer shall deliver to the Administrator any reports, servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Special Servicer or the Back-Up Special Servicer is required to deliver to the Administrator the documents described in this Section 14, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Special Servicer or of the Back-Up Special Servicer as successor Special Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 15. <u>Security Interest</u>. Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect of, the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 16. <u>Amendments</u>. This Agreement may be amended from time to time by the parties hereto, including amendment of <u>Schedule A</u> and <u>Schedule B</u>, attached hereto, to add additional trusts, provided that any amendment must be accompanied by the written consent of the Administrator and upon satisfying the Rating Agency Condition.

Section 17. <u>Independence of the Special Servicer</u>. For all purposes of this Agreement, the Special Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its

obligations hereunder. Unless expressly authorized by the Trusts, the Special Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 18.    No Joint Venture. Nothing contained in this Agreement (i) shall constitute the Special Servicer or Back-Up Special Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to incur any obligation or liability on behalf of the others.

Section 19.    Other Activities of the Special Servicer. Nothing herein shall prevent the Special Servicer or Back-Up Special Servicer or their Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 20.    Notices. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Special Servicer, to:

> The First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

If to the Back-Up Special Servicer, to:

> U.S. Bank National Association
> Corporate Trust – Structured Finance
> One Federal Street, Third Floor
> Boston, Massachusetts  02110
> Attention:  David Duclos
> Phone: 617-603-6409
> Fax: 617-603-6638

> U.S. Bank National Association
> c/o U.S. Bank Portfolio Services
> 1310 Madrid, Suite 103
> Marshall, Minnesota  56258
> Attention: Joe Andries
> Phone: 507-532-7129
> Fax:     866-806-0755

If to the Trusts or the Indenture Trustee, to:

The address set forth in the applicable Indenture

With a copy to:

First Marblehead Data Services, Inc.
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Ms. Rosalyn Bonaventure

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 21. <u>Notice to Noteholders</u>. Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Special Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed FMER as Special Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 22. <u>Miscellaneous</u>.

A. <u>Successors and Assigns</u>. This Agreement may not be assigned by the Special Servicer unless such assignment is previously consented to in writing by the Indenture Trustee, and the Back-Up Special Servicer and unless each Rating Agency, after having been given 10 days' prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee hereunder in the same manner as the Special Servicer is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Special Servicer, without the consent of the Indenture Trustee or the Back-Up Special Servicer either (i) to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Special Servicer or (ii) to Union Federal Savings Bank or any of its subsidiaries; provided that such successor organization executes and delivers to the Indenture Trustee and the other parties hereto an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Special Servicer is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

B. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

C.    Headings.  The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or effect of this Agreement.

D.    Counterparts.  This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

E.    Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

F.    Limitation of Liability of Owner Trustee.  Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of each of the Trusts, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Trusts have any liability for the representations, warranties, covenants, agreements or other obligations of the Trusts hereunder, as to all of which recourse shall be had solely to the assets of the Trusts. For all purposes of this Agreement, in the performance of any duties or obligations of the Trusts hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the each Trust Agreement of the Trusts.

G.    Third Party Beneficiary.  The parties hereto acknowledge that the Noteholders, Certificateholders and the Indenture Trustee are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

H.    No Petition.  The parties hereto will not at any time institute against the Trusts any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Trusts under any Transaction Document as defined in the Indenture.

I.    Grant.  Each Trust hereby acknowledges that the Servicing Agreement is a "Servicing Agreement" for all purposes of its applicable Indenture. Each Trust hereby Grants to the Indenture Trustee, as trustee under each Indenture for the benefit of the Holders of Notes and other secured parties as applicable under the applicable Indenture, all of its right, title and interest in and to (i) the Agreement; and (ii) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of the foregoing. The Administrator on behalf of each Trust shall take all steps necessary to ensure the perfection and priority of the Indenture Trustee's security interest in the foregoing collateral. By its signature below, the

Indenture Trustee on behalf of the holders of Notes and other secured parties as applicable, acknowledges such Grant.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _Keith Olgi_ (signature)

Name:

Title: TREASURER

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____

Name:

Title:

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____

Name:

Title:

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _Rosalyn Bonaventure_ (signature)

Name:

Title:     **Rosalyn Bonaventure**
           **President**
           **First Marblehead Data Services**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

<div style="margin-left: 40%;">

First Marblehead Education Resources, Inc., as the Special Servicer

By: _____
    Name:
    Title:

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:
    Title:    Joseph Andries
              Senior Vice President

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____
    Name:
    Title:

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _____
    Name:
    Title:

</div>

{F0023935.2 }

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _Keith Ryan_ _____
    Name:
    Title: TREASURER

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:
    Title:

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _Dorri Costello_ _____
    Name:   Dorri Costello
    Title: **Financial Services Officer**

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _Rosalyn Bonaventure_ _____
    Name:
    Title:    **Rosalyn Bonaventure**
            **President**
        **First Marblehead Data Services**

ACKNOWLEDGED:

U. S. Bank National Association, as Indenture
Trustee for each of the Indentures listed on
Schedule A attached hereto

By: _____

Name:
Title:

David Duclos
Vice President

**SCHEDULE A**

**Trusts:**

- The National Collegiate Student Loan Trust 2003-1;
- The National Collegiate Student Loan Trust 2004-1;
- The National Collegiate Student Loan Trust 2004-2;
- The National Collegiate Student Loan Trust 2005-1;
- The National Collegiate Student Loan Trust 2005-2;
- The National Collegiate Student Loan Trust 2005-3;
- The National Collegiate Student Loan Trust 2006-1;
- The National Collegiate Student Loan Trust 2006-2;
- The National Collegiate Student Loan Trust 2006-3;
- The National Collegiate Student Loan Trust 2006-4;
- The National Collegiate Student Loan Trust 2007-1; and
- The National Collegiate Student Loan Trust 2007-2.

**Indentures:**

Each of the following Indentures, as amended or supplemented, entered into by and between U.S. Bank National Association, as Indenture Trustee and:

- The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
- The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
- The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
- The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
- The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005;
- The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005;
- The National Collegiate Student Loan Trust 2006-1, dated as of March 1, 2006;
- The National Collegiate Student Loan Trust 2006-2, dated as of June 1, 2006;
- The National Collegiate Student Loan Trust 2006-3, dated as of September 1, 2006;
- The National Collegiate Student Loan Trust 2006-4, dated as of December 1, 2006;
- The National Collegiate Student Loan Trust 2007-1, dated as of March 1, 2007; and
- The National Collegiate Student Loan Trust 2007-2, dated as of June 1, 2007.

{F0023935.4 }

## SCHEDULE B

[Schedule of Reimbursement Limits per Trust by Calendar Month]

{F0023935.4 }

**Monthly Reimbursement Limit for payments relating to Delinquent Loans**

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/2009 | 36,000.00 | 41,000.00 | 57,000.00 | 46,000.00 | 36,000.00 | 82,000.00 | 57,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 62,000.00 |
| 03/2009 | 36,000.00 | 41,000.00 | 57,000.00 | 46,000.00 | 36,000.00 | 82,000.00 | 57,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 62,000.00 |
| 04/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 05/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 06/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 07/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 48,000.00 | 53,000.00 | 58,000.00 |
| 08/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 48,000.00 | 53,000.00 | 58,000.00 |
| 09/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 48,000.00 | 53,000.00 | 58,000.00 |
| 10/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 11/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 12/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 01/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 02/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 03/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 04/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 48,000.00 | 48,000.00 |
| 05/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 48,000.00 | 48,000.00 |
| 06/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 48,000.00 | 48,000.00 |
| 07/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 44,000.00 | 49,000.00 |
| 08/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 44,000.00 | 49,000.00 |
| 09/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 44,000.00 | 49,000.00 |
| 10/2010 | 11,000.00 | 11,000.00 | 33,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 11/2010 | 11,000.00 | 11,000.00 | 33,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 12/2010 | 11,000.00 | 11,000.00 | 33,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 01/2011 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 02/2011 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 33,000.00 | 38,000.00 | 44,000.00 |
| 03/2011 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 36,000.00 | 38,000.00 | 44,000.00 |
| 04/2011 | 11,000.00 | 11,000.00 | 22,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 38,000.00 | 38,000.00 | 44,000.00 |
| 05/2011 | 11,000.00 | 11,000.00 | 22,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 38,000.00 | 38,000.00 | 44,000.00 |
| 06/2011 | 11,000.00 | 11,000.00 | 22,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 22,000.00 | 60,000.00 | 38,000.00 | 38,000.00 | 44,000.00 |
| 07/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 17,000.00 | 51,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 39,000.00 | 39,000.00 |
| 08/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 17,000.00 | 51,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 39,000.00 | 39,000.00 |
| 09/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 17,000.00 | 51,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 39,000.00 | 39,000.00 |
| 10/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 11/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 12/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 01/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 02/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 03/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 04/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 05/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 06/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 07/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 35,000.00 | 23,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 08/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 35,000.00 | 23,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 09/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 35,000.00 | 23,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 10/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |

**Monthly Reimbursement Limit for payments relating to Delinquent Loans**

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |
| 12/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |
| 01/2013 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 02/2013 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 03/2013 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 04/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 05/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 06/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 07/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 08/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 09/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 10/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 11/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 12/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 01/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 02/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 03/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 04/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 05/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 06/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 07/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 08/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 09/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 10/2014 | - | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 11/2014 | - | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 12/2014 | - | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 01/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 02/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 03/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 04/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 05/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 06/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 07/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 08/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 09/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 10/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 11/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 12/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 01/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 02/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 03/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 04/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 05/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 06/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 07/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |

Schedule B

**Monthly Reimbursement Limit for payments relating to Delinquent Loans**

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 09/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 10/2016 | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 11/2016 | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 12/2016 | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 01/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 13,000.00 |
| 02/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 13,000.00 |
| 03/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 10/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 11/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 12/2017 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 01/2018 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2018 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2018 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2018 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2018 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2018 | - | - | - | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 10/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 11/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 12/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 01/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 02/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 03/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 04/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 05/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 06/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 07/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 08/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 09/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 10/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 11/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 12/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 01/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 02/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 03/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 04/2020 | - | - | - | - | - | - | - | - | - | - | - | - |

# SCHEDULE C

[Schedule of Early Awareness Reimbursement Limits per Trust]

{F0023935.4 }

Schedule C

Lifetime Expense Limit for payments relating to Early Awareness Program

| 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| $17,000.00 | $34,000.00 | $149,000.00 | $123,000.00 | $105,000.00 | $345,000.00 | $257,000.00 | $180,000.00 | $527,000.00 | $305,000.00 | $416,000.00 | $400,000.00 |

## EXHIBIT I

All TERI claim packages require the following documentation:

*   Application, Credit Agreement, and Disclosure Statement

*   Evidence of preparation for repayment summary letter and telephone attempts

*   Forbearance Form(s) and supporting documentation where required and/or system generated history reflecting the forbearance period

*   Delinquency servicing history for the most recent 210 day period or the delinquency period prior to claim, whichever is less.

*   Payment History, Correspondence History

*   Assignment of Rights (should include disbursement date and name of the current Owner)

*   Bankruptcy and/or death information as appropriate (see Death Claim section)


For Non-TERI Originated Loans the claim package must also include the following documentation:

*   Credit Bureau Report (for non-TERI originated loans only)

*   School Certification signed by school official or Enrollment Verification for Direct-to-Consumer and Continuing Education loans (for non-TERI originated loans only)

*   Income/Employment Documentation, including but not limited to, where applicable, full recourse letter, income verification letter, and revolving debt burden calculation (for non-TERI originated loans only)

*   Immigration documentation required to be collected at origination (f/k/a U.S. Citizenship and Immigration Service (USCIS)) documentation of proof of permanent U.S. residency (if applicable) (for non-TERI originated loans only):

Exhibit I-1

Cosigners:

*   INS 151 or INS 551 form with a valid expiration;

*   A departure record (1-94) with a valid expiration date issued from the INS showing "Refugee," or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole; or

*   Foreign passport bearing an unexpired temporary I-551 stamp.

Students:

*   Copy of his or her student visa, permanent resident card, F-1 or I -20 form.

*   A departure record (1-94) with a valid expiration date issued from the INS showing "Refugee," or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole; or

*   INS 151 or INS 551 form with a valid expiration;

For a Rehab Loan, the required claim documentation includes:

*   Application, Credit Agreement

*   Repurchase Disclosure Statement

*   Assignment of Rights (should include disbursement date and name of the current Owner)

*   Payment History, Correspondence History

*   Delinquency servicing history for the most recent 210 day period or the delinquency period prior to claim, whichever is less.

*   Bankruptcy and/or death information as appropriate (see Death Claim section)

In the event of a rolling delinquency, the Servicer will submit the history for the most recent 210 days or the delinquency period prior to claim, whichever is less. This may not include all delinquency servicing activities for the loan (e.g., activities performed in the early states of delinquency due to the fact the Borrower rolled several times during the delinquency period).

TERI will accept microfilm or electronic copies of all original documents with the claim package. In the event that the Servicer is unable to secure the original wet signature Credit agreement, TERI will accept a copy of such Note if it is accompanied by a notarized affidavit certifying that the original is not available and that the copy is a true one.

Further, the complete copy of the Note must contain the signatures of all obligors of the note. If a court of competent jurisdiction refuses to accept the submitted copy of a note in the event that TERI must litigate a case, and TERI loses the case for that reason, TERI will be reimbursed by the Loan Owner for the amount that TERI paid to the Owner via the Servicer on the claim.

TERI, the Owner, and the Servicer acknowledge there may be contractual agreements between Owner and Servicer governing the entity responsible for reimbursing TERI the amount of the claim if a court of competent jurisdiction refuses to accept such a copy of a Note.

TERI will make its best effort to send claim payments to the Servicer 90-120 days after the claim has been submitted. Claim payments shall include accrued interest through the payoff date.

# EXHIBIT II

[NCO Agreement]

Exhibit II-1

{F0023935.4 }