Bryan C. Shartle (*pro hac vice*, Dkt. 23)
Justin H. Homes (*pro hac vice*, Dkt. 24)
Bradley J. St. Angelo (*pro hac vice*, Dkt. 22)
Sessions, Israel & Shartle, L.L.C.
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Telephone: (504) 828-3700
bshartle@sessions.legal
jhomes@sessions.legal
bstangelo@sessions.legal

George W. Burbidge II, #6503
CHRISTENSEN & JENSEN, P.C
275 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
George.burbidge@chrisjen.com

*Attorneys for Defendant Transworld Systems Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **James T. Snarr, *on behalf of Plaintiff and Class*,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **Transworld Systems Inc., U.S. Bank, and National Collegiate Student Loan Trust 2006-3,** <br><br> **Defendants.** | **TSI'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> **Case No. 2:21-CV-00003-HCN** <br><br> **Honorable Howard C. Nielson, Jr.** |

Defendant Transworld Systems Inc. moves pursuant to Federal Rule of Civil

Procedure 12(b)(6) for an order dismissing the Complaint filed by plaintiff, James T. Snarr,

for failure to state a claim upon which relief can be granted.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................... 2

        A.      TSI's Role As Special Subservicer For NCSLT 2006-3 .............................. 2

        B.      TSI's Connection To The State Court Collection Action ............................ 3

        C.      The Student Loan At Issue And The State Court Collection Action ............ 4

        D.      The Procedural History Of The Present Case ................................................ 5

III.    ARGUMENT ....................................................................................................... 6

        A.      Motion To Dismiss Standard ........................................................................ 6

        B.      Plaintiff's Claim For Conspiracy To Violate The UCSPA Should Be
                Dismissed ...................................................................................................... 7

                1.      Plaintiff's Claims Are Res Judicata ................................................ 7

                2.      Plaintiff's Claims Are Barred By The Judicial Proceedings
                        Privilege ......................................................................................... 11

                3.      Plaintiff Has Not Suffered Any Loss .............................................. 12

        C.      Plaintiff's FDCPA Claims Should Be Dismissed ....................................... 13

                1.      All Of Plaintiff's FDCPA Claims Are Based Upon A Theory
                        That Loan Records For His Loan Do Not Exist Or Are
                        Untrustworthy ................................................................................ 13

                2.      Plaintiff's Theory Is Contrary To The Collection Judgment
                        Against Him And The Existence Of The Allegedly Missing
                        Documents ...................................................................................... 16

        D.      Plaintiff's Claim For Injunctive Relief Should Be Dismissed ................... 17

        E.      Plaintiff's Claim For Invasion Of Privacy/Intrusion Upon Seclusion
                Should Be Dismissed ................................................................................... 18

IV.     CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Am. Agencies, LLC v. Sloan*, 2020 WL 7024911 (D. Utah Nov. 30, 2020)............... 11, 18

*Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950 (Utah App. 1989) .................................... 9

*Andreason v. Felsted*, 137 P.3d 1 (Utah Ct. App. 2006).................................................... 12

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 2019 WL 3554016 (D. Utah Aug. 5, 2019)...................................................................................................................... 4

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)....................................................................... 6, 7

*Ashe v. Swenson*, 397 U.S. 436 (1970).............................................................................. 9

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)................................................. 6, 7

*Brokaw v. Salt Lake Cty.*, 2007 WL 2221065 (D. Utah Aug. 1, 2007)........................... 17

*Calder Bros. Co. v. Anderson*, 652 P.2d 922 (Utah 1982)................................................ 9

*Collins v. Daniels*, 916 F.3d 1302 (10th Cir. 2019) ....................................................... 17

*Collins v. Sandy City Bd. of Adjustment*, 16 P.3d 1251 (Utah App. 2000) ........................ 9

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*, 2020 WL 2915759 (D. Del. May 31, 2020) ...................................................................................... 15

*Dodge v. Cotter Corp.*, 203 F.3d 1190 (10th Cir. 2000) .................................................... 9

*Doe v. Woodard*, 912 F.3d 1278 (10th Cir. 2019)............................................................. 7

*Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153 (10th Cir. 2018)........................ 5

*Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735(D. Utah Dec. 15, 2020) ............................. 5

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997)......... 2

*Hodgson v. Farmington City*, 675 F. App'x 838 (10th Cir. 2017)..................................... 4

*In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334 (Del. Ch. July 13, 2020) ...................................................................................................................... 15

*Jensen v. Xlear, Inc.*, 2020 WL 2431239 (D. Utah May 12, 2020) ................................. 11

*Layton v. Experian Info. Sols., Inc.*, 2020 WL 6423835 (D. Utah Nov. 2, 2020)............... 2

*Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir. 2006) ............................................. 17

*Macris & Assocs. v. Neways*, 16 P.3d 1214 (Utah 2000)...................................... 7

*Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533 (10th Cir. 2018)............... 13

*McMurray v. Forsythe Fin., LLC*, 2021 WL 83265 (D. Utah Jan. 11, 2021) .................. 11

*Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663 (Utah 2002)...................................... 8

*Morris v. Jones*, 329 U.S. 545 (1947) ...................................................... 9

*Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, 285 P.3d 1157......... 11, 18

*Moss v. Parr Waddoups Brown Gee & Loveless*, 237 P.3d 899 (Utah App. 2010),
*cert. granted*, 245 P.3d 757 (Utah 2010)................................................... 10

*Nebeker v. State Tax Comm'n*, 34 P.3d 180 (Utah 2001) ..................................... 7

*Olsen v. Board of Educ.*, 571 P.2d 1336 (Utah 1977)....................................... 10

*Oman v. Davis Sch. Dist.*, 194 P.3d 956 (Utah 2008) ........................................ 7

*Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr.*, 378 F.3d 1132 (10th Cir. 2004) ....... 9, 10

*Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217 (D. Utah 2017) ................. 8

*Pratt v. Nelson*, 2007 UT 41, 164 P.3d 366 .............................................. 11

*Price v. Armour*, 949 P.2d 1251 (Utah 1997)............................................... 11

*Routt v. Howry*, 2020 WL 6940791 (10th Cir. Nov. 25, 2020).............................. 7

*Salt Lake Citizens Cong. v. Mountain States Tel. & Tel. Co.*, 846 P.2d 1245 (Utah
1992)...................................................................................... 8

*Schoney v. Mem'l Estates, Inc.*, 863 P.2d 59 (Utah Ct. App. 1993) .................... 9

*Snyder v. Murray City Corp.*, 73 P.3d 325 (Utah 2003) ................................... 8

*State v. Hamilton*, 2003 UT 22, 70 P.3d 111 ............................................ 10

*Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374 (Utah Ct. App. 1997) ............. 18

*Tolle v. Fenley*, 132 P.3d 63 (Utah App. 2006)............................................. 10

*West v. C.J. Prestman Co.*, 2017 WL 4621611 (D. Utah Oct. 13, 2017) .......................... 18

*Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006) ......................................................... 17

*Yapp v. Excel Corp.*, 186 F.3d 1222 (10th Cir. 1999) ....................................................... 8

**Statutes & Rules**

15 U.S.C. § 1692e ............................................................................................................. 13

15 U.S.C. § 1692f .............................................................................................................. 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................... i, 2, 6

Utah Code § 13-11-19 (2) ................................................................................................. 12

**Other Authorities**

Restatement of Judgments § 11 cmt. a (1942) ................................................................. 10

# I.  INTRODUCTION

Plaintiff, James T. Snarr ("plaintiff" or "Snarr"), sued his student loan judgment creditor, National Collegiate Student Loan Trust 2006-3 ("NCSLT 2006-3"), and U.S. Bank National Association ("U.S. Bank") and Transworld Systems Inc. ("TSI") (collectively, "Defendants"), alleging NCSLT 2006-3's collection action was unfair and deceptive.  Specifically, Snarr alleges Defendants "do not have the documentation necessary to prove [NCSLT 2006-3]'s ownership" of his loan and "do not have the right to flood the courts with consumer debt collection actions, under the color of law, based upon records they know are unreliable and are otherwise infected with inaccurate information." Compl., ¶ 1.  In support of these baseless contentions, Snarr cites to and mischaracterizes various unrelated lawsuits completely irrelevant to him and his student loan.

There is no question Snarr owes NCSLT 2006-3 for his unpaid student loan, as confirmed by the judgment rendered against him in Utah state court.  Tellingly, Snarr does not deny he took out the loan at issue or even that NCSLT 2006-3 owns his loan.  The Utah state court's judgment for NCSLT 2006-3 is *res judicata* and estops Snarr from bringing his claims against Defendants.

Regardless, Snarr's factual allegations against TSI are sparse and have little to do with him or his loan.  In fact, the only actions Snarr alleges TSI to have taken with respect to him are: (1) to have assisted in the filing of an allegedly unfair and deceptive complaint in the state court collection action; and (2) for a TSI employee to have signed an affidavit regarding his loan that purportedly did not have the affidavit exhibits attached to it when it was filed by counsel in the collection action because "[NCSLT 2006-3] does not have

documents substantiating its ownership of the debt." *See* Compl., ¶¶ 39–44. First, Snarr neither explains how the complaint filed against him was unfair or deceptive (or why he should be permitted to relitigate that action again here) nor how TSI assisted in its filing. Second, and critically, none of the loan documents are missing.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  TSI's Role As Special Subservicer For NCSLT 2006-3

NCSLT 2006-3 is a Delaware Statutory Trust. Compl., ¶ 7. It has no employees and acts through other entities. *Id*. at ¶ 34. For "special servicing" activities—that is, management of non-performing, delinquent, and defaulted loans—NCSLT 2006-3's Owner Trustee entered into a Special Servicing Agreement ("SSA") with First Marblehead Education Resources, Inc. ("FMER") to act as Special Servicer.[1] *See* Exh. A, SSA, § 2.A. The SSA also appointed U.S. Bank as the Back-Up Special Servicer to assume the role of Successor Special Servicer if FMER resigned. *Id*. at § 8.A. FMER simultaneously retained TSI's predecessor-in-interest, NCO Financial Systems, Inc. ("NCO"), as Special Subservicer if FMER resigned and U.S. Bank became Successor Special Servicer. *See* Exh. B, Default Prevention and Collection Services Agreement ("TSI Agreement").

FMER resigned in 2012. When that happened, U.S. Bank and NCO became the

---

[1] Snarr explicitly relies upon the SSA (*see* Compl., ¶ 14); the SSA includes an exhibit that is integral to that document, the TSI Agreement (described, *infra*), which has been amended several times. Relevant portions of these documents may be considered in deciding this motion. *See Layton v. Experian Info. Sols., Inc.*, 2020 WL 6423835 (D. Utah Nov. 2, 2020) ("In evaluating a Rule 12(b)(6) motion, courts may consider, in addition to the complaint itself, 'an indisputably authentic copy' of a document 'referred to in the complaint' that 'is central to the plaintiff's claim.') (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997)).

Successor Special Servicer and Special Subservicer, respectively. In 2014, NCO was succeeded by TSI to manage delinquent and defaulted loan servicing for the Trusts. *See* Compl., ¶¶ 10, 34–35. All of TSI's alleged conduct at issue occurred after TSI succeeded to NCO's role as Special Subservicer.

## B.     TSI's Connection To The State Court Collection Action

In order for it to perform its special servicing duties, TSI received possession of and access to Trust student loan documents and information. *See* Exh. B, TSI Agreement (Second Amendment), ¶ 2.3 ("Special Servicer shall cause the Servicers to provide to [TSI] all documents and information specified in the Servicing Agreements and/or Servicing Guidelines."). TSI was also appointed as custodian of NCSLT 2006-3's loan records. *See* Exh. B, TSI Agreement, ¶ 2.4(c) ("For this purpose, Special Servicer on behalf of the Trusts hereby appoints [TSI] as keeper of the applicable Trust's records of all [alternative student loans] that are the subject of [TSI] administration.").

TSI was also engaged to administer collection litigation. *Id*. at ¶ 2.4 ("As part of the Default Collection Services, [TSI] shall administer collection litigation[.]"). TSI was authorized to, among other things, "forward accounts for litigation to an attorney licensed to practice law in the applicable jurisdiction," and to "provide evidentiary support for collection attorneys, including basic factual orientation, copies of documents, records of account balances, affidavits and testimony, as reasonably required." *Id*. at ¶¶ 2.4, 2.4(c).

That is what happened here. TSI placed Snarr's student loan account with Johnson Mark LLC ("JM") for collection, who, in turn, filed a debt collection lawsuit against Snarr on behalf of NCSLT 2006-3. *See* Compl., ¶¶ 36–38.

## C.  The Student Loan At Issue And The State Court Collection Action

In December 2019, JM, as counsel for NCSLT 2006-3, filed suit in Utah County, Case No. 199402928, against Snarr on a student loan that was sold and assigned to NCSLT 2006-3 (the "Collection Action").  *See* Compl., ¶ 38; *see also* Exh. C.[2]  Snarr did not respond to the Collection Action, and on September 4, 2020, NCSLT 2006-3 moved for a default judgment against him.  *See* Exh. D.[3]  At JM's request, TSI employee Aaron Motin provided JM an affidavit testifying to information regarding the Loan, including its disbursement, assignment to NCSLT 2006-3, and outstanding balance (the "Affidavit").  A copy of the Affidavit TSI provided JM is attached hereto as Exh. D.[4]

As Snarr alleges[5], the exhibits to the Affidavit include: a memorandum letter signed by U.S. Bank confirming TSI's role as "Subservicer" and "dedicated record custodian with respect to all student loan accounts owned by [15 enumerated trusts, including NCSLT 2006-3]; the Loan Request/Credit Agreement executed by Snarr on July 25, 2006 for a

---

[2] Exh. C, *in globo*, consists of the docket sheet for Case No. 199402928, the Complaint filed in that case, and the Default Judgment entered against Snarr, all obtained from the Utah Courts' Xchange system.  TSI requests the Court take judicial notice of the proceedings in the Collection Action.  The Court may take judicial notice of "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'"  *Applied Predictive Techs., Inc. v. MarketDial, Inc*., 2019 WL 3554016, *2 (D. Utah Aug. 5, 2019) (citing *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017)).

[3] An earlier motion for default filed on April 17, 2020 was initially denied pending a showing "that payments on this student loan debt and collection efforts to collect the debt on [sic] were not suspended by the CARES Act."  *See* Exh. C.

[4] *See* fn. 1 regarding the Court's ability to consider authentic copies of documents referred to in the complaint and central to plaintiff's claims; *see also* Compl., ¶¶ 41–44.  While it appears from Xchange that the Affidavit may have been filed by JM without the exhibits referenced therein and provided by TSI therewith, the full copy of the Affidavit, including exhibits, as provided to JM by TSI is attached hereto.

[5] Snarr's allegations include numerous mistaken references unrelated to him, including to a "Bank of America loan" and an Osure Brown and Tommy Brown, evidently as a result of his copy and pasted amalgamation of pleadings in unrelated litigation.

JPMorgan Chase Bank, N.A. student loan (the "Loan"), including the terms and conditions of the Loan and a Note Disclosure Statement confirming the disbursement of the Loan proceeds; a 2006-3 Pool Supplement[6] (the "Snarr Pool Supplement") evidencing the sale and assignment of the Loan and others pooled with it to an intermediary depositor, National Collegiate Funding, LLC ("NCF"), together with a redacted excerpt of the schedule of loans transferred pursuant to that Pool Supplement[7]; and a Deposit and Sale Agreement[8] evidencing the sale and assignment of various pool supplements and the loans scheduled thereto, including the Snarr Pool Supplement and the Loan, to NCSLT 2006-3. Exh. D; *see also* Compl., ¶¶ 41–42.

On September 10, 2020, the court entered a default judgment against Snarr (the "Collection Judgment"). Exh. C. Snarr has not taken any action to vacate, amend, appeal, or otherwise seek relief from the Judgment. *Id.*

**D.     The Procedural History Of The Present Case**

On December 3, 2020, Snarr filed this putative class action complaint against TSI,

---

[6] The Snarr Pool Supplement bears markings in the first page header indicating it is publicly available and included as an exhibit to a Form 8-K filing with the U.S. Securities and Exchange Commission ("SEC"), of which TSI requests and the Court may take judicial notice. *See Exkae Ltd. v. Domo, Inc*., 2020 WL 7352735, *3 (D. Utah Dec. 15, 2020) (citing *Emps.' Ret. Sys. of R.I. v. Williams Cos*., 889 F.3d 1153, 1158 (10th Cir. 2018)). That public filing is available at  https://www.sec.gov/Archives/edgar/data/1223029/000088237706003526/p06-1554ex99_20. htm, last visited February 8, 2021.

[7] Further, to the extent the Court deems it necessary for consideration of this Motion, a printed .pdf of the full loan schedule pertaining to Snarr's Loan is also attached (with appropriate redactions). *See* Declaration of Bradley Luke, Exh. E and Exhibit 1 thereto. A copy of the electronically-stored loan schedule can be made available to the Court upon request.

[8] Like the Snarr Pool Supplement, the Deposit and Sale Agreement is publicly available on file with the SEC, and TSI requests the Court take judicial notice thereof. *See* https: //www.sec.gov/Archives/edgar/data/1223029/000088237706003526/p06-554ex99_6.htm, last visited February 8, 2021.

U.S. Bank, and NCSLT 2006-3 in the Third Judicial District Court of Salt Lake County, Utah, asserting claims for conspiracy to violate the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code § 13-11-1 *et seq.*, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for common law invasion of privacy and intrusion upon seclusion, and seeking injunctive relief.

On December 30, 2020, Defendants timely removed this action to this Court. *See* Notice of Removal, Dkt. 1 (removed December 30, 2020, processed January 4, 2021).

On January 13, 2021, the Court granted the parties' Stipulated Motion to Extend Deadline to Respond to Complaint and extended Defendants' responsive pleadings deadline to February 10, 2021. Dkt. 6.

On February 8, 2021, the Court granted the parties' second Stipulated Motion to Extend Deadline to Respond to Complaint and extended Defendants' responsive pleadings deadline to February 17, 2021. Dkt. 9.

## III.   ARGUMENT

### A.   Motion To Dismiss Standard

A defendant may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

6

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. As here, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. at 1966). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Routt v. Howry*, 2020 WL 6940791, *3 (10th Cir. Nov. 25, 2020) (citing *Doe v. Woodard*, 912 F.3d 1278, 1288 (10th Cir. 2019).

## B.    Plaintiff's Claim For Conspiracy To Violate The UCSPA Should Be Dismissed

### 1.    Plaintiff's Claims Are *Res Judicata*

The instant lawsuit is a collateral attack on the final judgment entered in the Collection Action. Because Snarr's UCSPA claim is based upon the claims and issues that were adjudicated in the Collection Action, he is barred from asserting the UCSPA claim here.

"The doctrine of *res judicata* embraces two distinct branches: claim preclusion and issue preclusion." *Macris & Assocs. v. Neways*, 16 P.3d 1214, 1219 (Utah 2000). "[C]laim preclusion corresponds to causes of action[;] issue preclusion corresponds to the facts and issues underlying causes of action." *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 966 (Utah 2008). "Claim preclusion 'is premised on the principle that a controversy should be adjudicated only once.'" *Nebeker v. State Tax Comm'n*, 34 P.3d 180 (Utah 2001) (quoting *Salt Lake Citizens Cong. v. Mountain States Tel. & Tel. Co.*, 846 P.2d 1245, 1251 (Utah

1992)).  Whether a claim is precluded from re-litigation depends on a three-part test: "First, both cases must involve the same parties or their privies.  Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action.  Third, the first suit must have resulted in a final judgment on the merits."  *Snyder v. Murray City Corp.*, 73 P.3d 325 (Utah 2003) (quoting *Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663 (Utah 2002)).  If these elements are satisfied, *res judicata* is proper unless the party seeking to avoid preclusion did not have a "full and fair opportunity" to litigate the claim in the previous action.  *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999).

Here, all three elements are met.  First, the case involves the same parties (*i.e.*, Snarr and NCSLT 2006-3) together with the Special Subservicer, who is in privity (*i.e.*, TSI).  Indeed, Snarr's allegations against TSI relate only to TSI's alleged actions with respect to the Collection Action, the same prior action giving rise to *res judicata*.

Second, the claims asserted by Snarr arise out of "the same transaction, or series of connected transactions" as the claims asserted in the Collection Action.  *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1228 (D. Utah 2017).  In particular, the claims arise out of whether NCSLT 2006-3 could substantiate its ownership of the Loan, and the "series of connected transactions" include Snarr's borrowing the Loan, the assignment of the Loan to NCSLT 2006-3, and establishing those transactions in the Collection Action, *i.e.*, whether Snarr is responsible for the Loan and whether NCLST 2006-3 owns the Loan.

Third, the Collection Judgment was a final judgment, *i.e.*, one which put an end to the Collection Action by declaring NCSLT 2006-3 was entitled to recover the remedy

sought.  *Schoney v. Mem'l Estates, Inc.*, 863 P.2d 59, 61 (Utah Ct. App. 1993); *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 926 n. 4 (Utah 1982); *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 969 (Utah App. 1989); *see also McFarland v. Wells Fargo Bank, N.A.*, 2014 WL 1648681, *3 (D. Utah Apr. 23, 2014) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.") (quoting *Morris v. Jones*, 329 U.S. 545, 550–51 (1947)).  And there has been no change in circumstances since the Collection Judgment that might justify any avoidance of *res judicata* here.  *Collins v. Sandy City Bd. of Adjustment*, 16 P.3d 1251 (Utah App. 2000) (The general rule is that only when the facts or controlling law have changed since the first judgment, "a party is [relieved] from the application of *res judicata*.").

In the alternative, plaintiff's claims are barred by issue preclusion.  *Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."); *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) ("When an *issue of ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.") (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)) (emphasis added).  Issue preclusion applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom

the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lake Res. Ltd. Liab.*, 378 F.3d at 1136.

"With rare exception, when a court with proper jurisdiction enters a final judgment, . . . that judgment can only be attacked on direct appeal." *Moss v. Parr Waddoups Brown Gee & Loveless*, 237 P.3d 899 (Utah App. 2010) (quoting *State v. Hamilton*, 2003 UT 22, ¶ 25, 70 P.3d 111), *cert. granted*, 245 P.3d 757 (Utah 2010). "The general rule . . . is that a judgment may not be drawn in question in a collateral proceeding and an attack upon a judgment is regarded as collateral if made when the judgment is offered as the basis of a claim in a subsequent proceeding." *Id.* (quoting *Tolle v. Fenley*, 132 P.3d 63 (Utah App. 2006) (quoting *Olsen v. Board of Educ.*, 571 P.2d 1336, 1338 (Utah 1977))). "Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or revised or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'Collateral Attack.'" *Id.* (quoting *Olsen*, 571 P.2d at 1338 (quoting Restatement of Judgments § 11 cmt. a (1942))).

Here, all of Snarr's claims turn upon two essential issues – whether ***Snarr owes the Loan*** and whether ***NCSLT 2006-3 was assigned the Loan***. Both these "issues of ultimate fact" were directly addressed in paragraph 2 of the Collection Action ("Defendant[] entered into a credit agreement whereby a student loan was obtained. As contemplated at the time of loan origination, Defendant[']s contract was sold by the program lender to Plaintiff [NCSLT 2006-3] for valuable consideration in the course of the securitization process. Plaintiff is a Delaware statutory trust."). Exh. C. Snarr had a full and fair opportunity to

litigate the issues in Collection Action.  Final judgment was taken on the merits, and Snarr did not raise the "defenses" he now attempts to assert in this action.  Were this Court to hold the state court collection complaint or TSI's affidavit unfair and deceptive because they were deficient in substantiating NCSLT 2006-3's ownership of the Loan, "the state court judgment would be nullified." *McMurray v. Forsythe Fin., LLC*, 2021 WL 83265, \*4 (D. Utah Jan. 11, 2021).  Plaintiff is barred from attempting to re-litigate the claims and issues resolved by the Collection Action, and this Court should dismiss plaintiff's complaint with prejudice.

### 2.    Plaintiff's Claims Are Barred By The Judicial Proceedings Privilege

"The judicial proceedings privilege is an absolute privilege that protects the participants in a litigation from liability for statements made during a judicial proceeding." *Am. Agencies, LLC v. Sloan*, 2020 WL 7024911, \*6 (D. Utah Nov. 30, 2020) (citing *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997)).  "In order to establish the privilege, the statement in question 'must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel.'" *Jensen v. Xlear, Inc*., 2020 WL 2431239, \*10 (D. Utah May 12, 2020) (citing *Pratt v. Nelson*, 2007 UT 41, ¶ 28, 164 P.3d 366, 376).  Further, The Utah Supreme Court has extended the judicial proceedings privilege to cover conduct as well as statements.  *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 45, 285 P.3d 1157, 1165–68.

The only actions Snarr alleges TSI took with respect to him were to (1) "aid and assist]" NCSLT 2006-3 in filing an allegedly unfair and deceptive complaint against him;

and (2) provide NCSLT 2006-3 an allegedly deficient affidavit NCSLT 2006-3 filed in the Collection Action. *See* Compl., ¶¶ 38–44. As such, the first element to establish the privilege is met. The complaint and affidavit were both prepared and filed during and in the course of the Collection Action. The complaint established the subject matter of that proceeding, which was to collect the unpaid balance on Snarr's student loan. The affidavit TSI provided NCSLT 2006-3's counsel as a witness (in TSI's capacity as dedicated record custodian) established, *inter alia*, the existence, balance, and assignment of the Loan. Thus, the second and third elements to establish the judicial proceedings privilege are also met, and plaintiff's UCSPA and other claims should be dismissed with prejudice.

### 3.     Plaintiff Has Not Suffered Any Loss

Regardless, a consumer may not bring a claim under the UCSPA for actual or statutory damages unless he "suffer[ed] loss as a result of a violation" thereof. Utah Code § 13-11-19 (2); *see also Andreason v. Felsted*, 137 P.3d 1, 5 (Utah Ct. App. 2006).

Here, the only "loss" plaintiff suffered is the Collection Action he tries to attack through the instant lawsuit. While he asserts a "loss of time away from [] work having to defend the Defendants' improper debt collection action[] in [the] state court proceeding[] against [him] without the right to do so[,]" that allegation necessarily presumes the Collection Action was improper. But, as explained above, plaintiff is not entitled to that presumption where the Collection Action was adjudicated against him. Further, he cannot plausibly allege he spent time defending a collection action in which he never appeared. Thus, plaintiff has alleged no plausible "loss" under the UCSPA, and his claim for conspiracy to violate that statue should be dismissed with prejudice.

**C.    Plaintiff's FDCPA Claims Should Be Dismissed**

    **1.    All Of Plaintiff's FDCPA Claims Are Based Upon A Theory That Loan Records For His Loan Do Not Exist Or Are Untrustworthy**

In broad strokes, the Complaint asserts FDCPA liability against TSI for its alleged participation in the Collection Action against Snarr.

"To state a claim under the FDCPA, Plaintiffs must allege sufficient facts to plausibly suggest that a defendant is a debt collector whose efforts to collect a debt from them violated provisions of the FDCPA." *Smith v. Johnson Mark LLC*, 2021 WL 66297, *2 (D. Utah Jan. 7, 2021) (citing *Mbaku v. Carrington Mortg. Servs., LLC*, 735 F. App'x 533, 536 (10th Cir. 2018)) (internal punctuation omitted).  Here, plaintiff alleges TSI violated § 1692e, § 1692e(2), § 1692e(5), § 1692e(10), and § 1692f.  Section 1692e states, in pertinent part, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "(2) The false representation of—the character, amount, or legal status of any debt … (5) The threat to take any action that cannot legally be taken or that is not intended to be taken … (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Section 1692f prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."

Plaintiff takes aim at TSI's involvement in the prosecution of the Collection Action, particularly with the Affidavit TSI provided JM or, evidently, averments in the pleadings themselves. *See* Compl., ¶¶ 40–44.  Plaintiff alleges the Affidavit stated the affiant, Aaron Motin, had personal knowledge of the Loan records, and that there was an outstanding

principal balance on the Loan, and that the Loan had been transferred and assigned to NCSLT 2006-3. *Id.* Plaintiff concludes these statements were false and deceptive for a common reason: they were all based on knowingly non-existent, incomplete, or untrustworthy loan records.[9] In other words, plaintiff contends the Collection Action against him was improper because it could not succeed on the documents allegedly known to be missing, lost, or never existing. *See id.*, ¶¶ 60–61.[10]

Plaintiff's Complaint offers several facts in a failed attempt to support a reasonable inference that the loan records at issue are non-existent, incomplete, or untrustworthy. Plaintiff alleges no document transferring his Loan from NCF to NCSLT 2006-3 and no schedule of loans referenced in the Snarr Pool Supplement sale from the original lender to NCF were attached to the Affidavit. *See id.*, ¶¶ 42–44. He also suggests the non-existence or untrustworthiness of the loan records pertaining to his Loan may be inferred from (A) an Amended Verified Complaint filed by NCSLT 2006-3 and its sister trusts asserting the tort of "injurious falsehood" against TSI in a proceeding entitled *The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank, N.A., et al*, Chancery Court of Delaware, C.A. No. 2018-0167 c/w 12111) (the "Chancery Court Proceedings") (*See* Compl., ¶¶ 54–56); (B) a purported consent judgment between NCSLT 2006-3 and its sister trusts and the

---

[9] Although plaintiff also accuses TSI employees and its alleged network of attorneys of "creat[ing] false documents purporting to reflect the Loan Schedules from the original 'Pool Supplement Agreements,'" (Compl., ¶ 20), he has not alleged TSI created any false loan schedules pertaining to his Loan. To the contrary, plaintiff contends the loan schedule was not attached to the Affidavit because it allegedly does not exist.

[10] Plaintiff also alleges the loan documents are "prone to errors." *See* Compl., ¶ 35. However, plaintiff does not identify any erroneous information in any documents regarding his Loan. This allegation in the abstract is plainly inadequate.

Consumer Financial Protection Bureau ("CFPB") (*See* Compl., ¶¶ 4549); and (C) the so-called consent order between TSI and the CFPB (the "TSI Consent Order") (*See* Compl., ¶¶ 50–53).

First, with respect to the "injurious falsehood" allegations made against TSI in the Chancery Court Proceedings, which Snarr suggests implies his Loan documents are missing or untrustworthy, the Delaware Chancery Court has dismissed that injurious falsehood claim against TSI. *See In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334 (Del. Ch. July 13, 2020). Accordingly, plaintiff's attempt to use these rejected allegations from an unrelated proceeding not involving him is merely an effort at misdirection. The Court should ignore the Chancery Court Proceedings.

Second, regarding the purported consent judgment between NCSLT 2006-3 and its sister trusts and the CFPB, the court in that case refused to enter the proposed judgment. The court held that the attorneys for NCSLT 2006-3 and its sister trusts lacked the authority to enter into the consent judgment on their behalf. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*, 2020 WL 2915759, *6 (D. Del. May 31, 2020). To be clear, the so-called consent judgment has never been entered. Again, the Court should ignore this misdirection.

Third, plaintiff's attempt to invoke the TSI Consent Order to support his contention that loan documents are missing (*See* Compl., ¶¶ 56–59) likewise fails to support a reasonable inference that the Collection Action was brought (or the Affidavit provided) on missing, mistaken, or non-existent loan records. The Consent Order details the CFPB's findings that, over a limited period when TSI first assumed its role as Special Subvicer,

collection lawsuits were brought without complete documentation. Snarr thus concludes TSI's actions "in regard to James T. Snarr were substantially identical to the actions" detailed by the CFPB in the Consent Order. *See* Compl., ¶ 59. In other words, if TSI was found to have committed some misconduct under the Consent Order, then it must have committed the same misconduct here. However, plaintiff does not allege the Consent Order involves his Loan or TSI's custody or subservicing of it. And regardless, the Consent Order is unable to support the inferences plaintiff seeks from it on other grounds. For example, the Collection Action was filed in 2019, well beyond the scope of the Consent Order, which concerns lawsuits filed between November 1, 2014 and April 25, 2016, when TSI initially assumed its role as Special Subservicer. And, most importantly, the Court should ignore the Consent Order because there are no missing documents relating to Snarr's Loan, as explained, *infra*.

Thus, plaintiff makes no plausible allegations that TSI violated the FDCPA, and his claims under it should be dismissed with prejudice.

### 2. Plaintiff's Theory Is Contrary To The Collection Judgment Against Him And The Existence Of The Allegedly Missing Documents

Plaintiff's FDCPA claims rely on the premise that the documents relating to his Loan are missing, untrustworthy, and otherwise insufficient to support the filing of the Collection Action and the Affidavit therein against him. However, as discussed, *supra*, the Collection Judgment necessarily disproves those claims and bars them as *res judicata*. For this Court to now hold Snarr's Loan documents are insufficient would contradict a valid

judgment. The Collection Judgment conclusively established the propriety of the filing of the complaint and the details of Snarr's Loan as described in the Affidavit.

Moreover, the documents Snarr alleges do not exist or are missing—the crux of his claims—have been attached hereto, some of which are a matter of public record, and indisputably do exist. Thus, Snarr has not and cannot plausibly state a claim for a violation of the FDCPA, and those claims should be dismissed with prejudice.

### D.    Plaintiff's Claim For Injunctive Relief Should Be Dismissed

"A plaintiff cannot sustain a claim for prospective injunctive relief that is based on 'speculative future harm.'" *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (citing *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006)). "The fact of past injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury." *Brokaw v. Salt Lake Cty.*, 2007 WL 2221065, *1 (D. Utah Aug. 1, 2007) (quoting *Winsness v. Yocom*, 433 F.3d 727, 735 (10th Cir. 2006)) (brackets omitted).

Here, Snarr seeks "an injunction prohibiting Defendants from its [sic] unlawful collection tactics, including but not limited to demanding money that is not owed, using Utah courts to extort payments and monies out of its residents by disregarding court rules and applicable law, misstating the law in collection lawsuits, providing insufficient or false affidavits and attempting to collect grossly inflated and illegal collection fees." Compl., ¶ 100. However, he does not allege in what way *he* has any "credible threat of future injury" from TSI or how he would benefit from the injunctive relief he seeks. He has not, for example, alleged he has any other loans for which TSI is the Special Subservicer. As such,

plaintiff cannot sustain a claim for the injunctive relief he seeks, and that claim should be dismissed with prejudice.

### E.   Plaintiff's Claim For Invasion Of Privacy/Intrusion Upon Seclusion Should Be Dismissed

"A claim for intrusion upon seclusion in Utah requires Plaintiffs to sufficiently plead two elements: (1) they have suffered 'an intentional substantial intrusion' on their privacy, and (2) the intrusion would be 'highly offensive' to a reasonable person. *West v. C.J. Prestman Co*., 2017 WL 4621611, *5 (D. Utah Oct. 13, 2017) (citing *Stien v. Marriott Ownership Resorts, Inc*., 944 P.2d 374, 379 (Utah Ct. App. 1997)). As discussed, *supra*, Utah's judicial proceedings privilege bars "all claims arising from the same statements." *Sloan*, 2020 WL 7024911 at *6 (citing *Moss*, 285 P.3d at 1165). The privilege has specifically been held to bar common law tort claims, including for invasion of privacy. *Moss*, 285 P.3d at 1167–68.

All plaintiff has alleged between himself and TSI is TSI's involvement in the Collection Action filed against him by NCSLT 2006-3—a collection action that he lost. Presumably no defendant ever wants to be sued, and it is inconceivable that TSI, in providing the Affidavit to JM, could have so intruded upon Snarr's privacy to be highly offensive to a reasonable person. In fact, Snarr has not even alleged *how* TSI invaded his privacy, as he did not appear in or otherwise defend the Collection Action, and he has not alleged any other contacts between himself and TSI. And, again, even if TSI's provision of the Affidavit could be construed as an invasion of privacy, Snarr's claim is precluded by the judicial proceedings privilege.

As such, plaintiff's claim for Invasion of Privacy/Intrusion Upon Seclusion should be dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, TSI requests this Court grant its motion to dismiss plaintiff's Complaint.

DATED: February 17, 2021

*/s/ George W. Burbidge II*
George W. Burbidge II, #6503
CHRISTENSEN & JENSEN, P.C
275 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
George.burbidge@chrisjen.com

Bryan C. Shartle (pro hac vice, Dkt. 23)
Justin H. Homes (pro hac vice, Dkt. 24)
Bradley J. St. Angelo (pro hac vice, Dkt. 22)
Sessions, Israel & Shartle, L.L.C.
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Telephone: (504) 828-3700
bshartle@sessions.legal
jhomes@sessions.legal
bstangelo@sessions.legal

***Attorneys for Transworld Systems Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2021, a copy of the foregoing Motion to Dismiss was electronically filed with the Clerk of the Court, United States District Court for the District of Utah and served on all parties and counsel of record via CM/ECF.

*/s/ George W. Burbidge II*
George W. Burbidge II
