# Exhibit D

| | |
|---|---|
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, A Delaware Statutory Trust Plaintiff | ) ) ) ) |
| v. | )  Docket #: 199402928 |
| JAMES T SNARR | ) ) ) ) |
| Defendant(s) | ) ) ) |

## AFFIDAVIT AND VERIFICATION OF ACCOUNT

STATE OF GEORGIA          )
                                   )

COUNTY OF  GWINNETT     )

BEFORE ME, the undersigned authority, personally appeared Affiant       Aaron Motin      ,

who being first duly sworn, deposes and states:

      1.      I am employed by Transworld Systems Inc. (hereinafter "TSI"), the Subservicer

for Plaintiff regarding account number xxxxx4541-001-PHEA, the educational loan that is the

subject matter of this action (the "educational loan"). I am over the age of 18 and am competent

and authorized to testify regarding this educational loan through my review of the business

records maintained by TSI as custodian of records. These records include electronic data

provided to TSI related to the educational loan, and the business records attached to this

Affidavit.

      2.      The statements made herein are based on my review of the loan records in the

system of record maintained by TSI on behalf of Plaintiff.

3.     TSI has been contracted to perform the duties of the Subservicer for Plaintiff by U.S. Bank, National Association, the Special Servicer of Plaintiff. As the current Subservicer for the Plaintiff, TSI is the designated custodian of defaulted loan records, including the educational loan. Additionally, TSI maintains the dedicated system of record for defaulted loans on behalf of Plaintiff of all electronic transactions pertaining to the educational loan, including, but not limited to, payments, credits, interest accrual and any other transactions that could impact the loan. Attached hereto as Exhibit "A" is a true and correct copy of a notification from U.S. Bank National Association acknowledging TSI's capacity as Subservicer.

4.     I have access to and training on the system of record utilized by TSI on behalf of Plaintiff to enter and maintain loan records and documentation relating to the educational loan.

5.     American Education Services ("AES") was the prior servicer of the educational loan. AES began servicing the loan upon the first disbursement of the loan until it was charged-off.

6.     I have access to and training on the system of record utilized by AES to enter and maintain loan records and documentation relating to the educational loan.

7.     I am familiar with the process by which TSI and AES, on behalf of Plaintiff, each receives loan records from the prior servicer or loan originator, including loan origination documents and data recording the electronic transactions pertaining to the loans, including, but not limited to, payments, credits, interest accrual and any other transactions that could impact the loans. It is TSI's regularly-conducted business practice to incorporate these loan records into the system of record it maintains on Plaintiff's behalf.

8.     Educational loan records that are part of TSI's records are created, compiled, recorded, and kept as part of regularly conducted business activity at or near the time of the event

and from information transmitted by a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record. Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

9.      This lawsuit concerns an unpaid loan owed by JAMES T SNARR ("Defendant") to Plaintiff. Specifically, Defendant entered into an educational loan agreement at Defendant's special instance and request. A loan was extended for Defendant to use pursuant to the terms of the loan agreement and funds were disbursed on 7/28/2006. Attached hereto and incorporated as Exhibit "B" is a true copy of the underlying Credit Agreement/Promissory Note and Note Disclosure Statement.      In the event the Defendant faxed the executed Credit Agreement/Promissory Note, per its terms the Defendant agreed their facsimile/electronic signature is deemed to be an original.

10.     As stated herein, the Defendant obtained an educational loan with Lender and funds were disbursed on 7/28/2006. *See also, Exhibit "E", transaction 0101A.* The Defendant's educational loan was transferred, sold and assigned to National Collegiate Funding, LLC, on 9/28/2006 for valuable consideration, along with other educational loans ("Loan Pool"), in the course of the securitization process.      See Exhibit "E", transaction 0395A.      Defendant's educational loan was in good standing and not in default on 9/28/2006.      Attached hereto and incorporated as Exhibit "C" is a true and correct copy of the Pool Supplement and a redacted excerpt of the Schedule of the Loan Pool described within the Pool Supplement showing that Defendant's loan was part of the Loan Pool.

11.     On 9/28/2006, National Collegiate Funding, LLC transferred, sold and assigned the Loan Pool, including Defendant's educational loan, along with other pools of loans, to

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3 for valuable consideration, in the course of the securitization process. See Exhibit "E", transaction 0390A. Defendant's educational loan was in good standing and not in default on 9/28/2006. Attached hereto and incorporated as Exhibit "D" is a true and correct copy of the Deposit and Sale Agreement with Schedule A listing each pool, including the Loan Pool.

12. Plaintiff last received payment on 03/22/2017 in the amount of $43.97. After all payments, credits and offsets have been applied, Defendant JAMES T SNARR owes the principal sum of $17,569.12, together with accrued interest in the amount of $2,297.18, totaling the sum of $19,866.30 as of 7/9/2020.

(a) Attached hereto and incorporated as Exhibit "E" is a true and correct copy of the Loan Financial Activity maintained by AES on behalf of Plaintiff establishing the loan balance from 7/28/2006 (the first Disbursement) to 10/2/2017 (the "Charge Off Date").

(b) Attached hereto and incorporated as Exhibit "F" is a true and correct copy of the Deferment/Forbearance Summary maintained by AES on behalf of Plaintiff showing any deferments or forbearances applied to the Defendant's educational loan once the Repayment Period (as defined in Exhibit "B") began (see ¶ C.4 in Exhibit "B").

(c) Attached hereto and incorporated as Exhibit "G" is a true and correct copy of the Repayment Schedule maintained by AES on behalf of Plaintiff demonstrating any repayment schedules associated with the loan.

(d) Attached hereto and incorporated as Exhibit "H" is a true and correct reproduction of the Loan Payment History Report maintained by TSI on behalf of Plaintiff, which evidences the Defendant's educational loan balance from the Charge Off Date. As Exhibit "H" shows, interest (as authorized by the Disclosure Statement in Exhibit "B") has accrued on

the Defendant's educational loan from 10/2/2017, and continues to accrue, at a variable rate based on the London Interbank Offered Rate ("LIBOR") adjusted periodically. *See Exhibit "H" and Exhibit "B" (the Disclosure Statement, which authorizes Plaintiff to charge interest).*

13.     Based on custodial records, Defendant is not a minor or incompetent. A reasonable inquiry has been made to determine if Defendant is in the military service of the United States of America, and to the best of my knowledge, Defendant is not in such military service and therefore not entitled to the rights and privileges provided under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

I declare under the penalty of perjury under the laws of the forum state that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NAUGHT,**

AFFIANT

Print Name:     Aaron Motin

Title:     Legal Account Specialist

SWORN AND SUBSCRIBED to before me this     15     day of     July     , 20 20

NOTARY PUBLIC

My Commission Expires on:

Page 5 of 5

# Exhibit A

Date: 11/3/14

RE:

| | |
|---|---|
| National Collegiate Master Student Loan Trust-I | National Collegiate Student Loan Trust-2003-1 |
| National Collegiate Student Loan Trust-2004-1 | National Collegiate Student Loan Trust-2004-2 |
| National Collegiate Student Loan Trust-2005-1 | National Collegiate Student Loan Trust-2005-2 |
| National Collegiate Student Loan Trust-2005-3 | National Collegiate Student Loan Trust-2006-1 |
| National Collegiate Student Loan Trust-2006-2 | National Collegiate Student Loan Trust-2006-3 |
| National Collegiate Student Loan Trust-2006-4 | National Collegiate Student Loan Trust-2007-1 |
| National Collegiate Student Loan Trust-2007-2 | National Collegiate Student Loan Trust-2007-3 |
| National Collegiate Student Loan Trust-2007-4 | |

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

Brian G Tri
Vice President
Title

Acknowledged;
By: GSS Data Services, Inc.
Not in its individual capacity and solely as
administrator for and on behalf of the Trust(s)

By: Kenneth L. Ruggiero

President and CEO
Title

# Exhibit B

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Education One® Education One Undergraduate Loan     Academic Period: 08/2006-07/2007

Lender: JPMorgan Chase Bank, N.A.    School: CALIFORNIA STATE UNIVERSITY -

Loan Amount Requested: $16000.00    Repayment Option: Full Deferral

Deferment Period Margin: 4.5    Repayment Period Margin: 4.5    Loan Origination Fee Percentage: 7.50

### BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name: James T Enan'
Social Security ____4541

Home Address: 125 Winterstein Drive Folsom, CA 95630
Date of Birth: ____1977    Home Telephone ____0722

Current Employer: TASO TECHNOLOGY
Current Position: Services    Years There: 4 Years 21 Months    Employer Telephone ____
Years at Previous Employment: 0 Years
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Borrower Citizenship (check one box): ☒ U.S. Citizen     ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name: Jeane T Spar    Reference Home Tel ____    Work Tel ____
Reference Street Address
Reference City/State/Zip

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.06-07.CRWO.10DC.0106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on this Credit Agreement and any related notices that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) any fax without of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 9 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

For purposes of the following notices, "you" means the Borrower, not the Lender

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW & RETURN THIS page with proof of income and other information requested by – FAX YOU 1(877)791-3940

Signature of Borrower _____     Date 7/25/06

In this Credit Agreement, the words "I," "me," "my," and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you," "your," "yours," and "Lender" mean the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

A. **PROMISE TO PAY:** I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth here.

B. **LOAN; DISCLOSURE STATEMENT:**

1 By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).

2 If you agree to make a loan to me, you will mail me a disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). You have the right to disburse my Disbursement Check through an agent. At your option, you may make the Disbursement Check co-payable to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee. The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3 If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice, together with my unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B 3, it is a Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

C. **DEFINITIONS:**

1 "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).

2 The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3 "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) **Education One Undergraduate Alternative Loan Program:** If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Borrower first graduates or ceases to be enrolled at least half time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan Program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, a student who receives the first of joint or serial degrees (e.g., associates to bachelors) may continue in-school deferment while completing their second degree up to the 5-year or 5½-year maximum.

(b) **Education One Graduate Professional Education Loan Program:** The Deferment End Date w. be 180 days after the Borrower graduates or ceases for any

other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4 The "Repayment Period" begins the day after the Deferment Period ends or, if there is no Deferment Period, the day after the Disbursement Date for my loan. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (see Paragraph E 2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

D. **INTEREST:**

1 Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D 3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D 2) divided by the number of days in that calendar year.

2 Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The Current Index for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If The Wall Street Journal (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3 Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L 1), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

E. **TERMS OF REPAYMENT:**

1 Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D 3.

2 Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3 Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly

**EO.06-07.CRWO.10DC.0106**

Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new Repayment Date). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4 Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional principal, interest, and/or late fees at the end of the Repayment Period. If I have not paid any late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.

5 Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.

6 Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (month-ly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6% or the entire Principal Sum would equal 8.8057% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B 3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty or charge.

H FORBEARANCE If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may change me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D 3

I. WHOLE LOAN DUE. To the extent permitted by applicable law, I will be in default if (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i e, add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%)

J. NOTICES:

1 I will send written notice to you, any subsequent holder of this Credit Agreement,

and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program)

2 Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me

K INFORMATION:

1 I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so

2 I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state)

3 CREDIT BUREAU REPORTING

---

**You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

---

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law

L ADDITIONAL AGREEMENTS

1 I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2 The proceeds of this loan will be used only for my educational expenses at the School

3 My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE

4 I may not assign this Credit Agreement or any of its benefits or obligations You may assign this Credit Agreement at any time

5 The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me

6 If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement

7 A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L 16

8 To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that am in default under this Credit Agreement.

9 All dollar amounts stated in this Credit Agreement are in United States dollars I will make all payments in United States dollars with no deduction for currency exchange

10 The Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.

11 I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

12 I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g. enrollment status, prior loan history, and current address)

13 I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14 Waiver by Lender You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law

15 If I fax my signature(s) or the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the final page of this Credit Agreement and I will refax the first page upon request by Lender I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement

## M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important Information about procedures for opening a new account:*

**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*

**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS. I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me I may exercise this right by notifying the consumer credit reporting agency A married applicant may apply for a separate account If you take any adverse action as defined by Section 1785 3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnishes you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis I have the right as described by Section 1785 16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency

CALIFORNIA and UTAH RESIDENTS As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower, not the Lender )

IOWA RESIDENTS. If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction

IOWA, KANSAS and NEBRASKA RESIDENTS. (For purposes of the following notice, this word "you" refers to the Borrower not the Lender ) NOTICE TO CONSUMER. 1 Do not sign this Credit Agreement before you read it 2 You are entitled to a copy of this Credit Agreement 3 You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law

MARYLAND RESIDENTS. In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules. If any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law

MISSOURI RESIDENTS: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT

NEVADA RESIDENTS. This is a loan for study

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS. I understand and agree that you may obtain a consumer credit report in connection with updates, renewals or extensions of any credit as a result of this application If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans

NEW JERSEY RESIDENTS. The section headings of this Credit Agreement are a table of contents and not contract terms Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law

OHIO RESIDENTS. The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law

OKLAHOMA RESIDENTS. If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees) I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS. For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766 59 of the Wisconsin Statutes or court decree under Section 766 70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision If the loan for which I am applying is granted I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school The legal age for entering into contracts is 18 years of age in every State in the United States except the following Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old) I certify that I meet these state age requirements

**EO.06-07.CRWO.10DC.0106**

# NOTE DISCLOSURE STATEMENT

$ __16,216.22__
__03885764__
Loan No.

Borrower(s): __JAMES T SNARR__

Student: __JAMES T SNARR__
Date: __July 28, 2006__

JAMES T SNARR
128 WINTERSTEIN DRIVE
FOLSOM, CA 95630 USA

Lender Name and Address:
__BANK ONE (JP MORGAN CHASE BANK, N.A.)__
__100 EAST BROAD STREET__
__COLUMBUS, OH 43125__

This disclosure statement relates to your Loan Note disbursed on __July 28, 2006__
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount this credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| __10.452__ % | $ __30,513.60__ | $ __15,000.00__ | $ __45,513.60__ |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due | |
|---|---|---|---|
| 240 | $ 189.64 | On the 15th day of each month beginning | 12/2008 |
| | | | |
| | | | |
| | | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ LIBOR Index Adjusted Monthly - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $9.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)      $ __16,216.22__

Itemization of Amount Financed
Amount paid to JAMES T SNARR      $ __15,000.00__
Amount paid to      $ _____
Total Amount Financed      $ __15,000.00__

Itemization of Prepaid Finance Charge
Origination Fee      $ __1,216.22__
Total Prepaid Finance Charge(s)      $ __1,216.22__

**Exhibit C**

EX-99.20 17 p06-1554ex99_20.htm POOL SUPPLEMENT

Exhibit 99.20

## 2006-3 POOL SUPPLEMENT
## BANK ONE, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain (i) Amended and Restated Note Purchase Agreement dated as of May 1, 2002 and (ii) Amended and Restated Note Purchase Agreement dated as of July 26, 2002, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation ("FMC") and Bank One, N.A. (Columbus, Ohio) by its successor by merger, JPMorgan Chase Bank, N.A. (the "Program Lender"). This Supplement is dated as of September 28, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank One Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any of the Program Lender's rights in or to the certain account pledged by TERI as collateral for its obligations under the Guaranty Agreement (the "Pledged Account"), in each case specifically relating to the Transferred Bank One Loans. The Depositor in turn will sell the Transferred Bank One Loans to The National Collegiate Student Loan Trust 2006-3 (the "Trust") The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank One Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

### Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.05 of the Agreement.

### Article 3: Representations and Warranties.

#### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02. By Depositor

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank One Loans.

(b) The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank One Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor

(d) This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e) The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f) There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

### Article 4: Cross Receipt

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank One Loans included in the Pool.

### Article 3: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank One Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to the Pledged Account pledged under the Guaranty Agreement and under the Deposit and Security Agreement that relate to the Transferred Bank One Loans, and the Program Lender hereby releases any security interest it may have in such Pledged Account relating to the Transferred Bank One Loans. The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby

[Remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: /s/ Donald R. Peck

Donald R. Peck
Executive Vice President

JPMorgan Chase Bank, N.A, as successor by merger to BANK ONE, N.A. (Columbus, Ohio).

By: /s/ Joseph F. Sergi

Name: Joseph F. Sergi
Title: First Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By: /s/ John A. Hupalo

John A. Hupalo
Vice President

## Schedule 1

[Transferred Bank One Loans]

**National Collegiate Student Loan Trust 2006-3**

**Roster:** BANK ONE

| LENDER NAME | LENDER | MARKETER | LOAN DESC | BSSN |
|---|---|---|---|---|
| BANK ONE | 604976QT | Bank One | DTC - Ed One - Undergraduate | ▮-4541 |

| QUARTER | LAST DISB DATE | TIER SCEN | REPAY TYPE | ACTUAL MARGIN |
|---|---|---|---|---|
| 03885784 | 28-Jul-06 | 7 | DP | 4.50% |

| S % | 4A % | MARKETER FEE LENDER | RECON TOT DISB | RECON NET DISB $ |
|---|---|---|---|---|
| 7.50% | 1.75% | 7.50% | $16,216.22 | $15,000.00 |

| RECON NET CURPRIN $ | RECON TOTCAPINT | RECON PRIN $ | RECON INT $ | RECON ADMIN FEE $ |
|---|---|---|---|---|
| $15,000.00 | $0.00 | $16,216.22 | $271.09 | $0.00 |

| | | Final Reconciliation Settlement Figures | | |
|---|---|---|---|---|
| RECON ORIG FEE TO BANK $ | RECON M FEE LENDER $ | RECON DMI REIMBURSE $ | RECON MARKETING FEE LENDER $ | TOTAL AMT DUE BANK |
| $162.16 | $1,125.00 | $0.00 | $1,125.00 | 17,774.4725 |

**Exhibit D**

**DEPOSIT AND SALE AGREEMENT**
**THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3**

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 28, 2006, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2006-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans, and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

**ARTICLE I**
**TERMS**

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

**ARTICLE II**
**DEFINITIONS**

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2006 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser

**ARTICLE III**
**SALE AND PURCHASE**

Section 3.01    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto

Section 3.03    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller

Section 3.04.    Assistance by Seller Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

**ARTICLE IV**
**REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER**

Section 4.01.    General  The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement.

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02    Loan Representations  The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto

Section 4.03.    Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc , the Indenture Trustee, and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this

Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement, provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans, provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows

If to the Purchaser, to

> The National Collegiate Student Loan Trust 2006-3
> c/o Wilmington Trust Company, as Owner Trustee
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the Noteholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Noteholders, provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all

outstanding Noteholders or Certificateholders, respectively

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
### ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
### GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
### LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By     GATE Holdings, Inc., Member

By     /s/ John A. Hupalo
Name:   John A. Hupalo
Title.    Vice President


THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, as Purchaser

By     Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By     /s/ J Christopher Murphy
Name   J Christopher Murphy
Title:   Financial Services Officer

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 28, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- JPMorgan Chase Bank, N.A., dated September 28, 2006, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- Charter One Bank, N.A., dated September 28, 2006, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Asrtive Education Loan Program, AstriveAlliance Education Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Education Assistance Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, UPromise Alternative Loan Program, and WAMU Alternative Student Loan Program..

- Citizens Bank of Rhode Island, dated September 28, 2006, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, Alternative Loan Program, Navy Federal Referral Loan Program, Penn State Undergraduate Loan Program, FinanSure Alternative Loan Program, and Xanthus Loan Program.

- First National Bank Northeast, dated September 28, 2006, for loans that were originated under First National Bank Northeast's Nelnet Alternative Loan Program.

- HSBC Bank USA, National Association, dated September 28, 2006, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 28, 2006, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- KeyBank, dated September 28, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 28, 2006, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- National City Bank, dated September 28, 2006, for loans that were originated under National City Bank's Alternative Loan Program.

- PNC Bank, N.A., dated September 28, 2006, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Program, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program

- Sovereign Bank, dated September 28, 2006, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated September 28, 2006, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated September 28, 2006, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated September 28, 2006, for loans that were originated under U.S Bank's Alternative Loan Program.

## SCHEDULE B

### *Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program

- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A , dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank One, N.A , dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- Charter One Bank, N.A , dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AFS EducationGAIN Loan Program.

- Charter One Bank, N A , dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A , dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N A , dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education)

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education Loan Programs

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, and Axiom Alternative Loan Programs).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, Compass Bank Alternative Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's CASL Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- KeyBank, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program

- TCP National Bank, dated July 22, 2005. for loans that were originated under TCF National Bank's Alternative Loan Program

- U.S. Bank, N.A., dated May 1, 2005, for loans that were originated under U.S Bank's Alternative Loan Program.

# Exhibit E

TTS2C*****4541;;    AES/PA    VTAM KAFK    TSX2D

DATE 04/06/18 17:00:33    LOAN FINANCIAL ACTIVITY    PAGE 1 OF 13

BORROWER SSN: ***-**-4541  NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122982QT-NCT
GUARANTOR: TERI - DTC    CUST ACCT: LT10  ORIG BAL: 16,216.22
BOND ISSUE: NCT20063   PD AHEAD:   STATUS: ACTIVE    CURR BAL:    0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 10/03/17 | 10/03/17 | 5003A | 25.00CR | 0.00 | 0.00 |
| 2 | | 10/02/17 | 10/02/17 | 1030A | 17,569.12CR | 26.75 | 0.00 |
| 3 | | 09/22/17 | | 2601A | 5.00 | 82.90 | 17,045.19 |
| 4 | | 08/22/17 | | 2601A | 5.00 | 83.05 | 17,045.19 |
| 5 | | 07/22/17 | | 2601A | 5.00 | 77.64 | 17,045.19 |
| 6 | | 06/22/17 | | 2601A | 5.00 | 79.52 | 17,045.19 |
| 7 | | 05/22/17 | | 2601A | 5.00 | 75.37 | 17,045.19 |
| 8 | | 04/22/17 | | 2601A | 5.00 | 76.53 | 17,045.19 |
| 9 | | 03/22/17 | | 2601A | 5.00 | 0.00 | 17,045.19 |
| 10 | | 03/22/17 | 03/27/17 | 1010C | 43.97CR | 66.54 | 17,045.19 |

SELECTION _ _

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN: ***-**-4541   NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 12296ZQT-NCT
GUARANTOR: TER1 - DTC               CUST ACCT:  IT10  ORIG BAL:  16,218.22
BOND ISSUE: NCT20063   PD AHEAD:    STATUS: ACTIVE     CURR BAL:      0.00


      REV  EFFECTIVE   POSTED    TRAN       TRAN      INTEREST    PRINCIPAL
      RSA    DATE       DATE     TYPE      AMOUNT     ACCRUED     BALANCE
  1        02/23/17   02/23/17  1010C     180.87CR    78.31     17,045.19
  2        01/22/17             2601A       1.77      43.18     17,102.80
  3        01/04/17   01/05/17  1010C     197.89CR    30.92     17,102.80
  4        12/22/16             2601A       4.39      40.24     17,225.14
  5        12/05/16   12/05/16  1010C     391.06CR    31.27     17,225.14
  6        11/22/16             2601A       5.00      36.08     17,503.78
  7        11/07/16   11/07/16  1010C     350.00CR    38.44     17,503.78
  8        10/22/16             2601A       5.00      71.93     17,503.78
  9        09/22/16             2601A       5.00      73.98     17,503.78
 10        08/22/16             2601A       5.00      73.68     17,503.78


     SELECTION ___


F1=HELP  F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9 PRT   F12=CAN
```

TIS2C*****4541;;                AES/PA          VTAM NAFX          TSX3D

DATE 04/06/18 17:30:39     LOAN FINANCIAL ACTIVITY          PAGE 3 OF 13

BORROWER SSN: ***-**-4541   NAME: SNARR, JAMES T

1ST DISB: 07/28/06 LN SEQ: 0001   LN PGM: ALFLN      OWN: 122962QT-NCT

GUARANTOR: TERI - DTC            CUST ACCT: 1110   ORIG BAL: 16,216.22

BOND ISSUE: NCT20063   PD AHEAD:    STATUS: ACTIVE      CURR BAL:        0.00

| | REV RRA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 07/28/16 | | 2601A | 5.00 | 26.14 | 17,503.78 |
| 2 | | 07/11/16 | 07/11/16 | 1010C | 44.18CR | 130.08 | 17,503.78 |
| 3 | | 05/17/16 | 05/16/16 | 1010C | 180.55CR | 19.07 | 17,503.78 |
| 4 | | 05/09/16 | 05/09/16 | 1010C | 110.45CR | 66.92 | 17,665.26 |
| 5 | | 04/11/16 | 04/11/16 | 1010C | 141.72CR | 64.73 | 17,708.79 |
| 6 | | 03/15/16 | 03/15/16 | 1010C | 141.72CR | 98.46 | 17,785.78 |
| 7 | | 02/03/16 | 02/04/16 | 1010C | 92.88CR | 60.22 | 17,829.04 |
| 8 | | 01/08/16 | 01/11/16 | 1010C | 193.56CR | 69.44 | 17,861.60 |
| 9 | | 12/09/15 | 12/10/15 | 1010C | 117.25CR | 69.61 | 17,992.72 |
| 10 | | 11/09/15 | 11/10/15 | 1010C | 137.54CR | 48.86 | 18,030.36 |

SELECTION __

F1 HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

BORROWER SSN: \*\*\*-\*\*-4541  NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPIN     OWN: 123362QT-NCT
GUARANTOR: TERI - DTC              CUST ACCT: LT10  ORIG BAL:  16,216.22
BOND ISSUE: NCT20063    PD AHEAD:    STATUS: ACTIVE      CURR BAL:      0.00

|     | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|-----|-----|-----------|--------|------|--------|----------|-----------|
|     | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 |  | 10/20/15 | 10/20/15 | 1010C | 201.21CR | 49.40 | 16,321.24 |
| 2 |  | 09/29/15 | 09/30/15 | 1010C | 218.44CR | 16.58 | 16,373.05 |
| 3 |  | 09/22/15 |  | 2601A | 5.00 | 30.80 | 16,439.10 |
| 4 |  | 09/09/15 | 09/09/15 | 1010C | 317.60CR | 42.66 | 16,439.10 |
| 5 |  | 08/22/15 |  | 2601A | 5.00 | 73.43 | 16,448.22 |
| 6 |  | 07/22/15 |  | 2601A | 5.00 | 70.96 | 16,448.22 |
| 7 |  | 06/22/15 |  | 2601A | 5.00 | 106.44 | 16,448.22 |
| 8 |  | 05/28/15 | 05/09/15 | 1010C | 142.32CR | 40.38 | 16,448.22 |
| 9 |  | 04/21/15 | 04/21/15 | 1010C | 142.32CR | 109.07 | 16,550.16 |
| 10 |  | 03/06/15 | 03/09/15 | 1010C | 142.32CR | 38.25 | 16,563.11 |

        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12 CAN

BORROWER SSN: ***-**-4541  NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QT-NCT
GUARANTOR: TERI - DTC            CUST ACCT:  LT10  ORIG BAL:  16,216.22
BOND ISSUE: NCT20063   PD AHEAD:     STATUS: ACTIVE      CURR BAL:        0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 02/18/15 | 02/19/15 | 1010C | 142.32CR | 95.64 | 18,687.18 |
| 2 | | 01/09/15 | 01/09/15 | 1010C | 142.32CR | 67.19 | 18,733.86 |
| 3 | | 12/12/14 | 12/12/14 | 1010C | 142.32CR | 77.11 | 18,808.99 |
| 4 | | 11/10/14 | 11/10/14 | 1010C | 142.32CR | 79.78 | 18,874.20 |
| 5 | | 10/08/14 | 10/09/14 | 1010C | 142.32CR | 67.96 | 18,936.74 |
| 6 | | 09/10/14 | 09/10/14 | 1010C | 130.92CR | 34.58 | 19,011.10 |
| 7 | | 08/26/14 | 08/27/14 | 1010C | 153.72CR | 5.77 | 19,105.44 |
| 8 | | 08/22/14 | | 2601A | 5.00 | 95.25 | 19,149.14 |
| 9 | | 07/14/14 | 07/14/14 | 1010C | 119.31CR | 85.53 | 19,149.14 |
| 10 | | 06/09/14 | 06/10/14 | 1010C | 142.90CR | 95.78 | 19,182.92 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN: ***-**-4541  NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122963QT NCT
GUARANTOR: TEXT - DTC              CUST ACCT: LT10  ORIG BAL: 18,216.33
BOND ISSUE: NCT20063  PD AHEAD:    STATUS: ACTIVE       CURR BAL:      0.00
```

|    | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|    | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 05/05/14 | 05/06/14 | 1010C | 142.93CR | 59.18 | 19,240.04 |
| 2 | | 04/11/14 | 04/11/14 | 1010C | 152.93CR | 79.23 | 19,323.79 |
| 3 | | 03/10/14 | 03/10/14 | 1010C | 153.93CR | 77.19 | 19,398.47 |
| 4 | | 02/07/14 | 02/10/14 | 1010C | 142.67CR | 72.52 | 19,473.21 |
| 5 | | 01/09/14 | 01/09/14 | 1010C | 280.81CR | 45.37 | 19,545.36 |
| 6 | | 12/22/13 | | 2601A | 5.00 | 57.98 | 19,702.41 |
| 7 | | 11/29/13 | 12/02/13 | 1010C | 120.95CR | 17.68 | 19,702.41 |
| 8 | | 11/22/13 | | 2601A | 5.00 | 113.68 | 19,702.41 |
| 9 | | 10/08/13 | 10/09/13 | 1010C | 142.15CR | 73.63 | 19,702.41 |
| 10 | | 09/09/13 | 09/10/13 | 1010C | 141.98CR | 75.00 | 19,770.93 |

```
      SELECTION __

F1=HELP  F3=EXIT  F5=REF  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: \*\*\*-\*\*-4541   NAME: SNARR, ZAKES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN      CNN: 12296ZQT-NCT
GUARANTOR: TERI - DTC                CUST ACCT: LT10  ORIG BAL:  16,216.22
BOND ISSUE: NCT20062   PD AHEAD:    STATUS: ACTIVE      CURR BAL:        0.00

|    | REV | EFFECTIVE | POSTED   | TRAN  | TRAN      | INTEREST | PRINCIPAL |
|----|-----|-----------|----------|-------|-----------|----------|-----------|
|    | REA | DATE      | DATE     | TYPE  | AMOUNT    | ACCRUED  | BALANCE   |
| 1  |     | 08/09/13  | 08/09/13 | 1010C | 141.97CR  | 81.80    | 19,833.91 |
| 2  |     | 07/08/13  | 07/09/13 | 1010C | 142.28CR  | 79.62    | 19,894.08 |
| 3  |     | 06/07/13  | 06/10/13 | 1010C | 153.30CR  | 74.81    | 19,956.74 |
| 4  |     | 05/09/13  | 05/09/13 | 1010C | 131.40CR  | 80.18    | 20,025.23 |
| 5  |     | 04/08/13  | 04/08/13 | 1010C | 164.25CR  | 98.60    | 20,086.45 |
| 6  |     | 03/01/13  | 03/04/13 | 1010C | 284.70CR  | 18.39    | 20,152.10 |
| 7  |     | 02/22/13  |          | 2601A | 5.00      | 44.68    | 20,368.73 |
| 8  |     | 02/05/13  | 02/05/13 | 1010C | 131.40CR  | 36.86    | 20,368.73 |
| 9  |     | 01/22/13  |          | 2601A | 5.00      | 50.03    | 20,408.24 |
| 10 |     | 01/03/13  | 01/04/13 | 1010C | 144.54CR  | 31.61    | 20,408.24 |

        SELECTION
                                             /
F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12 CAN

ITS2C*****4541;;                AES/PA          VTAM NAPK       TSX2D

DATE 04/06/18 17:00:42      LOAN FINANCIAL ACTIVITY         PAGE  8 OF 13

BORROWER SSN: ***-**-4541  NAME: SNARR, JAMES T

1ST DISB: 07/28/06 LN SEQ: 0001  IN PGM: ALPLN      OWN: 122962QT-NCT

GUARANTOR: TERI - DTC          CUST ACCT: 1110  ORIG BAL: 19,216.22

BOND ISSUE: NCT20063   PD AHEAD:    STATUS: ACTIVE      CURR BAL:        0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/22/12 | | 2601A | 5.00 | 50.04 | 20,466.13 |
| 2 | | 12/03/12 | 12/04/12 | 1010C | 144.92CR | 29.05 | 20,466.13 |
| 3 | | 11/22/12 | | 2601A | 5.00 | 52.82 | 20,524.18 |
| 4 | | 11/02/12 | 11/06/12 | 1010C | 153.78CR | 29.28 | 20,524.18 |
| 5 | | 10/22/12 | | 2601A | 5.00 | 37.28 | 20,606.40 |
| 6 | | 10/08/12 | 10/09/12 | 1010C | 153.78CR | 42.84 | 20,606.40 |
| 7 | | 09/22/12 | | 2601A | 5.00 | 40.24 | 20,672.10 |
| 8 | | 09/07/12 | 09/10/12 | 1010C | 141.75CR | 42.97 | 20,672.10 |
| 9 | | 08/22/12 | | 2601A | 5.00 | 69.80 | 20,696.08 |
| 10 | | 07/27/12 | 07/30/12 | 1010C | 141.74CR | 13.44 | 20,696.08 |

SELECTION

F1=HELP  F3=EXIT  F5=REF  F7=BKWD  F8=FWD  F9=PRT  F12 CAN

BORROWER SSN: ***-**-4541  NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QT-NCT
GUARANTOR: TERI - DTC                CUST ACCT: LI10  ORIG BAL:  16,216.22
BOND ISSUE: NCT20063    PD AHEAD:      STATUS: ACTIVE      CURR BAL:      0.00

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 07/22/12       |             | 2601A     | 5.00        | 45.71            | 20,762.26         |
| 2  |         | 07/05/12       | 07/05/12    | 1010C     | 141.47CR    | 34.95            | 20,762.26         |
| 3  |         | 06/22/12       |             | 2601A     | 5.00        | 112.93           | 20,762.26         |
| 4  |         | 05/11/12       | 05/11/12    | 1010C     | 141.47CR    | 56.69            | 20,762.26         |
| 5  |         | 04/20/12       | 04/20/12    | 1010C     | 141.47CR    | 135.38           | 20,847.04         |
| 6  |         | 03/01/12       | 03/01/12    | 1010C     | 131.47CR    | 63.13            | 20,933.13         |
| 7  |         | 02/07/12       | 02/08/12    | 1010C     | 311.08CR    | 44.05            | 20,921.50         |
| 8  |         | 01/22/12       |             | 2601A     | 5.00        | 24.72            | 21,077.05         |
| 9  |         | 01/13/12       | 01/13/12    | 1010C     | 43.75CR     | 27.46            | 21,077.05         |
| 10 |         | 01/03/12       | 01/03/12    | 1010C     | 79.58CR     | 32.92            | 21,077.05         |

SELECTION __

F1:HELP  F3:EXIT  F5:RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

ITS2C*****4541;,    AES/PA    VTAM NAFK    TSX2D

DATE 04/06/12 17:00:44    LOAN FINANCIAL ACTIVITY    PAGE 10 OF 13

BORROWER SSN: ***-**-4541  NAME, SNARR, JAMES T

1ST DISB: 07/28/08 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122362QT-NCT

GUARANTOR: TERI - DTC    CUST ACCT: 1010  ORIG BAL: 16,316.22

BOND ISSUE: NCT20063  PD AHEAD:  STATUS: ACTIVE    CURR BAL:    0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/22/11 | | 2601A | 5.00 | 139.71 | 21,077.05 |
| 2 | | 11/01/11 | 11/01/11 | 7001A | 0.00 | 273.19 | 21,077.05 |
| 3 | | 07/22/11 | 07/22/11 | 1010C | 66.52CR | 10.71 | 20,803.86 |
| 4 | | 07/16/11 | 07/18/11 | 1010C | 66.52CR | 110.14 | 20,856.05 |
| 5 | | 06/07/11 | 06/08/11 | 1010C | 138.68CR | 92.18 | 20,856.05 |
| 6 | | 05/04/11 | 05/04/11 | 1010C | 62.98CR | 62.66 | 20,902.55 |
| 7 | | 04/11/11 | 04/12/11 | 1010C | 75.70CR | 57.29 | 20,902.87 |
| 8 | | 03/21/11 | 03/22/11 | 1010C | 239.14CR | 19.29 | 20,921.28 |
| 9 | | 03/14/11 | 03/14/11 | 1010C | 310.56CR | 55.21 | 21,141.13 |
| 10 | | 02/22/11 | | 2601A | 5.00 | 85.59 | 21,171.30 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8 FWD  F9 PRT  F12 CAN

```
BORROWER SSN: ***-**-4541   NAME: SNARE, JAMES T
LST DISB: 07/28/06 LN SEQ: 0001   LN PGM: ALPLN      OWN: 122962QT-NCT
GUARANTOR: TERI - DEC              CUST ACCT: LT10  ORIG BAL:  16,216.22
BOND ISSUE: NCT20063   PD AHEAD:     STATUS: ACTIVE      CURR BAL:     0.00
```

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|---|---|---|---|---|---|---|
| | RRR | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 01/22/11 | | 2601A | 5.00 | 129.61 | 21,171.30 |
| 2 | | 12/06/10 | 12/06/10 | 1010C | 283.36CR | 38.82 | 21,171.30 |
| 3 | | 11/22/10 | | 2601A | 5.00 | 130.42 | 21,279.42 |
| 4 | | 10/06/10 | 10/06/10 | 7001A | 0.00 | 122.73 | 21,279.42 |
| 5 | | 08/23/10 | 10/06/10 | 7001A | 0.00 | 147.95 | 21,156.69 |
| 6 | | 07/01/10 | 07/01/10 | 7001A | 0.00 | 246.05 | 21,008.74 |
| 7 | | 04/01/10 | 04/01/10 | 7001A | 0.00 | 233.53 | 20,762.69 |
| 8 | | 01/01/10 | 01/04/10 | 7001A | 0.00 | 242.80 | 20,523.16 |
| 9 | | 10/01/09 | 10/01/09 | 7001A | 0.00 | 242.81 | 20,280.36 |
| 10 | | 07/01/09 | 07/01/09 | 7001A | 0.00 | 245.26 | 20,037.75 |

```
       SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: ***-**-4541  NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001  LN PGM: ALPLN    OWN: 123362QT NCT
GUARANTOR: TERI - DTC            CUST ACCT: LT30  ORIG BAL:  16,216.22
BOND ISSUE: NCT26062  PD AHEAD;   STATUS: ACTIVE    CURR BAL:      0.00

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 04/01/09 | 04/01/09 | 7001A | 0.00 | 261.78 | 19,792.49 |
| 2 | | 01/01/09 | 01/02/09 | 7001A | 0.00 | 360.91 | 19,530.71 |
| 3 | | 10/01/08 | 10/01/08 | 7001A | 0.00 | 329.61 | 19,169.80 |
| 4 | | 07/01/08 | 07/01/08 | 7001A | 0.00 | 285.89 | 18,840.19 |
| 5 | | 04/15/08 | 04/16/08 | 1010C | 530.68CR | 55.39 | 18,554.30 |
| 6 | | 04/01/08 | 04/18/08 | 7001A | 0.00 | 408.38 | 19,029.79 |
| 7 | | 01/01/08 | 04/18/08 | 7001A | 0.00 | 444.45 | 18,621.41 |
| 8 | | 10/01/07 | 04/18/08 | 7001A | 0.00 | 131.08 | 18,176.96 |
| 9 | | 09/04/07 | 04/18/08 | 7001A | 0.00 | 300.22 | 18,045.88 |
| 10 | | 06/16/07 | 04/18/08 | 7001A | 0.00 | 333.97 | 17,665.66 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7 BKWD  F8 FWD  F9 PRT  F12 CAN

```
BORROWER SSN: ***-**-4541   NAME: SNARR, JAMES T
1ST DISB: 07/28/06 LN SEQ: 0001   LN FDM: ALPLN       OWN: 122962QT-NCT
GUARANTOR: TERI - DTC                  CUST ACCT:  LT16  ORIG BAL:  16,216.22
BOND ISSUE: NCT20063    PD AHEAD:     STATUS: ACTIVE       CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 04/01/07 | 04/18/08 | 7001A | 0.00 | 409.69 | 17,311.89 |
| 2 |  | 01/01/07 | 01/02/07 | 7001A | 0.00 | 414.69 | 16,902.20 |
| 3 |  | 09/28/06 | 09/28/06 | 0390A | 16,487.31 | 0.00 | 16,216.22 |
| 4 |  | 09/28/06 | 09/28/06 | 0395A | 16,487.31CR | 271.09 | 0.00 |
| 5 |  | 07/28/06 | 07/28/06 | 0101A | 16,216.22 | 0.00 | 16,216.22 |
| 6 |  |  |  |  |  |  |  |
| 7 |  |  |  |  |  |  |  |
| 8 |  |  |  |  |  |  |  |
| 9 |  |  |  |  |  |  |  |
| 10 |  |  |  |  |  |  |  |

```
     SELECTION


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

# Exhibit F

BORROWER SSN: ***-**-4541 NAME: JAMES T SNARR
1ST DISB DATE: 07/28/06   OWNER: NCT                    LOAN PGM: ALPLN
LOAN SEQ: 001           GUARANTOR: TERI    DCC

|  | BEGIN DATE | END DATE | GRACE END DATE | CAP IND | DAYS USED | DAYS LEFT | TOTL YOS USED | CERT DATE |
|---|---|---|---|---|---|---|---|---|
| F - GRN/TEMP | 08 01 11 10 31 11 |  |  | Y | 92 | 208 | 5.2 | 08 19 11 |
| F - IAT SCH NT | 08 23 10 10 05 10 |  |  | Y | 44 | UNL | 1.4 | 09 28 10 |
| D - SCHL FULL | 09 04 07 08 22 10 |  |  | Y | 1084 | 742 | 35.6 | 09 28 10 |
| F - GEN/TEMP | 07 01 07 09 03 07 |  |  | Y | 65 | 208 | 5.2 | 06 13 07 |
| — | — — — — — — | | | — | | | | |
| — | — — — — — — | | | — | | | | |
| — | — — — — — — | | | — | | | | |

F1=HELP  F3=EXIT  F5=REF  F6=ELG  F7=BKWD  F8=FWD  F9 PRT  F10=HIST  F12=CAN

# Exhibit G

BORROWER SSN \*\*\*-\*\*-4541    NAME JAMES T SNARR

|     |     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DUE | LOAN |       |
| --- | --- | ----- | ------- | ----- | ----- | ------- | ------- | ---- | ----- |
| SEL | STA | TYPE  | AMOUNT  | MNLS  | TERM  | DATE    | DATE    | PGM  | OWNER |
| 1   | I   | L     | 148.87  | 2     | 160   | 04/06/17 | 07/28/06 | ALPLN | NCT  |
| 2   | I   | L     | 145.50  | 2     | 171   | 05/06/16 | 07/28/06 | ALPLN | NCT  |
| 3   | I   | L     | 141.72  | 2     | 182   | 06/06/15 | 07/28/06 | ALPLN | NCT  |
| 4   | I   | L     | 142.32  | 2     | 193   | 07/06/14 | 07/28/06 | ALPLN | NCT  |
| 5   | 1   | L     | 142.67  | 2     | 204   | 08/06/13 | 07/28/06 | ALPLN | NCT  |
| 6   | 1   | L     | 143.34  | 2     | 215   | 09/06/12 | 07/28/06 | ALPLN | NCT  |
| 7   | 1   | L     | 141.47  | 2     | 226   | 10/06/11 | 07/28/06 | ALPLN | NCT  |
| 8   | 1   | L     | 138.68  | 2     | 237   | 11/06/10 | 07/28/06 | ALPLN | NCT  |
| 9   | 1   | L     | 176.96  | 2     | 233   | 03/06/08 | 07/28/06 | ALPLN | NCT  |
| 10  | 1   | L     | 168.90  | 2     | 239   | 07/23/07 | 07/28/06 | ALPLN | NCT  |
|     | I   | \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | | | | | | |
|     | I   | \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | | | | | | |

SELECTION  __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRF  F12=CAN

# Exhibit H

# Loan Payment History Report
## Date: 2020-01-09

| | | | |
|---|---|---|---|
| Account Number: | 4541-001-PHEA | | |
| Social Security Number: | 4541 | Product: | |
| Name: | SNARR, JAMES T | Officer Code: | 777063 |
| Birth Date: | 1977 | School: | CALIFORNIA STATE UNIVERSITY - SACRAMENTO |
| Address 1: | 2444 W 1200 N | Program Year: | 200607 |
| Address 2: | | | |
| City: | PROVO | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | UT | Interest Rate: | 6.21% |
| Zip Code: | 84601-0000 | | |
| | | Last Payment Date: | 2017-03-22 |
| | | Last Payment Amount: | $43.97 |
| Contract Date: | 2006-07-28 | Last Interest Date: | 2020-01-09 |
| Vendor Placement Date: | 2019-10-03 | Accrued Interest: | $2,597.98 |
| Charge Off Date: | 2017-10-02 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $17,569.12 | Net Interest: | $2,597.98 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Current Principal: | $17,569.12 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2006-07-28 | Net Costs: | $0.00 |
| Disbursement Amount: | $16,216.22 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2017-10-31 | 00:01 | 82 | $17,569.12 @ 5.730 / 10/05/2017 - 10/31/2017 | $79.98 |
| System | 2017-11-30 | 00:01 | 82 | $17,569.12 @ 5.730 / 10/31/2017 - 11/30/2017 | $82.74 |
| System | 2017-12-01 | 00:01 | 82 | $17,569.12 @ 5.730 / 11/30/2017 - 12/01/2017 | $2.76 |
| System | 2017-12-31 | 00:01 | 82 | $17,569.12 @ 5.740 / 12/01/2017 - 12/31/2017 | $82.89 |
| System | 2018-01-01 | 00:01 | 82 | $17,569.12 @ 5.740 / 12/31/2017 - 01/01/2018 | $2.76 |
| System | 2018-01-31 | 00:01 | 82 | $17,569.12 @ 5.870 / 01/01/2018 - 01/31/2018 | $84.76 |
| System | 2018-02-01 | 00:01 | 82 | $17,569.12 @ 5.870 / 01/31/2018 - 02/01/2018 | $2.83 |
| System | 2018-02-28 | 00:01 | 82 | $17,569.12 @ 6.060 / 02/01/2018 - 02/28/2018 | $78.76 |
| System | 2018-03-01 | 00:01 | 82 | $17,569.12 @ 6.060 / 02/28/2018 - 03/01/2018 | $2.92 |
| System | 2018-03-31 | 00:01 | 82 | $17,569.12 @ 6.080 / 03/01/2018 - 03/31/2018 | $87.80 |
| System | 2018-04-01 | 00:01 | 82 | $17,569.12 @ 6.080 / 03/31/2018 - 04/01/2018 | $2.93 |
| System | 2018-04-03 | 00:01 | 82 | $17,569.12 @ 6.170 / 04/01/2018 - 04/03/2018 | $5.94 |
| System | 2018-04-06 | 00:01 | 82 | $17,569.12 @ 6.170 / 04/03/2018 - 04/06/2018 | $8.91 |
| System | 2018-04-30 | 00:01 | 82 | $17,569.12 @ 6.170 / 04/06/2018 - 04/30/2018 | $71.28 |
| System | 2018-05-01 | 00:01 | 82 | $17,569.12 @ 6.170 / 04/30/2018 - 05/01/2018 | $2.97 |
| System | 2018-05-31 | 00:01 | 82 | $17,569.12 @ 6.380 / 05/01/2018 - 05/31/2018 | $92.13 |

| System | 2018-06-01 | 00:01 | 82 | $17,569.12 @ 6.380 / 05/31/2018 - 06/01/2018 | $3.07 |
|--------|------------|-------|----|-----------------------------------------------|-------|
| System | 2018-06-30 | 00:01 | 82 | $17,569.12 @ 6.410 / 06/01/2018 - 06/30/2018 | $89.48 |
| System | 2018-07-01 | 00:01 | 82 | $17,569.12 @ 6.410 / 06/30/2018 - 07/01/2018 | $3.09 |
| System | 2018-07-31 | 00:01 | 82 | $17,569.12 @ 6.500 / 07/01/2018 - 07/31/2018 | $93.86 |
| System | 2018-08-01 | 00:01 | 82 | $17,569.12 @ 6.500 / 07/31/2018 - 08/01/2018 | $3.13 |
| System | 2018-08-31 | 00:01 | 82 | $17,569.12 @ 6.590 / 08/01/2018 - 08/31/2018 | $95.16 |
| System | 2018-09-01 | 00:01 | 82 | $17,569.12 @ 6.590 / 08/31/2018 - 09/01/2018 | $3.17 |
| System | 2018-09-30 | 00:01 | 82 | $17,569.12 @ 6.580 / 09/01/2018 - 09/30/2018 | $91.85 |
| System | 2018-10-01 | 00:01 | 82 | $17,569.12 @ 6.580 / 09/30/2018 - 10/01/2018 | $3.17 |
| System | 2018-10-05 | 00:01 | 82 | $17,569.12 @ 6.610 / 10/01/2018 - 10/05/2018 | $12.73 |
| System | 2018-10-31 | 00:01 | 82 | $17,569.12 @ 6.610 / 10/05/2018 - 10/31/2018 | $82.72 |
| System | 2018-11-01 | 00:01 | 82 | $17,569.12 @ 6.610 / 10/31/2018 - 11/01/2018 | $3.18 |
| System | 2018-11-30 | 00:01 | 82 | $17,569.12 @ 6.760 / 11/01/2018 - 11/30/2018 | $94.36 |
| System | 2018-12-01 | 00:01 | 82 | $17,569.12 @ 6.760 / 11/30/2018 - 12/01/2018 | $3.25 |
| System | 2018-12-31 | 00:01 | 82 | $17,569.12 @ 6.810 / 12/01/2018 - 12/31/2018 | $98.34 |
| System | 2019-01-01 | 00:01 | 82 | $17,569.12 @ 6.810 / 12/31/2018 - 01/01/2019 | $3.28 |
| System | 2019-01-31 | 00:01 | 82 | $17,569.12 @ 6.850 / 01/01/2019 - 01/31/2019 | $98.92 |
| System | 2019-02-01 | 00:01 | 82 | $17,569.12 @ 6.850 / 01/31/2019 - 02/01/2019 | $3.30 |
| System | 2019-02-28 | 00:01 | 82 | $17,569.12 @ 7.020 / 02/01/2019 - 02/28/2019 | $91.23 |
| System | 2019-03-01 | 00:01 | 82 | $17,569.12 @ 7.020 / 02/28/2019 - 03/01/2019 | $3.38 |
| System | 2019-03-31 | 00:01 | 82 | $17,569.12 @ 7.010 / 03/01/2019 - 03/31/2019 | $101.23 |
| System | 2019-04-01 | 00:01 | 82 | $17,569.12 @ 7.010 / 03/31/2019 - 04/01/2019 | $3.37 |
| System | 2019-04-03 | 00:01 | 82 | $17,569.12 @ 6.990 / 04/01/2019 - 04/03/2019 | $6.73 |
| System | 2019-04-30 | 00:01 | 82 | $17,569.12 @ 6.990 / 04/03/2019 - 04/30/2019 | $90.84 |
| System | 2019-05-01 | 00:01 | 82 | $17,569.12 @ 6.990 / 04/30/2019 - 05/01/2019 | $3.36 |
| System | 2019-05-31 | 00:01 | 82 | $17,569.12 @ 7.000 / 05/01/2019 - 05/31/2019 | $101.08 |
| System | 2019-06-01 | 00:01 | 82 | $17,569.12 @ 7.000 / 05/31/2019 - 06/01/2019 | $3.37 |
| System | 2019-06-30 | 00:01 | 82 | $17,569.12 @ 6.990 / 06/01/2019 - 06/30/2019 | $97.57 |
| System | 2019-07-01 | 00:01 | 82 | $17,569.12 @ 6.990 / 06/30/2019 - 07/01/2019 | $3.36 |
| System | 2019-07-31 | 00:01 | 82 | $17,569.12 @ 6.940 / 07/01/2019 - 07/31/2019 | $100.22 |
| System | 2019-08-01 | 00:01 | 82 | $17,569.12 @ 6.940 / 07/31/2019 - 08/01/2019 | $3.34 |
| System | 2019-09-01 | 00:01 | 82 | $17,569.12 @ 6.900 / 08/01/2019 - 09/01/2019 | $102.96 |
| System | 2019-09-30 | 00:01 | 82 | $17,569.12 @ 6.730 / 09/01/2019 - 09/30/2019 | $93.94 |
| System | 2019-10-01 | 00:01 | 82 | $17,569.12 @ 6.730 / 09/30/2019 - 10/01/2019 | $3.24 |
| System | 2019-10-03 | 00:01 | 82 | $17,569.12 @ 6.600 / 10/01/2019 - 10/03/2019 | $6.35 |
| System | 2019-10-31 | 00:01 | 82 | $17,569.12 @ 6.600 / 10/03/2019 - 10/31/2019 | $88.95 |
| System | 2019-11-01 | 00:01 | 82 | $17,569.12 @ 6.600 / 10/31/2019 - 11/01/2019 | $3.18 |
| System | 2019-11-30 | 00:01 | 82 | $17,569.12 @ 6.530 / 11/01/2019 - 11/30/2019 | $91.15 |
| System | 2019-12-01 | 00:01 | 82 | $17,569.12 @ 6.530 / 11/30/2019 - 12/01/2019 | $3.14 |
| System | 2019-12-03 | 00:00 | 33 | FILE SUMMONS&COM | $360.00 |
| System | 2019-12-03 | 00:00 | 33 | SVS OF PROCESS | $65.00 |
| System | 2019-12-03 | 00:01 | 82 | $17,569.12 @ 6.280 / 12/01/2019 - 12/03/2019 | $6.05 |
| System | 2019-12-31 | 00:01 | 82 | $17,569.12 @ 6.280 / 12/03/2019 - 12/31/2019 | $84.64 |
| System | 2020-01-01 | 00:01 | 82 | $17,569.12 @ 6.280 / 12/31/2019 - 01/01/2020 | $3.01 |
| System | 2020-01-09 | 00:01 | 82 | $17,569.12 @ 6.210 / 01/01/2020 - 01/09/2020 | $23.85 |

Department of Defense Manpower Data Center



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:              XXX-XX-4541
Birth Date:
Last Name:        SNARR
First Name:       JAMES
Middle Name:      T
Status As Of:     Jul-08-2020
Certificate ID:   D81G8T2Y7VWS9HM

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd
Seaside, CA  93955