Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
11167 S. Aspen Peak Dr.
South Jordan, UT 84095
(708) 715-2234
dan@bskilaw.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| JAMES T. SNARR, <br><br> Plaintiff, <br><br> vs. <br><br> TRANSWORLD SYSTEM, INC., U.S. BANK, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, <br><br> Defendants. | **PLAINTIFF'S OPPOSITION TO NCSLT and U.S. BANK'S JOINT MOTION TO DISMISS** <br><br> Case No:  2:21-cv-00003-HCN <br><br> Judge:   Howard C. Nielson, Jr. <br><br> (ORAL ARGUMENT REQUESTED) |

Plaintiff hereby submits his memorandum in opposition to National Collegiate

Student Loan Trust 2006-3 and U.S. Bank's Joint Motion to Dismiss. (D.E. 26).

## INTRODUCTION

Defendants filed a collection suit against Plaintiff without the records to

substantiate the debt. Defendants have known for years that they lack the necessary

documentation to meet their burden of proof, yet they continue to file collection actions

because they know more than 75% of cases will result in a default judgment. When

Plaintiff did not appear, Defendants moved for a default judgment supported by a

fabricated affidavit.

Defendants obtained their judgment, and now they claim Plaintiff is barred from attempting to hold Defendants liable because Plaintiff has been found to owe the debt. But if a consumer owes a debt, is the creditor entitled to pursue any means to recover the balance? Surely not. Both the Fair Debt Collection Practices Act (FDCPA) and the Utah Consumer Sales Practices Act (UCSPA) bar from deceptive and unconscionable collection efforts, regardless of the validity of the debt.

When Defendants lost or destroyed the necessary records to substantiate their claims, they lost their ability to pursue litigation as an avenue for collection. Defendants may maintain a right to seek payment, and Plaintiff still may owe the debt, but Defendants could no longer invoke the judiciary to aid its collection efforts. Defendants, however, continued filing actions, withholding from consumers and courts their inability to substantiate the debts. Defendants' method of collection violates state law, and Defendants should be held liable for their role. The Joint Motion to Dismiss should be denied.

**THE UTAH CONSUMER SALES PRACTICES ACT**

The Utah Consumer Sales Practices Act (UCSPA) "generally prohibits [either] deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction."[1] By its own terms, "[t]he UCSPA 'shall be construed liberally' to 'protect consumers from suppliers who commit deceptive and unconscionable sales

---

[1] *Carlie v. Morgan*, 922 P.2d 1, 5-6 (Utah 1996)

practices."[2] "[A]ttorneys and law firms that are regularly engaged in the business of collecting consumer debt can be suppliers under the UCSPA".[3] And "[a] supplier who violates the UCSPA can be liable to the consumer for damages and court costs."[4]

## ARGUMENT

**I.      Res judicata is not applicable because there is no uniformity between the underlying debt cause of action and the present causes of action for deceptive debt collection and Plaintiff's claims are not compulsory counterclaims.**

U.S Bank and NCSLT (together "Defendants") claim res judicata bars Plaintiff's claim, describing the cause of action as compulsory counterclaims which should have been brought in the underlying collection suit. The argument fails because Plaintiff's causes of action did not exist before the filing of the underlying suit and there is no identity between the breach of contract claim and the present case.

Similar res judicata arguments was previously rejected by the Utah District Court under similar circumstances in *Carvana v. MFG Financial, Inc*, 547 F.Supp.2d 1219 (2008). In *Carvana*, a debt collector (MFG) filed a small claims court action and obtained a judgment against a debtor who did not live in the State of Utah, allegedly violating the FDCPA's venue provision. *Id* at 1222. After Carvana filed an FDCPA action in federal court, MFG moved for dismissal under the same res judicata defenses raised by Forsythe.

---

[2] *Reid v. LVNV Funding, LLC*, No. 2:14CV471DAK, 2016 U.S. Dist. LEXIS 7233, 2016 WL 247571, at *6 (D. Utah Jan. 20, 2016).
[3] *Brown v. Constantino*, No. 2:09CV357DAK, 2009 U.S. Dist. LEXIS 100552, 2009 WL 3617692, at *4 (D. Utah Oct. 27, 2009)
[4] *Burnett v. Mortgage Registration Sys., Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013); see also Utah Code Ann. § 13-11-19(2).

*Id* at 1222-23. Judge Kimball rejected these defenses for lack of identity between the two cases. *Id* at 1226-227.

Under Utah law, "the cause of action in the present suit must be identical to the one brought in the prior suit" for "the doctrine of res judicata to preclude a subsequent cause of action". *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 28, 16 P.3d 1214, 1221. Two causes of action are not identical if they "rest on a different state of facts and evidence of a different kind or character is necessary to sustain the two causes of action." *Id*. The *Carvana* court found no identity between the two causes of action, concluding "[MSG]'s state proceedings, arising from Carvana's outstanding debt, rest on a different set of facts and require different evidence than Carvana's federal action as to Defendants' unlawful collection of that debt." *Carvana*, 547 F.Supp.2d at 1226.

The same logic holds here. The evidence necessary to establish Plaintiff's obligation and the total amount owed is distinct from the evidence and facts necessary to establish Defendants' liability. There is no identity between the causes of action in the two cases, therefore res judicata cannot bar the present case.

A. Plaintiff's claims are not barred by claim preclusion because the debt collection action and present case do not share operative facts and evidence.

Defendants argue Plaintiff's case is barred by claim preclusion. Claim preclusion is a doctrine of res judicata that serves to bar claims in subsequent suits where the claim to be barred was presented or "could and should have been presented" in the first suit. *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988). Plaintiff did not raise his claims in the prior suit, therefore claim preclusion rests on whether the claims "should have been

presented" in the collection action. *Id*. Plaintiff was not required to raise his claims in the prior suit because: (1) they did not arise prior to the filing of the complaint; and (2) the facts and law necessary to prove the breach of contract claim alleged in the underlying action and the consumer protection claims alleged in the present action are not identical.

To start, a claim can only be barred by claim preclusion if it arose "before the filing of the complaint in the first action". *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 27, 16 P.3d 1214, 1220. Here, none of the claims arose before the filing of the collection lawsuit. All claims, premised on unlawful collection attempts, arose at the earliest once the lawsuit was filed.[5] Plaintiff incurred additional FDCPA and UCSPA claims once TSI's fraudulent affidavit was filed in the collection action – an event after the complaint was filed. Accordingly, the claims cannot be barred by claim preclusion because they did not exist "prior to" the filing of a complaint.[6]

Moreover, Plaintiff was not required to present his claims in the underlying collection because there is no identity of fact or law between the two cases. "In order for res judicata to apply, both suits must involve... *the same cause of action*". *Schaer v. State By & Through Utah Dep't of Transp.*, 657 P.2d 1337, 1340 (Utah 1983). In determining whether the requisite identity exists, the courts consider whether the two causes of action "rest on a different state of facts... evidence of a different kind or character is necessary

---

[5] Plaintiff would argue the claims did not arise until at least after the complaint was filed because Plaintiff did not become aware of the suit's filing until after the fact. Moreover, Plaintiff would argue his claims did not accrue until he learned of the underlying fraud which occurred after entry of the default judgment. In any case, the cause of action clearly did not arise before the complaint was filed, accordingly claim preclusion is inapplicable.

to sustain the two causes of action… [and whether] evidence of the two causes of action relates to… two completely different and separate time periods". *Id.*

There is little in terms of relevant shared facts, shared evidence, and shared time periods between the collection action and the present case. The underlying action involved an outstanding balance on a student loan. To succeed on its claim, Defendants needed to establish the four elements of breach of contract: (1) contract; (2) performance; (3) breach: and (4) damages. *Carmichael v. Higginson*, 2017 UT App 139, ¶ 10, 402 P.3d 146, 149. The evidence and facts necessary to establish their case consisted of the agreement between Plaintiff and the original creditor, the charges for services, evidence of non-payment, and the current outstanding balance. The evidence comes from a time-period predating NCSLT's ownership of the debt. Indeed, little of the evidence necessary to prevail on the underlying collection action involves NCSLT or its actions.

By comparison, Plaintiff's claims solely regard Defendants' attempt to collect the debt via lawsuit. His claims have nothing to do with the original creditor, the amount outstanding, the service provided, or the outstanding balance. The relevant time-period for this case is the date the suit was filed and the subsequent litigation by Defendants. And while Plaintiff will attack the affidavit TSI created, none of the other evidence or facts produced in the collection suit serves to establish Defendants engaged in unfair and deceptive collection practices. Because there is little shared in terms of facts or evidence, claim preclusion is inapplicable.

Judge Kimball rejected this same defense under similar facts in *Carvana v. MFG Financial, Inc*, 547 F.Supp.2d 1219 (2008). In *Carvana*, a debt collector (MFG) filed a

small claims court action and obtained a judgment against a debtor who did not live in the State of Utah, allegedly violating the FDCPA's venue provision. *Id* at 1222. After Carvana filed an FDCPA action in federal court, MFG moved for dismissal under the same res judicata defenses raised by Forsythe. *Id* at 1222-23. Judge Kimball rejected these defenses. *Id* at 1226-7. The *Carvana* court found no identity between the two causes of action, concluding "[MFG]'s state proceedings, arising from Carvana's outstanding debt, rest on a different set of facts and require different evidence than Carvana's federal action as to Defendants' unlawful collection of that debt." *Carvana*, 547 F.Supp.2d at 1226.

B. <u>Plaintiff's claims are not compulsory counterclaims under Utah Rule of Civil Procedure 13(a) because they do not arise from the transaction or occurrence that is the subject matter of the collection action.</u>

Compulsory counterclaims are governed by the Utah Rule of Civil Procedure 13(a). The Rule requires a defendant to bring all claims arising "out of the same transaction or occurrence that is the subject matter of the opposing party's claim" as a counterclaim or else have the claim barred in subsequent litigation. Defendants suggest that because all of Plaintiff's causes of action have some relation to the debt pursued in the underlying litigation, that all Plaintiff's claims were compulsory counterclaim. Defendants, however, overstate the breadth of Rule 13(a).

What constitutes the "same transaction or occurrence" as the subject matter of the litigation? No Utah court has provided guidance on this question, though the federal

courts have addressed it under the identical Fed. R. Civ. Proc 13(a). [7] "The courts have

given the terms 'transaction' and 'occurrence' ... flexible and realistic

constructions". *Pipeliners Local Union No. 798 v. Ellerd,* 503 F.2d 1193, 1198 (10th

Cir.1974). Rather than define the terms, courts have suggested the following standards:

> (1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
>
> (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule?
>
> (3) Will substantially the same evidence support or refute plaintiffs' claim as well as defendants' counterclaim?
>
> (4) Is there any logical relation between the claim and the counterclaim?

*Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir.

1974).

The compulsory counterclaim analysis is similar to the claim preclusion analysis

and much of it has already been addressed. However, to quickly summarize:

> (1) <u>Are the issues of fact and law raised by the claim and counterclaim largely the</u>
>
> <u>same</u>? No. The "breach of contract" action revolves around a student loan
>
> agreement, charges and payments, and the amount outstanding. In contrast,
>
> the UCSPA claim consider whether the debt is a consumer debt, whether
>
> Defendants are suppliers, was NCSLT licensed as a collection agency, was

---

[7] Plaintiff cites to some federal law in support of his arguments. The Court is allowed to consider federal law for guidance since Utah Rule of Civil Procedure 13(a) is substantially similar to the Federal Rule of Civil Procedure 13(a). *438 Main Street v. Easy Heat, Inc.,* 2004 UT 72, ¶ 64, 99 P.3d 801 (2004) ("Since the Utah Rules of Civil Procedure were fashioned after the Federal Rules of Civil Procedure, we may look to decisions under the federal rules for guidance.").

the affidavit filed in the collection action based of business records or was it fabricated, and were Defendants' attempts to collect the debt deceptive or unfair. There is little overlap.

(2) <u>Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule</u>? As addressed previously, claim preclusion would not bar the claims.

(3) <u>Will substantially the same evidence support or refute plaintiffs' claim as well as defendants' counterclaim</u>? No. Because of the different issues of fact and law, little of the evidence which would have been presented in the prior suit is relevant to the current claims.

(4) <u>Is there any logical relation between the claim and the counterclaim</u>? No. Setting aside that the underlying litigation constitutes the predicate act for the UCSPA claims, there is no logical relation between the "breach of contract" claim and the present statutory claims. The underlying suit concerned whether Plaintiff owed the debt and how much. This question is irrelevant to whether Defendants, in the process of collecting the debt, engaged in an unfair or deceptive act, including the crafting of fraudulent affidavits. Defendants' claim for money owed exists regardless of the outcome of this case. Additionally, Plaintiff's UCSPA claims would have existed regardless of the outcome in the underlying suit.

Accordingly, none of the factors support a finding that the UCSPA claims are compulsory counterclaims. See *Carvana v. MFG Fin., Inc*, 547 F. Supp. 2d 1219, 1227

(D. Utah 2008) (rejecting FDCPA[8] claim was a compulsory counterclaim); *Peterson v.*

*United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981) ("In our view, the goals of

Rule 13 and the purpose of the FDCPA can best be effectuated by holding the

counterclaim involved in this case permissive, rendering it cognizable in either the state

or federal court"); *Ayres v. National Credit Management Corp.,* 1991 WL 66845, at *4

(E.D.Pa. April 25, 1991)("Although defendants' right to payment from plaintiff is

certainly factually linked to the fairness of defendants' collection practices—there being

no attempted collection without an alleged debt—a cause of action on the debt arises out

of events different from the cause of action for abuse in collecting. The former centers on

evidence regarding the existence of a contract, the failure to perform on a contract, or

other circumstances leading to the creation of a valid debt. The latter centers on evidence

regarding the improprieties and transgressions, as defined by the FDCPA, in the

procedures used to collect the debt, regardless of the debt's validity.").

    C. *Kriston v. Petroulias*, cited by Defendants, does not support claim preclusion in
       this case.

In response to the weight of cases against them, Defendants cite to *Kriston v.*

*Petroulias*, 500 F. App'x 744, 745 (10th Cir. 2012). But their reliance on *Kriston* is

unavailing. There the 10th Circuit summarily affirmed the lower court finding that

---

[8] Any violation of the FDCPA should also be considered a violation of the UCSPA, as both
statutes prohibit the same deceptive or unconscionable conduct. Considering there are no
distinctions between the UCSPA and FDCPA's prohibitions (other than the UCSPA requiring
intent for a deceptive act, an issue addressed later in this brief), a debt collection act cannot
violate one statute but not the other.

Krison's claims should have been plead as counterclaims because "Kriston [did] not provide any support for his contention that the district court erred". *Id* at 746.

Moreover, the facts are distinguishable because *Kriston* involved a second lawsuit regarding claim over the exact same business transactions. In *Kriston*, a prior case filed by Mr. Peroulis asserted claims of embezzlement, breach of contract, breach of the implied covenant of good faith and fair dealing, and alter ego liability against Mr. Kriston resulted in a final judgment. *Kriston v. Peroulis*, No. 09-CV-00909-MSK-MEH, 2011 WL 684561, at *1 (D. Colo. Feb. 16, 2011). Mr. Kriston then brought a second suit alleging RICO violations arising from the same business transactions, alleging the terms of the loans were usurious and unreasonable. *Id*. The lower court found Mr. Kriston's case constituted a compulsory counterclaim because they relied on the same factual basis – identical business transactions. *Id* at * 2.

Here the transactions are not identical. Plaintiff does not allege a fraud in the student loan agreement itself – he alleges a subsequent fraud in the litigation. These are separate transactions. *Kirston* does not apply.

**II.    Utah litigation privilege does not apply because: (1) the privilege does not apply to statutory claims like the UCSPA; and (2) the privilege is inapplicable because Defendants acted in bad faith.**

a.  Utah's litigation privilege does not apply to Plaintiff's statutory UCSPA claims.

Plaintiff has alleged UCSPA violations and invasion of privacy/intrusion upon seclusion against Defendants.[9] Defendants argue their conduct is protected under litigation privilege. But while the Utah Supreme Court has applied litigation privilege to

---

[9] Plaintiff has not alleged a FDCPA violation against Defendants.

common law claims (like invasion of privacy), it has never applied the doctrine to a

statutory right such as the UCSPA.

In *Brown*, the District Court of Utah rejected a "litigation privilege" defense to a

UCSPA claim, finding that litigation privilege (a judicially created doctrine) is likely

limited to common law claims. *Brown v. Constantino*, No. 2:09CV00357DAK, 2009 WL

3617692, at *5 (D. Utah Oct. 27, 2009). Considering the UCSPA is a statutory claim, and

that its federal analog the FDCPA governs judicial proceedings, the *Brown* court

concluded litigation privilege would not bar liability for unconscionable or deceptive acts

committed as part of a judicial proceeding. *Id.*

Courts have reached a similar conclusion with respect to Ohio's litigation

privilege and its application to the UCSPA's sister statute: the Ohio Consumer Sales

Protection Act (OCSPA). *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 668

(S.D. Ohio 2004) ("[I]t does not appear that the Ohio courts would apply Ohio's absolute

litigation privilege to claims brought under the OCSPA."); *Delawder v. Platinum Fin.

Servs. Corp.*, 443 F. Supp. 2d 942, 954 (S.D. Ohio 2005); *Hartman v. Asset Acceptance

Corp.*, 467 F. Supp. 2d 769, 780 (S.D. Ohio 2004).

Litigation privilege is inapplicable to the UCSPA claims because they are created

by statute.

> b.  <u>Defendants are not entitled to litigation privilege at this stage of the proceeding
> where the allegations establish Defendants acted in bad faith during the course of
> litigation.</u>

Utah law contains a "bad faith" exception to the litigation privilege. *Moss v. Parr

Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 37, 285 P.3d 1157, 1166. ("where an

attorney has committed fraud or otherwise acted in bad faith, which is inherently 'acting in a manner foreign to his duties as an attorney,' the privilege will not shield an attorney from civil liability)." The 10th Circuit has since expanded the bad faith exception to include parties. *Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 757–58 (10th Cir. 2020). Moreover, the bad faith exception to the Utah litigation privilege "does not require the complaining party to formally claim fraud or bad faith". *Id.*

Plaintiff alleges Defendants purposefully submitted a false affidavit in support of their claims. This is sufficient to trigger the exception to litigation privilege, at least at this stage of litigation. Litigation privilege therefore does not bar Plaintiff's claims.

III. <u>**Plaintiff has viable UCSPA claims where student loans are a consumer transaction, Defendants are suppliers because they regularly enforce consumer transactions, and submitting false affidavits to obtain judgments is deceptive or unconscionable.**</u>

Defendants ask the Court to dismiss the conspiracy to commit UCSPA claims on the basis that there is no underlying statutory violation. Defendants' arguments are mostly premised on *Ayala v. Am. Home Mortg. Servicing, Inc.*, a pro se case resolved by a magistrate judge and adopted by the district court without objection. No. 2:11cv77, 2011 WL 3319543, at *3 (D. Utah June 8, 2011). The case is not representative of the UCSPA.

A. <u>Student loans fit within the broad description of "consumer transactions" as defined by the UCSPA.</u>

The UCSPA only applies to "consumer transactions", defined broadly as a:

sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible

(except securities and insurance) to, or apparently to, a person for: (i) primarily personal, family, or household purposes

Utah Code Ann.§ 13-11-3(2)(a).

Despite the law's breadth, Defendants argue a loan cannot be considered a consumer transaction because it is not a "a sale or disposition of the funds". This language derives from *Ayala*, where Magistrate Judge Warner concluded in a pro se case, without any explanation, that a mortgage loan was not a consumer transaction for the same reason. 2011 WL 3319543, at *3 (D. Utah June 8, 2011).

But the exclusion of loans from the UCSPA does not track with the statute's broad language. To start, while several exemptions to the UCSPA are contained within, student loans (or loans generally) are not specifically excluded from the scope of the UCSPA. That student loans are not expressly mentioned in the Statute "argues in favor of, rather than against, its application; the legislature has mandated a liberal construction of the Act, and it was explicit in excepting other transactions from its jurisdiction." *Wade v. Jobe*, 818 P.2d 1006, 1015 (Utah 1991).

Moreover, the Comments to the Uniform Consumer Sales Practices Act (from which the UCSPA derives) suggest the inclusion of loans. The Comments broadly define a "consumer transactions" as "a natural person who obtains or is solicited to obtain an item of goods, a service, or an intangible primarily for personal, family, or household purposes". § 2. [Definitions]., Unif.Consumer Sales Practices Act § 2 (Comment Subsection 1). A student loan fits within this definition, as it is the obtaining of money for a personal purpose (education).

The Comments also include debt collection agencies within the definition of a "supplier", further suggesting loans are governed by the UCSPA. § 2. [Definitions]., Unif.Consumer Sales Practices Act § 2 (Comment Subsection 5).

Finally, while no court has specifically ruled the UCSPA includes loans, this Court has found viable UCSPA claims premised on consumer loans. *Brown v. Constantino*, No. 2:09CV00357DAK, 2009 WL 3617692, at \*1 (D. Utah Oct. 27, 2009) (a Sear credit card); *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1239 (D. Utah 2016) (financial obligation from Credit One Bank); *Midland Funding LLC v. Sotolongo*, 2014 UT App 95, ¶ 1, 325 P.3d 871, 875 (credit card debt). Consumer loans are covered by the UCSPA.

B. <u>"Supplier" as defined by the UCSPA is not limited to the originator of the loan.</u>

Defendants further argue they cannot be governed by the UCSPA because they are not "suppliers". Their argument is premised on "suppliers" being limited to the originators of the loan, again relying on *Ayala*, 2011 WL 3319543, at \*3. But the definition of "supplier" is not so narrow:

> Supplier means a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer.

Utah Code Ann. § 13-11-3(6).

Not the language of the statute nor the Comments to the Uniform Act (which specifically include debt collection agencies as a "supplier") suggest only loan originators

may be liable. Defendants are assignees who regularly engage in the collection of student loans. They fit within the definition of a "supplier".

   C.    <u>Submitting a false affidavit in support of its collection action is a deceptive and unconscionable act.</u>

Plaintiff alleges Defendants, as a unit, filed collection lawsuits knowing they lacked the evidentiary basis to make their claims. As part of the conspiracy, TSI created false affidavits to support NCSLT's requests for judgment. These practices are clearly deceptive and unconscionable, and Defendants do not appear to argue otherwise.

Rather, Defendants attempt to distance themselves from TSI, disclaiming any involvement in the false affidavits. They try to frame their conduct as merely filing collection actions lacking evidentiary support – conduct separate and apart from the fraudulent affidavits.

But their attempts to disown their practice is unavailing. Plaintiff alleges the Defendants were involved in a conspiracy which included the creation of false evidence. So even if NCSLT did not create the false affidavit, it still presented and relied on false evidence in its litigation. Similarly U.S. Bank, the Indentured Trustee of NCSLT and the party responsible for hiring and retaining TSI, allowed the practice to continue. U.S. Bank allowed TSI to fabricate evidence and permitted NCSLT to continue to present said evidence in its collection actions. Both of these acts constitute deceptive and unconscionable acts.

**IV.** **Plaintiff has alleged a meeting of the minds on its UCSPA conspiracy claim.**

Defendants argue there cannot be a sufficient meeting of the minds between the Defendants because Plaintiff has alleged NCSLT did not approve of the sub-servicer arrangement with Transworld. But the allegation does not render the conspiracy futile because NCSLT operates through its Special Servicer (U.S. Bank) and U.S. Bank appointed TSI to be NCSLT's servicer. The Trust's Special Services approved of the arrangement, therefore NCSLT's disapproval is irrelevant.

Moreover, NCSLT's conduct establishes a meeting of the mind despite any reservation regarding TSI's role. NCSLT filed over 90,000 cases with TSI as its subservicer. *In re Nat'l Collegiate Student Loan Trusts Litig.*, No. CV 12111-VCS, 2020 WL 3960334, at *3 (Del. Ch. July 13, 2020) (citing NCSLT's complaint). In support of these collection lawsuits, TSI continued to submit evidence in support of NCSLT's claims. *Id.* The Defendants' behavior further suggests a meeting of the mind.

**V.** **An invasion of privacy claim is not limited to the invasion of physical space.**

Defendants asks the Court to dismiss the invasion of privacy case arguing invasion of privacy under Utah law is limited to invasion of physical space or private information. The Utah Court of Appeals rejected such a narrow application of invasion of privacy in *Stien v. Marriott Ownership Resorts, Inc.*, finding "there is no requirement that some physical area be entered". 944 P.2d 374, 378 (Utah Ct. App. 1997). The argument is baseless.

This Court has already found deceptive or unconscionable debt collection to sufficiently justify presenting the claim to a jury. *Gallegos v. LVNV Funding LLC*, 169 F.

Supp. 3d 1235, 1245 (D. Utah 2016) (invasion of privacy premised on wrongful

collection lawsuit survived summary judgment); *Reid v. LVNV Funding LLC*, No.

2:14CV471DAK, 2015 WL 926146, at *4 (D. Utah Mar. 4, 2015) (improper garnishment

due to identity theft was sufficient invasion of privacy claim to survive motion for

judgment on the pleadings). Accordingly, Plaintiff's claim survives the motion to

dismiss.

## VI.      **Plaintiff stipulates to dismissal of his claim for injunctive relief but asks the Court to dismiss the claim without prejudice for now.**

Plaintiff concedes he cannot currently, in good faith, allege a future harm

warranting injunctive relief. Plaintiff, however, asks the Court to dismiss his claim for

injunctive relief without prejudice. Plaintiff lacks knowledge as to whether Defendants

claim to own any other of this alleged student loans. If so, Plaintiff would be at risk of

future harm in the form of another lawsuit.

## VII.     **Plaintiff has not alleged FDCPA claims against Defendants.**

As a point of clarification, Plaintiff has not alleged FDCPA claims against

Defendants. Plaintiff has only alleged an FDCPA claim against TSI.

## CONCLUSION

Plaintiff respectfully requests the Court deny Defendants' joint motion to dismiss.

Plaintiff stipulates to dismissal of his claim for injunctive relief though asks that

dismissal of the claim be without prejudice.

DATED this 31st day of March, 2021.

BACZYNSKI LAW, PLLC


/s/ Daniel Baczynski
Daniel Baczynski
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on this <u>31</u><sup>st</sup> day of <u>March</u>, 2021. I caused a true and correct copy of this

**PLAINTIFF'S OPPOSITION TO NCSLT and US BANK'S JOINT MOTION TO**

**DISMISS** to be served on all parties of record through the Court's electronic filing system to

the following:


George W. Burbidge II, #6503
CHRISTENSEN & JENSEN, P.C.
275 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
George.burbidge@chrisjen.com
*Attorney for Transworld Systems Inc.*

Milo Steven Marsden (4879)
Adam C. Buck (12043)
DORSEY & WHITNEY LLP
111 South Main Street, 21st Floor
Salt Lake City, UT  84111
Telephone: (801) 933-7360
marsden.steve@dorsey.com
buck.adam@dorsey.com


/s/      Daniel Baczynski