Milo Steven Marsden (4879)
Adam C. Buck (12043)
DORSEY & WHITNEY LLP
111 S Main St., 21st Floor
Salt Lake City, UT 84111-2176
(801) 933-7360
marsden.steve@dorsey.com
buck.adam@dorsey.com

*Attorneys for Defendants National Collegiate Student Loan Trust 2006-3 and U.S. Bank National Association*

Albert J. Rota (*pro hac vice*)
JONES DAY
2727 North Harwood St.
Dallas, TX 75201
(214) 969.3698
ajrota@jonesday.com

*Attorney for U.S. Bank National Association*

David N. Anthony (*pro hac vice*)
Tim St. George (*pro hac vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-5410
david.anthony@troutman.com
tim.st.george@troutman.com

*Attorneys for Defendant National Collegiate Student Loan Trust 2006-3*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES T. SNARR,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSWORLD SYSTEM, INC., U.S. BANK, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3,<br><br>Defendants. | **DEFENDANT NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3 AND U.S. BANK'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS WITH PREJUDICE**<br><br>Case No. 2:21-cv-00003<br><br>District Judge Howard C. Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | RES JUDICATA BARS PLAINTIFF'S CLAIMS | 2 |
| II. | UTAH'S JUDICIAL PRIVILEGE DOCTRINE BARS PLAINTIFF'S CLAIMS | 4 |
| | A. The Privilege Applies to Plaintiff's Common Law Claims | 4 |
| | B. The So-Called "Bad Faith" Exception Does Not Apply Here | 5 |
| III. | PLAINTIFF CANNOT ALLEGE A VIOLATION OF THE UCSPA ON WHICH TO PREMISE HIS CIVIL CONSPIRACY CLAIM | 6 |
| | A. Student Loans Are Not "Consumer Transactions" Under the UCSPA | 6 |
| | B. None of the Defendants is a "Supplier" Under the USCPA | 7 |
| IV. | PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS BECAUSE PLAINTIFF CANNOT ALLEGE A "MEETING OF THE MINDS." | 8 |
| V. | PLAINTIFF FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY | 9 |
| CONCLUSION | | 9 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ayala v. Am. Home Mortg. Servicing, Inc.*,
  No. 2:11-cv-77, 2011 WL 3319543 (D. Utah June 8, 2011) .................................6, 7

*Bennett v. Jones, Waldo, Holbrook & McDonough*,
  2003 UT 9, 70 P.3d 17 (2003) .........................................................................4

*Berneike v. CitiMortgage, Inc.*,
  No. 2:11-cv-614, 2011 WL 10554844 (D. Utah Nov. 17, 2011) ............................6

*Brown v. Constantino*,
  No. 2:09-cv-00357DAK, 2009 WL 3617692 (D. Utah Oct. 27, 2009) ................4, 7

*Campbell v. Castle Stone Homes, Inc.*,
  No. 2:09-cv-250 TS, 2011 WL 902637 (D. Utah Mar. 15, 2011) ...........................5

*Carvana v. MFG Fin., Inc*,
  547 F. Supp. 2d 1219 (D. Utah 2008), *order vacated in part on
  reconsideration sub nom. Carvana v. MFG Fin., Inc.*, No. 2:07-cv-
  00128DAK, 2008 WL 2468539 (D. Utah June 17, 2008) .....................................3, 4

*Gallegos v. LVNV Funding LLC*,
  169 F. Supp. 3d 1235 (D. Utah 2016) ................................................................7

*Gonzalez v. Cullimore*, 2018 UT 9, 417 P.3d 129 (2018) .......................................7

*Gonzalez v. Wells Fargo Bank, N.A.*,
  No. 2:12-cv-00286 DN, 2013 WL 2456397 (D. Utah June 6, 2013)
  (unpublished) .................................................................................................6

*Marion Energy, Inc. v. KFJ Ranch P'ship*,
  2011 UT 50, 267 P.3d 863 (2011) .....................................................................8

*McMurray v. Forsythe Fin., LLC*,
  No. 1:20-cv-8 TS, 2021 WL 83265 (D. Utah Jan. 11, 2021) (unpublished) .........2, 3

 *Midland Funding LLC v. Sotolongo*
   2014 UT App 95, 325 P.3d 871 (2014) .............................................................7

*Morgan v. N.A.R., Inc.*,
 No. 2:06-cv-470, 2007 WL 9783313 (D. Utah July 18, 2007) (unpublished)..........................9

*Moss v. Parr Waddoups Brown Gee & Loveless*,
 2012 UT 42, 285 P.3d 1157 (2012) ...............................................................................4, 5

*Orient Mineral Co. v. Bank of China*,
 506 F.3d 980 (10th Cir. 2007) ..........................................................................................9

*Peterson v. XPO Logistics, Inc.*,
 812 F. App'x 754 (10th Cir. 2020) (unpublished) ...................................................5

*Price v. Armour*,
 949 P.2d 1251 (Utah 1997)..............................................................................................4

**Statutes**

Utah Code § 13-11-3................................................................................................................7

**Other Authorities**

16 Am. Jur. 2d Conspiracy § 57 ...............................................................................................8

Plaintiff's opposition concedes that only two claims remain pending against the National Collegiate Student Loan Trust 2006-3 (the "Trust") Trust and U.S. Bank National Association ("U.S. Bank"): (1) a "civil conspiracy" claim premised on a purported violation of the Utah Consumer Sales Practices Act ("UCSPA"); and (2) an "invasion of privacy" claim. Those claims still fail for multiple reasons.

First, recent—and directly-on-point—authority confirms that res judicata bars both of those claims, as the purported "evidence" on which these claims hinge was directly relevant to the state court collection action—namely, whether the Trust owned the debt at issue. Indeed, Plaintiff's claims are premised on the *filing* of the underlying state court complaint (on which the Trust ultimately obtained a judgment).

Second, Plaintiff concedes that the judicial privilege doctrine generally bars all common law claims, including his claim for invasion of privacy. But, he argues that his claim for civil conspiracy can nonetheless survive because it is founded upon the UCSPA. The expansive judicial privilege doctrine has no such exception, even when a common law claim is tenuously propped up by an alleged statutory violation. Plaintiff's further argument that his common law claims survive the judicial privilege doctrine because of the "bad faith" exception to that doctrine finds no support in the allegations pled, which merely implicate the sufficiency of filings in a state court collection action.

Third, the conspiracy claim fails because Plaintiff's alleged theory of a "general business relationship" among all of the co-Defendants is not sufficient to establish the requisite "meeting of the minds."

Finally, even if not otherwise barred, Plaintiff alleges no facts that would support a claim for invasion of privacy resulting from the filing of a state court collection action.

## I. RES JUDICATA BARS PLAINTIFF'S CLAIMS.

Plaintiff seeks to argue that the Trust wrongfully attempted to collect debt that it could not prove it owned through a state court lawsuit. The Trust's ownership of the debt was directly at issue in the state court lawsuit, and Plaintiff was required to raise his present arguments then. Recent case law makes clear that Plaintiff's attempt to re-litigate the very issues encompassed in the underlying state court collection lawsuit must be rejected because res judicata applies[1] where "the filing of [an earlier] state court complaint . . . makes up Plaintiff's claims." *McMurray v. Forsythe Fin., LLC*, No. 1:20-cv-8 TS, 2021 WL 83265, at *4 (D. Utah Jan. 11, 2021) (unpublished) (plaintiff's UCSPA and FDCPA claims were precluded when they "arose at the time that complaint was filed").

*McMurray* is instructive on this point. There, the district court held that res judicata barred plaintiff's UCSPA and FDCPA claims. 2021 WL 83265, at *4. In *McMurray*, the defendant filed an earlier state court action after plaintiff defaulted on his car payments, which resulted in a final judgment. *Id.* at *1. Plaintiff then initiated a federal court action alleging the state suit violated the UCSPA and FDCPA, averring that the defendant engaged in actions it could not legally take by attempting to collect debt without first registering as a debt collector and by misrepresenting its legal status by filing debt collection actions. *Id.* The court determined that where "the *filing of* the complaint [] g[ives] rise to [p]laintiff's claims," res judicata applies. *Id.* at *4 (emphasis added).

---

[1] As noted in the initial Joint Motion to Dismiss, U.S. Bank joins this argument only because, without any underlying claim against the other Defendants, the claims against U.S. Bank must be dismissed. U.S. Bank was not a party to the underlying state court action, and thus does not otherwise join in the res judicata argument.

Here, as in *McMurray*, "the state court complaint provides the basis for Plaintiff's claims." *McMurray*, 2021 WL 83265, at *4. Indeed, as the basis for his claim, Plaintiff alleges that "[t]he complaint filed by [Defendants] was unfair and deceptive in multiple ways, as explained herein," (Compl., ¶ 40), largely because the Trust purportedly "does not have documents substantiating its ownership of the debt." (*Id.*, ¶ 44.) Put another way, Defendants' claimed "inability to prove their ownership of any loans taken out by [Plaintiff] *at the time they filed* their collection action" (*id.*, ¶ 60 (emphasis added)), animates Plaintiff's claims—just as the *McMurray* defendants' "failure to properly register" as a debt collector "at the time that [state court] complaint was filed" provided the basis for that plaintiff's claims. 2021 WL 83265, at *4. And just as in *McMurray*, Plaintiff's claims needed to have been raised in the prior state court collection action to avoid their preclusion.[2]

In contrast to the on-point *McMurray* decision, Plaintiff's lead case is entirely distinguishable. In *Carvana v. MFG Fin., Inc*, 547 F. Supp. 2d 1219, 1227 (D. Utah 2008), *order vacated in part on reconsideration sub nom. Carvana v. MFG Fin., Inc.*, No. 2:07-cv-00128DAK, 2008 WL 2468539 (D. Utah June 17, 2008), the district court found res judicata inapplicable because the causes of action arose from "a different set of facts and require different evidence than [plaintiff's] federal action as to Defendants' unlawful collection of that debt." *Id.* at 1226. Specifically, the court found that the evidence at issue in two judgment renewal actions was different from evidence showing abusive debt collection practices arising from a failure to follow

---

[2] Moreover, Plaintiff's purported evidence of deception derives from statements in the Trust's 2018 Delaware Chancery Court action (*id.*, ¶¶ 54–56) and the September 15, 2017 the Consumer Financial Bureau Protection Consent Order (*id.*, ¶¶ 45–53)—all of which existed well before the December 3, 2019 state court action filing. (*Id.*, ¶ 38.)

3

the FDCPA's enumerated venue requirements based on the plaintiff's then-existing place of residence. *Id.* In reaching its conclusions, the court also noted that the underlying small claims court "explicitly indicated that it was making no final judgment." *Id.* at 1226–27. When combined with Utah statutes stating counterclaims in small claims matters are only permissive, the *Carvana* Court found res judicata inapplicable. *Id.* at 1227.

These circumstances, as explained above, are entirely lacking, where, as here, Plaintiff bases his claims on "[t]he complaint filed by [Defendants]" in the state court action and the sufficiency of the evidence supporting that filing. (Compl., ¶ 40.)

## II. UTAH'S JUDICIAL PRIVILEGE DOCTRINE BARS PLAINTIFF'S CLAIMS.

### A. The Privilege Applies to Plaintiff's Common Law Claims.

"Utah courts recognize a judicial proceedings privilege, the express purpose of which is to ensure free and open expression by all participants in the judicial proceedings by alleviating any and all fear that participation will subject them to the risk of subsequent legal actions." *Brown v. Constantino*, No. 2:09-cv-00357DAK, 2009 WL 3617692, at *4 (D. Utah Oct. 27, 2009) (unpublished) (internal citations and quotations omitted); *accord Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997). The privilege "extend[s] . . . to include 'all claims arising from the same statements.'" *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 28, 285 P.3d 1157 (2012) (quoting *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 67, 70 P.3d 17 (2003)).

Plaintiff concedes that "the Utah Supreme Court has applied [judicial] privilege to common law claims (like invasion of privacy)," (Opp., 11–12), but he then ignores the multiple cases cited in Defendants' Motion dismissing claims for civil conspiracy based on judicial privilege. Instead,

Plaintiff argues that his "UCSPA claims" are *statutory* in nature and thus avoid dismissal. *Id.* They are not. Plaintiff has not asserted a claim under the UCSPA. Instead, he has asserted a *common law* claim for civil conspiracy, which invokes the UCSPA as its predicate violation. Plaintiff's claim for civil conspiracy remains a common law claim that is subject to dismissal. *See, e.g.*, *Campbell v. Castle Stone Homes, Inc.*, No. 2:09-cv-250 TS, 2011 WL 902637, at *13 (D. Utah Mar. 15, 2011) (dismissing claim for civil conspiracy based on actions protected by judicial privilege).[3]

### B. The So-Called "Bad Faith" Exception Does Not Apply Here.

Plaintiff then argues his claims should avoid dismissal based on the judicial privilege doctrine due to the "bad faith" exception. To invoke that exception, a plaintiff must "allege facts showing bad faith to trigger the *Moss* exception to the Utah judicial proceedings privilege." *Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 757 (10th Cir. 2020) (unpublished). In *Peterson*, for instance, the plaintiff "point[ed] to several indicators showing that emails [sent during litigation]. . . were either fabricated or falsified." *Id.* at 758. Those facts were sufficient to avoid the judicial privilege. Unlike *Peterson*, Plaintiff makes no allegation of fraud as to the collections suit filed against him. Rather, even though the Trust has a valid state court judgment, Plaintiff premises his claims on the Trust's purported inability to substantiate ownership of Plaintiff's debt. (Compl., ¶ 44.)

---

[3] Plaintiff's reliance on cases applying Ohio law is unavailing because these cases address *statutory*, rather than common law, claims. (Opp., 12.)

## III. PLAINTIFF CANNOT ALLEGE A VIOLATION OF THE UCSPA ON WHICH TO PREMISE HIS CIVIL CONSPIRACY CLAIM.

Plaintiff's claim for civil conspiracy also must be dismissed because no Defendant is subject to liability under the UCSPA, which serves as the predicate violation supporting the civil conspiracy claim. Plaintiff's student loan is not a "consumer transaction," and no Defendant is a "supplier."

### A. Student Loans Are Not "Consumer Transactions" Under the UCSPA.

Plaintiff has no authority for his contention that a "student loan" is a "consumer transaction" under the UCSPA, and he is instead left to quibble with the cases Defendants cite that confirm an installment loan falls outside of that statutory definition. Plaintiff principally takes exception to *Ayala v. Am. Home Mortg. Servicing, Inc.*, No. 2:11-cv-77, 2011 WL 3319543, at *3 (D. Utah June 8, 2011) (unpublished report and recommendation), which found that a mortgage loan was not a "consumer transaction," by asserting that *Ayala* is isolated precedent. But *Ayala* is not a one-off case. In *Ayala*, Magistrate Judge Warner found that "[a] mortgage loan does not fit into [the statutory] description [of consumer transaction] as it is not a sale or disposition of the funds or of the note" *id.* at *3, which is a conclusion the district court adopted. Two other judges in the district have since reached the same conclusion. *See Berneike v. CitiMortgage, Inc.*, No. 2:11-cv-614, 2011 WL 10554844, at *3 (D. Utah Nov. 17, 2011) (unpublished) (relying on *Ayala* to dismiss UCSPA claim with prejudice); *Gonzalez v. Wells Fargo Bank, N.A.*, No. 2:12-cv-00286 DN, 2013 WL 2456397, at *2 (D. Utah June 6, 2013) (unpublished) (same).

Plaintiff then argues that a student loan is more analogous to a "credit card" debt than a mortgage. (Opp., 15.) Not so. The UCSPA defines consumer transactions as "sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or

6

other property, both tangible and intangible (except securities and insurance) to, or apparently to, a person for: (i) primarily personal, family, or household purposes." Utah Code § 13-11-3(2)(a). A student loan is not a "sale" or "disposition" of "goods, services, or other property." *See Ayala*, 2011 WL 3319543, at *3. Like a mortgage, it is an installment loan. Indeed, if the UCSPA does not apply to mortgages, which are collateralized by a physical good (a home), then surely a student loan is not a "consumer transaction."

Moreover, none of the credit card cases cited by Plaintiff provide any rationale suggesting that a student loan could also be a "consumer transaction." In *Midland Funding LLC v. Sotolongo*, for example, the Court of Appeals of Utah affirmed the district court's grant of summary judgment on the UCSPA claim without determining whether collection of the credit card debt was a "consumer transaction." 2014 UT App 95, ¶ 32, 325 P.3d 871 (2014) *abrogated by Gonzalez v. Cullimore*, 2018 UT 9, 417 P.3d 129 (2018). Similarly, the defendants in *Brown* did "not dispute the debt was incurred as a result of a consumer transaction" and thus, the opinion does not provide any analysis on the subject. 2009 WL 3617692, at *3. The opinion in *Gallegos v. LVNV Funding LLC* also did not analyze whether the obligation was a "consumer transaction" under the USCPA. 169 F. Supp. 3d 1235, 1245 (D. Utah 2016).

### B. None of the Defendants is a "Supplier" Under the USCPA.

Plaintiff also fails to plead any facts suggesting that any Defendant "regularly solicits, engages in, or enforces consumer transactions," such that it would be a "supplier" subject to the UCSPA. *See* Utah Code § 13-11-3(6). Indeed, none of the Defendants are alleged to have originated Plaintiff's loan, meaning that they fall outside of the definition. *See Ayala*, 2011 WL 3319543, at *3 (a loan servicer was not a "[s]upplier" because it did not originate the loan).

Undeterred, Plaintiff argues that Defendants are suppliers because they are "assignees who regularly engage in the collection of student loans." (Opp., 15–16.) However, no such allegation appears in the Complaint. (*See generally* Compl.) Even if it had been alleged, however, it would be without merit. Although the UCSPA applies to "assignors," it makes no reference to *assignees*. "[T]he expression of [the] one [term] should be interpreted as the exclusion of another," meaning that *assignees* do not fall within the ambit of the statute. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (2011).[4]

## IV. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS BECAUSE PLAINTIFF CANNOT ALLEGE A "MEETING OF THE MINDS."

Plaintiff cannot establish a "meeting of the minds" sufficient to allege a civil conspiracy. That is true based on what is, and what is not, alleged in the Complaint.

Initially, Plaintiff cannot escape his allegation that the Trust "*did not*" approve the use of Transworld. (Compl., ¶ 13.) That allegation alone defeats any purported "meeting of the minds," and Plaintiff does not cite a single case holding otherwise. (Opp., 17.) Ignoring his fatal contention, Plaintiff asserts that the claimed business-related associations among the co-Defendants are sufficient to establish a "meeting of the minds." (Opp., 17.) But a relationship between the parties, alone, is insufficient. A plaintiff must allege a meeting of the minds "on the

---

[4] Plaintiff's argument that Defendants are a "unit" such that Transworld's conduct can be imputed to all Defendants should also be rejected. (Opp., 16.) Plaintiff's attempt to hold the Trust and U.S. Bank liable for conduct he does not dispute they could not be held liable for directly should be viewed as an impermissible attempt to expand the UCSPA. *See* 16 Am. Jur. 2d Conspiracy § 57 ("Tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing a tort in that they owe a duty recognized by law to the plaintiff and are potentially subject to liability for breach of that duty.").

object or course of action" of the conspiracy itself. *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 1004 (10th Cir. 2007). Plaintiff makes no such allegation.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR INVASION OF PRIVACY.

Lastly, despite earlier acknowledging in his Opposition that invasion of privacy falls within the scope of the judicial privilege, (Opp., 12), Plaintiff continues to press his claim, arguing that submitting an affidavit without supporting documentation is a "deceptive" or "unconscionable" practice constituting an invasion of privacy. (Opp., 18–19.) But a claim for invasion of privacy requires "an intentional substantial intrusion" that "would be highly offensive to the reasonable person." *Morgan v. N.A.R., Inc.*, No. 2:06-cv-470, 2007 WL 9783313, at *4 (D. Utah July 18, 2007) (unpublished) (finding invasion of privacy claim premised on collection action barred where plaintiff alleged that defendants unlawfully continued to garnish his wages after he paid a judgment against him in full). Plaintiff fails to meet this minimum threshold. A collection suit brought against Plaintiff in state court for a debt he indisputably owned was neither "highly offensive" nor a "substantial intrusion." Moreover, even if the alleged debt collection practices at issue here could give rise to such a claim, there are no allegations in the Complaint that either *U.S. Bank* or the *Trust* engaged in any such conduct. Instead, all "debt collection" related conduct is alleged to have been done by Transworld. (Compl., ¶ 92(a)–(d).)

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint against the Trust and U.S. Bank should be dismissed with prejudice.

Dated this 28th day of April, 2021

        DORSEY & WHITNEY LLP

        /s/ *Adam C. Buck*
        Milo Steven Marsden
        Adam C. Buck
        *Attorneys for Defendants National Collegiate Student Loan Trust 2006-3 and U.S. Bank National Association*

        TROUTMAN PEPPER HAMILTON SANDERS LLP
        David N. Anthony (*pro hac vice*)
        Tim St. George (*pro hac vice*)
        *Attorneys for Defendant National Collegiate Student Loan Trust 2006-3*

        JONES DAY
        Albert J. Rota (*pro hac vice*)
        *Attorneys for U.S. Bank National Association*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of April 2021, a true and correct copy of the foregoing **DEFENDANT NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3 AND U.S. BANK'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS WITH PREJUDICE** was served upon counsel of record via the Court's electronic filing system.

/s/ *Adam C. Buck*