# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHESLEY GOSSE, et al., | : | CIV NO. 3:20-CV-1446 |
| | : | |
| Plaintiffs, | : | (Judge Mariani) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| TRANSWORLD SYSTEMS INC., et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This case, which comes before us for consideration of five motions to dismiss the plaintiffs' amended complaint (Docs. 52, 53, 54, 55, 66), reveals some fundamental truths about the litigation process.

First, this lawsuit illustrates how, on occasion, discrete disputes can transmogrify into massive contests. This litigation stems from several garden-variety state debt collection lawsuits filed by some of the defendants against the plaintiffs, who were allegedly delinquent on various student loans. This simple state court litigation of discrete claims has now been transformed into a multi-party, multi-facetted putative class action lawsuit by these alleged student loan debtors, who have gone from state court defendants to federal court plaintiffs.

Second, the current status of this lawsuit discloses how the procedural posture of a case sometimes limits the court's ability to provide clarity to the parties. We are presently being asked to consider multiple motions to dismiss this complaint. As discussed below, a motion to dismiss tests the legal sufficiency of a pleading. Thus, when considering a motion to dismiss, the scope of our review is typically cabined and confined to the well-pleaded facts in the plaintiffs' complaint and other documents or records of undisputed relevance and authenticity.  We are reminded of this basic tenet of federal practice as we consider the parties' submissions, which invite us to foray into some 1,000 pages of exhibits (Docs. 58-63, 68, 71, 74), a task which may lay far beyond the proper scope of a motion to dismiss.

Finally, this case reminds us that occasionally what is posited as complex litigation turns on simple issues. So it is here. As we construe it, the plaintiffs' sweeping allegations of litigation misconduct by the defendants in their state court debt collection actions turn on several simple questions; namely, whether the defendants could prove that they had acquired the rights to collect the plaintiffs' loans, and thus had a legal right to pursue these collections actions, when they filed these state court lawsuits. (Doc. 67, ¶¶ 44, 49). If the defendants can prove that they had acquired the rights to these loans at the time they filed these state court debt collection actions, and possessed sufficient evidence to support their debt collection claims, then we believe that the plaintiffs' amended complaint fails. Conversely, if

the defendants brought these actions even though they had no right to collect these debts, or lacked sufficient evidence to prove their claims, these claims may survive. The answer to these simple questions should be subject to a clear determination, but that determination may require the parties and the court to foray beyond the pleadings themselves.

With these principles in mind, as discussed in greater detail below, we recommend that the motions to dismiss be granted in part, denied, in part, and deferred in part, as follows: first, Count II of the amended complaint, which alleges a violation of Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA) but no longer contains any claim of a violation of  the Pennsylvania Unfair Trade Practice and Consumer Protection Law (UTPCPL) should be dismissed. Second, Count III of the amended complaint should also be dismissed to the extent that it alleges Dragonetti Act abuse of process claims on behalf of the Dettore plaintiffs, since the state court debt collection action brought against these plaintiffs has not been terminated in their favor. Third, since the amended complaint does not allege the U.S. Bank played any active role in instigating the Gosse debt collection lawsuit, provides no well-pleaded facts revealing that U.S. Bank was grossly negligent or acted in the absence of probable cause in this particular case, and does not assert that the primary purpose of U.S. Bank's alleged actions was unrelated to the goal of debt

collection, the Dragonetti Act claim lodged against U.S. Bank fails, as pleaded, and should be dismissed.

It is also recommended that, to the extent the remaining defendants seek dismissal of the Fair Debt Collection Practices Act (FDCPA) and Dragnonetti Act litigation abuse claims set forth in the amended complaint, that the defendants' motion to dismiss based upon the assertion of Pennsylvania's judicial proceedings, litigation privilege be denied.

Finally, we recommend that the remaining defendants be directed to submit motions for summary judgment specifically addressing the issue of whether the defendants had acquired the rights to these loans at the time they filed these state court debt collection actions, and possessed sufficient evidence to support their debt collection claims, so this threshold question which forms the gravamen of the plaintiffs' substantive claims may be definitively resolved.

## II.    Statement of Facts and of the Case

The well-pleaded allegations in the plaintiffs' amended complaint, which guide our consideration of these motions to dismiss, allege that the plaintiffs, Chelsey Gosse and Christopher and Lori Dettore, were listed as borrowers on certain consumer loans. (Doc. 67, ¶¶ 8 and 9). The defendants, in turn, are various trusts, businesses, banks, law firms and entities engaged in loan collection activities.

Specifically, according to the amended complaint defendants National Collegiate Student Loan Trusts 2007-3 and 2007-4, (NCSLT) are Delaware trusts formed for the purpose of acquiring purported consumer debts. (Id., ¶¶ 14-16). U.S. Bank N.A., in turn, was designated as Special Servicer of various loans held by these trusts. (Id., ¶ 17). While not expressly stated in the amended complaint itself, it appears undisputed that the Successor Special Servicer agreement executed by U.S. Bank prohibited the bank from directly undertaking debt collection activities or supervising such debt collection activity. (Doc. 59-3).

Instead, it appears from the amended complaint that Transworld Systems, Inc., undertook these direct debt collection activities on behalf of the trusts. (Doc. 67, ¶ 10). As part of this debt collection activity, Transworld relied upon an attorney network which included the Ratchford Law Group and Portnoy Schneck, LLC, two law firms whose practices included state debt collection lawsuits. (Id., ¶¶ 10-12).

The amended complaint then contains an extended exegesis largely derived from prior litigation among and between these various trust entities and affiliates in which the parties have disputed matters relating to the interpretation of various contracts, the management of the trusts, and debt collections activities. (Id., ¶¶ 19-36). The intramural disputes between these entities, while perhaps useful in terms of general context, in our view do not materially advance the claims of either Gosse or the Dettores, since many of the allegations made in these other lawsuits have not

fully withstood the test of time in that litigation. In re Nat'l Collegiate Student Loan Tr. Litig., 2020 WL 5049402, at *11 (Del. Ch. Ct. Aug. 27, 2020). Furthermore, these allegations derived from other lawsuits tell us little about the relationship between the plaintiffs and the defendants they have sued in this litigation.

The amended complaint then alleges that in August of 2019, NCLST 2007-3 Trust, Transworld, and the Ratchford law firm filed a state court debt collection action against Chelsey Gosse in the Court of Common Pleas of Lehigh County, Pennsylvania. (Id., ¶¶ 39-47). According to the plaintiffs, this lawsuit was dismissed in January of 2020 because the NCSLT trust and its affiliates could not demonstrate that they had an ownership interest in the Gosse loan and a right to pursue this collections action. (Id.)

According to the amended complaint, in November of 2020, NCLST trust 2007-4, Transworld, and the Portnoy Schneck law firm commenced a state debt collection lawsuit against the Dettores in the Court of Common Pleas of Luzerne County. (Id., ¶¶ 48-49). In this state debt collection lawsuit, which is reportedly still pending, the plaintiffs allege that NCSLT and its affiliates also misrepresent their ownership interest in the Dettore loans, and overstate the evidence they possess in support of their debt collection claims. (Id.) While these averments directly link the NCSLT trusts, Transworld, and the Ratchford and Portnoy Schneck law firms to these two state debt collection lawsuits, notably missing from the plaintiffs'

amended complaint is any allegations that U.S. Bank played a direct role in procuring, instigating, or overseeing these two lawsuits.

The amended complaint then describes a series of class action allegations (Id., ¶¶ 65-86), before setting forth four causes of action. First, in Count I of the amended complaint the plaintiffs assert a claim against Transworld and the Ratchford and Portnoy Schneck law firms under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. (Id., ¶¶ 87-92). This Count alleges that these three debt collectors violated the FDCPA by making false and fraudulent misrepresentations regarding their ownership interest in various loans and the sufficiency of their loan documentation during debt collection litigation. (Id.)

Count II of the amended complaint then brings a claim against all of the named defendants alleging a violation of Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA). 73 Pa. C. S. § 2270.4. However, this Count of the plaintiffs' amended complaint fails to allege any violation of  the Pennsylvania Unfair Trade Practice and Consumer Protection Law (UTPCPL), allegations that are required typically under state law since the FCEUA, standing alone, creates no private right of action. (Id., ¶¶ 93-95).

Count III of the amended complaint then brings a claim of wrongful use of civil proceedings against all defendants under Pennsylvania's Dragonetti Act. 42 Pa. Cons. Stat. § 8351. (Id., ¶¶ 96-100).  Finally, Count IV of the amended complaint

contains a catch-all civil conspiracy claim against all of the defendants. (Id., ¶¶ 101-104).

This sweeping complaint has inspired a series of five sweeping motions to dismiss. (Docs. 52, 53, 54, 55, 66). Many of these motions are accompanied by hundreds of pages of exhibits, which often reference matters outside the pleadings. (Docs. 58-63, 71). The plaintiffs have responded to these motions by themselves submitting hundreds of pages of exhibits to the court for its consideration. (Docs. 68, 74). Further, the defendants have filed an array of reply briefs in support of their various motions to dismiss. (Docs. 74-77, 81). Accordingly, these motions are now ripe for resolution.

As discussed below, we recommend that these motions be granted in part, denied in part, and deferred in part, pending receipt of properly documented summary judgment motions.

## III. <u>Discussion</u>

### A. <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third

Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." Id. A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. **The Motions to Dismiss Should Be Granted in Part, Denied in Part, and Deferred in Part, in Favor of Properly Documented Summary Judgment Motions.**

Even with the scope of our review thus confined when considering motions to dismiss, we find that a number of the plaintiffs' claims fail as a matter of law and should be dismissed. These legally deficient claims are discussed separately below.

#### 1. **Count II of the Amended Complaint Should Be Dismissed.**

At the outset, in Count II of the amended complaint the plaintiffs purport to bring claims under Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), but the amended complaint no longer contains any claim of a violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law (UTPCPL). This is a fatal flaw in Count II since, as Judge Mariani has previously explained:

> Pennsylvania's FCEUA statute outlines actions taken by creditors which constitute an "unfair or deceptive debt collection act or practice." 73 Pa. Stat. Ann. § 2270.4(b). It further declares any violation of the FCEUA to also constitute a violation of Pennsylvania's UTPCPL. 73 Pa. Stat. Ann. § 2270.5(a). The UTPCPL provides a private right of action to any person who has suffered "any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]." 73 Pa. Stat. Ann. § 201-9.2. The FCEUA does not provide a private cause of action for violations; instead, plaintiffs must use the UTPCPL's remedy provision to obtain relief. Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013); see 73 Pa. Stat. Ann.

§ 201-9.2. Consequently, to plead a cause of action under the FCEUA, plaintiffs must be able to state a claim under the UTPCPL. <u>Kaymark v. Bank of Am., N.A.</u>, 783 F.3d 168, 182 (3d Cir. 2015); <u>see also Baldwin v. Monterey Fin. Servs., Inc</u>., No. 3:14-CV-2346, 2017 WL 4767696, at *6 (M.D. Pa. Oct. 20, 2017).

<u>Prukala v. Chase Bank, N.A.</u>, No. 3:19-CV-1791, 2020 WL 5351042, at *3 (M.D. Pa. Sept. 4, 2020). Since the "FCEUA does not provide a private cause of action for violations; instead, plaintiffs must use the UTPCPL's remedy provision to obtain relief," the amended complaint's freestanding FCEUA Count, which is unaccompanied by any other statutory claim under Pennsylvania law fails. This count should, therefore, be dismissed. Indeed, the plaintiffs acknowledged as much and have represented that "Plaintiffs will not be pursuing their claim under Count II in the FAC pursuant to Fair Credit Extension Uniformity Act and it may be dismissed from the action." (Doc. 68, at 10, n.2).

## 2. <u>The Dettore Plaintiffs May Not Maintain Dragonetti Act Claims.</u>

In Count III of the Amended the plaintiffs bring abuse of civil proceedings claims pursuant to the Dragonetti Act, 42 Pa. Cons. Stat. § 8351. (Doc. 67, Count III). However, any Dragonetti Act misuse of civil proceedings claims brought by the Dettore plaintiffs pursuant to § 8351 fail at this time. The elements of such a claim are defined by statute in the following terms:

§ 8351. Wrongful use of civil proceedings

   (a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

   (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

   (2) *The proceedings have terminated in favor of the person against whom they are brought.*

§ 8351(a) (emphasis added).

In this case, it is evident that the Dettore plaintiffs have not prevailed in the state court debt collection action brought against them. Therefore, an essential element of a claim under § 8351—namely, that the prior civil proceedings have terminated in favor of the person against whom they are brought—is not satisfied with respect to the Dettore plaintiffs. Accordingly, this claim is also subject to dismissal. Indeed, once again, the plaintiffs concede that this claim should be dismissed as to the Dettores, stating that: "Count III is not asserted on behalf of the Dettores since the Dettores State Action against them is still pending." (Doc. 68, at 38, n. 10).

### 3.  U.S. Bank N.A. Should Be Dismissed as a Defendant.

If Count II, the FCEUA Count, and Count III, the Dragonetti Act claim of the Dettore plaintiffs, are dismissed then the plaintiffs' lawsuit against U.S. Bank N.A. rests on a single thin substantive reed. U.S. Bank is not named in Count I of the

amended complaint, the FDCPA claim. Therefore, the sole substantive[1] basis for naming U.S. Bank in the lawsuit would be the allegation that the bank violated the Dragonetti Act by "tak[ing] part in the procurement, initiation or continuation of civil proceedings against [Plaintiff Chelsey Gosse] for wrongful use of civil proceedings, [in that U.S. Bank] acted in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings [we]re based." 42 Pa. Cons. Stat. § 8351(a).

"It may be seen that a party seeking redress under Dragonetti bears a heavy burden." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002). To sustain a claim under the Act a plaintiff must plead and prove multiple elements. "Liability attaches [only] to those who act [1] in a grossly negligent manner or [2] without probable cause and [3] primarily for a purpose other than adjudication of a claim.  In addition, the proceeding must have been terminated in favor of the person who invokes the Act." Id.

---

[1] We acknowledge that U.S. Bank is also named in Count IV of the complaint, a civil conspiracy count. (Doc. 67, Count IV). However, since it is axiomatic that "[a] claim for civil conspiracy 'cannot be pled without also alleging an underlying tort.'" McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) quoting Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000), the failure of this sole substantive count would also be fatal to any accompanying conspiracy claim.

Thus:

> [T]he Pennsylvania courts have described the plaintiff's burden as showing that "the defendant caused [the] *proceedings* to be instituted without probable cause." <u>Ludmer v. Nernberg</u>, 433 Pa.Super. 316, 640 A.2d 939, 942 (1994) (emphasis added). <u>Accord Meiksin v. Howard Hanna Co.</u>, 404 Pa.Super. 417, 590 A.2d 1303, 1304 (1991) (plaintiff must show that "the defendant lacked probable cause to institute the proceedings").

<u>Bobrick Corp. v. Santana Prod., Inc.</u>, 698 F. Supp. 2d 479, 493 (M.D. Pa. 2010), <u>aff'd</u>

<u>sub nom.</u> <u>The Bobrick Corp. v. Santana Prod., Inc.</u>, 422 F. App'x 84 (3d Cir. 2011).

In the alternative, to sustain a Dragonetti claim, it is incumbent upon the plaintiff to show that each defendant instituted the litigation in a grossly negligent manner. On this score:

> Pennsylvania courts have defined gross negligence in the context of Dragonetti claims to mean the "want of scant care" or " 'lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party....' " <u>Schmidt,</u> 470 F.Supp.2d at 480. Gross negligence has also been defined as " 'the want of even scant care' and 'the failure to exercise even that care which a careless person would use.' " <u>Hart v. O'Malley,</u> 781 A.2d 1211, 1218 (Pa.Super.2001).

<u>Bobrick Corp.</u>, 698 F. Supp. 2d at 497.

But pleading and proving gross negligence, or a lack of probable cause, standing alone, will not establish a Dragonetti Act violation. It must also been shown that the litigation was undertaken: "primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which

the proceedings are based." 42 Pa. Cons. Stat. § 8351(a). In this regard, it is well-settled that:

> "The Tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.' " <u>Rosen v. American Bank of Rolla</u>, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993) (quoting Restatement (Second) of Torts, § 682). As explained in <u>American Bank of Rolla</u>, 627 A.2d at 192, "[t]he significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or ulterior purpose of benefit to the defendant." "A cause of action for abuse of process requires some definite act or threat not authorized by the process, or aimed an objective not legitimate in the use of the process...." <u>Shaffer v. Stewart</u>, 326 Pa.Super. 135, 473 A.2d 1017, 1019 (1984).

<u>Bobrick Corp.</u>, 698 F. Supp. 2d at 498.

The elements of this tort—gross negligence, a lack of probable cause, and an improper purpose—are both fact-specific and case specific. They may not be alleged or proven in the abstract. Therefore, it is incumbent upon the plaintiff in a Dragonetti Act case to explain how these elements are met in the particular underlying lawsuit at issue. Moreover, when the plaintiff's pleadings fail to allege well-pleaded facts establishing all of the elements of a Dragonetti claim, that claim is subject to a motion to dismiss. Thus, for example, when "the Amended Complaint does not allege facts from which it may be inferred that [the defendant] brought the Underlying Litigation *primarily* for a purpose other than the proper adjudication of its claims," a motion to dismiss under Rule 12(b)(6) should be granted. <u>Id.</u>

Given the exacting burdens of pleading and proof required by the Dragonetti Act, we find that the amended complaint in this case fails to state a claim under the Act against U.S. Bank for several reasons. First, it is noteworthy that U.S. Bank was not a party to the underlying state debt collection action. Indeed, it seems undisputed that under its agreements as they relate to these loans, U.S. Bank was forbidden from engaging in debt collection activities. Thus, as we construe the amended complaint it is not alleged that U.S. Bank was directly involved in the procurement, initiation, or continuation of civil proceedings against Gosse, a prerequisite for Dragonetti Act liability.

Moreover, with respect to the crucial question of whether U.S. Bank acted in Gosse's case with gross negligence or in the absence of probable cause, there simply are no allegations regarding its involvement in this specific case which would address these elements of a Dragonetti Act claim. Rather, at best, all that can be discerned from the amended complaint is that U.S. Bank supported a series of debt collection actions which may have included the Gosse state debt collection case. However, given the fact-specific and case-specific nature of Dragonetti Act liability, these general and sweeping allegations which are unmoored to the facts of Gosse's state case are insufficient to state a claim upon which relief. Simply put, U.S. Bank must act *in Gosse's case* in the absence of probable cause or in a grossly negligent fashion, a degree of specificity which is not reflected in the amended complaint.

Finally, and most fundamentally, as we read to amended complaint with respect to U.S. Bank, it does not allege that the Gosse debt collection lawsuit was brought by the bank primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the debt collection proceedings were based. Quite the contrary, we read the amended complaint as stating that U.S. Bank and others set in motion a series of improvident debt collection lawsuits, including the Gosse state case, for the express purpose of collecting what were believed to be delinquent debts, albeit debts where elements of the defendants' proof may have been weak or lacking. Thus, far from alleging that the purpose of this litigation on U.S. Bank's part was unrelated to adjudicating these debt collection claims, the amended complaint appears to aver that U.S. Bank was engaged in an overly zealous effort to adjudicate debt collection lawsuits. Since "there is no action for abuse of process when the process is used for the purpose for which it is intended," Bobrick Corp. , 698 F. Supp. 2d at 498, an allegedly improper or overly zealous debt collection lawsuit instituted for the sole purpose of collecting a delinquent debt simply does not violate the Act.

Given that the amended complaint does not allege the U.S. Bank played any active role in instigating the Gosse debt collection lawsuit, provides no well-pleaded facts revealing that U.S. Bank was grossly negligent or acted in the absence of probable cause in this particular case, and does not assert that the primary purpose

of U.S. Bank's alleged actions was unrelated to the goal of debt collection, the Dragonetti claim lodged against U.S. Bank fails, as pleaded, and should be dismissed.[2]

### 4. The Defendants Are Not Entitled to Dismissal of the Remaining Claims Based Upon the Judicial Proceedings, Litigation Privilege.

As for the remaining defendants, the FDCPA and Dragonetti Act claims brought against the defendants are grounded upon allegations of litigation abuse, the filing and pursuit of meritless claims by parties who were allegedly had no legal or factual basis for suing the plaintiffs. Given the allegations of litigation abuse which lie at the heart of the amended complaint, it is striking that the defendants have chosen to raise a threshold defense based upon the judicial proceedings, litigation privilege.

To be sure, Pennsylvania law recognizes a judicial proceedings, litigation privilege. In general terms, this privilege "extends to 'communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.' " Gen. Refractories Co. v. Fireman's Fund

---

[2] We note that we are not alone in reaching this result. Other courts, faced with similar, and similarly remote, claims against U.S. Bank have also dismissed those claims. See generally Merrill v. Transworld Sys., Inc., No. 1:20-CV-183, 2021 WL 210715, at *2 (W.D. Mich. Jan. 21, 2021).

Ins. Co., 337 F.3d 297, 311 (3d Cir. 2003) (quoting Post v. Mendel, 510 Pa. 213, 507 A.2d 351, 353 (1986)). Under the privilege, such communications made in the regular course of litigation cannot form the basis of a tort claim "because there is a realm of communication essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege." Silver v. Mendel, 894 F.2d 598, 603 (3d Cir. 1990).

Yet this privilege, while well recognized, is far from absolute. Moreover, the application of this privilege to tort claims grounded upon litigation abuse is both problematic and analytically elusive. It would be highly incongruous to specifically define various torts relating to litigation abuse, but then generally forbid the pursuit of such tort claims by cloaking that abusive litigation in a claim of privilege.  Thus, to the extent that the plaintiffs have brought a claim of abuse of civil proceedings under the Dragonetti Act, Pennsylvania's judicial proceedings, litigation privilege would not bar this claim since "Pennsylvania would not have the Dragonetti Act if Pennsylvania's judicial privilege protected the filing of an action without probable cause and primarily for a purpose other than to secure relief." Silver, 894 F.2d at 604. Therefore, the defendants may not assert this privilege in some talismanic fashion in order to defeat the plaintiffs' remaining Dragonetti Act claims brought by Ms. Gosse.

Nor can the remaining defendants rely upon this privilege to absolutely defeat the plaintiffs' FDCPA claims that arise in the context of state court debt collection litigation. Indeed, the Third Circuit has considered this precise question in the context of the New Jersey state law litigation privilege and has rejected the notion that abusive debt collection litigation in violation of the FDCPA is cloaked in privilege. As the court observed:

> [T]he FDCPA does not contain an exemption from liability for common law privileges. "[C]ommon law immunities cannot trump the [FDCPA]'s clear application to the litigating activities of attorneys," Sayyed, 485 F.3d at 231, and, like the Fourth Circuit, we will not "disregard the statutory text in order to imply some sort of common law privilege," id. at 229; see also Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 615–17 (6th Cir.2009).

Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 369 (3d Cir. 2011).

We believe that this principle, which has been applied to the New Jersey state litigation privilege, would extend with equal force to the identical privilege recognized under Pennsylvania law. Accordingly, Pennsylvania's judicial proceedings, litigation privilege does not automatically shield the remaining defendants from FDCPA liability, and this court should decline the invitation to deem these allegedly abusive litigation tactics to be cloaked in privilege.

5.  **The Parties' Remaining Claims Should Be Addressed Through Properly Documented Summary Judgment Motions.**

While a number of the claims set forth in the amended complaint may be addressed as a matter of law based upon the pleadings, as to the remaining defendants, the FDCPA and Dragonetti Act claims advanced by the plaintiffs necessarily invite us to foray into factual matters beyond the pleadings themselves. For example, the questions of whether these defendants acted in a grossly negligent manner or without probable cause and primarily for a purpose other than adjudication of a claim in violation of the Dragonetti Act when filing the Gosse lawsuit requires some inquiry into the factual *bona fides* of their claims in the state court debt collection lawsuit. In the same vein, the issue of whether the defendants' conduct in the Gosse and Dettore debt collection lawsuits  constituted the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," in violation 15 U.S.C.A. § 1692e entails both a factual and legal analysis that is fact and case specific and necessarily entails consideration of some matters outside the pleadings.

The parties' motions and responses implicitly acknowledge the need to foray far beyond the four corners of the amended complaint to address the merits of these issues, since the parties have tendered more than 1,000 pages of exhibits to us for our consideration. Given the fact-bound nature of these determinations, it is

recommended that we defer ruling upon these matters in the context of motions to dismiss, where our review is confined to an evaluation of the adequacy of the pleadings. Instead, these matters can, and should, be addressed through properly documented motions for summary judgment, where we may evaluate matters beyond the pleadings themselves.

Summary judgment adjudication of these remaining claims is particularly fitting here since the gist of the litigation misconduct allegations leveled by the plaintiffs seem to turn on factual matters that could be determined with a high degree of certainty; namely, whether the defendants can prove that they had acquired the rights to collect the plaintiffs' loans, and thus had a legal right to pursue these collections actions when they filed these state court lawsuits. Likewise, the question of whether the defendants could marshal sufficient evidentiary support for their debt collection claims to bring these lawsuits is something that should be readily ascertainable. Accordingly, as to these remaining claims, it is recommended that the court defer action on these motions to dismiss, and instead direct the parties to pursue these claims and defenses through properly documented motions for summary judgment.

## IV.   __Recommendation__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motions to dismiss (Docs. 52, 53, 54, 55, 66) be GRANTED in part, DENIED in part, and DEFERRED in part, as follows:

First, Count II of the amended complaint, which alleges a violation of Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA) but no longer contains any claim of a violation of  the Pennsylvania Unfair Trade Practice and Consumer Protection Law (UTPCPL) should be DISMISSED.

Second, Count III of amended complaint should also be DISMISSED to the extent that it alleges Dragonetti Act abuse of process claims on behalf of the Dettore plaintiffs, since the state court debt collection action brought against these plaintiffs has not been terminated in their favor.

Third, since the amended complaint does not allege the U.S. Bank played any active role in instigating the Gosse debt collection lawsuit, provides no well-pleaded facts revealing that U.S. Bank was grossly negligent or acted in the absence of probable cause in this particular case, and does not assert that the primary purpose of U.S. Bank's alleged actions was unrelated to the goal of debt collection, the Dragonetti Act claim lodged against U.S. Bank fails, as pleaded, and should be DISMISSED.

Third, IT IS ALSO RECOMMENDED that, to the extent the remaining defendants seeks dismissal of the Fair Debt Collection Practices Act (FDCPA) and Dragnonetti Act litigation abuse claims set forth in the amended complaint, that the defendants' motion to dismiss based upon the assertion of Pennsylvania's judicial proceedings, litigation privilege be DENIED.

Finally, we RECOMMEND that the remaining defendants be directed to submit motions for summary judgment specifically addressing the issue of whether the defendants had acquired the rights to these loans at the time they filed these state court debt collection actions, and possessed sufficient evidence to support their debt collection claims, so this threshold question which forms the gravamen of the plaintiffs' substantive claims may be definitively resolved.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge,

however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of July, 2021.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge