Bryan C. Shartle (*pro hac vice*, Dkt. 23)
Justin H. Homes (*pro hac vice*, Dkt. 24)
Bradley J. St. Angelo (*pro hac vice*, Dkt. 22)
Sessions, Israel & Shartle, L.L.C.
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Telephone: (504) 828-3700
bshartle@sessions.legal
jhomes@sessions.legal
bstangelo@sessions.legal

George W. Burbidge II, #6503
W. Kevin Tanner, #8872
CHRISTENSEN & JENSEN, P.C
275 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone: (801) 323-5000
George.burbidge@chrisjen.com

***Attorneys for Defendant Transworld Systems Inc.***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **James T. Snarr,**<br><br>         **Plaintiff,**<br><br>**v.**<br><br>**Transworld Systems Inc., U.S. Bank, and National Collegiate Student Loan Trust 2006-3,**<br><br>         **Defendants.** | **TSI'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF CONVERTED RULE 12(d) MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:21-CV-00003-HCN<br><br>Honorable Howard C. Nielson, Jr. |

Transworld Systems Inc. ("TSI"), submits this supplemental memorandum in support of its Motion to Dismiss, which was converted to a Motion for Summary Judgment (the "Motion") [Dkt. 28].

## I. INTRODUCTION AND RELIEF REQUESTED

Plaintiff, James T. Snarr ("Snarr" or "plaintiff"), is seeking to retread evidentiary ground this Court has already covered in another matter asserting similar claims against TSI[1] by drumming up a claim against his judgment creditor and its servicer over a defaulted student loan he admits he obtained and owes. Plaintiff's Complaint alleges TSI and National Collegiate Student Loan Trust 2006-3 ("NCSLT 2006-3")[2] violated federal and state law by filing (and later winning) a state court lawsuit against him to recover the loan he admits he took out. Plaintiff alleges defendants do not "possess documents substantiating [NCSLT 2006-3's] ownership of the debt," [*see* Compl., ¶¶ 1, 39–44] and that the documents defendants used to obtain the state court judgment against him were somehow "concocted." Recognizing this case pivots on plaintiff's challenge to the accuracy and authenticity of the loan documents, this Court gave plaintiff a clear runway to conduct limited discovery on those fundamental questions. *Ultimately, however, plaintiff never took the discovery his counsel claimed was necessary.* Instead, plaintiff now solely relies on circumstantial and inadmissible evidence to support his unfounded claim that the loan documents are concocted and inauthentic. Plaintiff has failed to meet his burden. The Court should dismiss this action with prejudice.

## II. PROCEDURAL HISTORY

On February 17, 2021, TSI filed a Motion to Dismiss. [Dkt. 28]. The Motion was heard

---

[1] *See Taylor v. Nat'l Collegiate Student Loan Tr. 2007-1*, 2021 WL 673458, *6–7 (D. Utah Feb. 22, 2021).
[2] Plaintiff also sued U.S. Bank, N.A., but voluntarily dismissed the bank on October 20, 2021. Dkts. 62, 63.

on September 20, 2021. [*See* Dkt. 54, Tr. of Mot. Hr'g Before the Hon. Judge Howard C. Nielson, Jr. ("Transcript")]. At the hearing, the Court recognized the exhibits to the July 15, 2020 Affidavit and Verification of Account signed by TSI employee Aaron Motin and filed in the underlying state court collection action against Snarr (the "Affidavit"), [Dkt. 28-5], "likely would dispose of the claims if they are accurate and authentic[.]" Transcript, PageID.1265. Plaintiff's counsel agreed and indicated plaintiff had "evidence" that the Affidavit exhibits were not authentic:

> THE COURT: Now, if they -- it seems to me that if the documents are actually what they say they are, and if they are authentic and if they are accurate -- and they'd have to be both, both authentic and accurate, then you probably wouldn't have a case. Am I wrong about that?
>
> MR. BORISON: You are not wrong, but if it turns out that those are in fact the actual exhibits that were referenced and were transferred properly and demonstrate that, then you're correct. But we believe we have evidence that, one, they're not the actual exhibits. They're being portrayed as exhibits for their own benefit.
>
> And second, we think, either through testimony or, like I said, scientific evidence as far as the metadata, that we're going to be able to show that these are not the original documents that they claim to be.

*Id.*, PageID.1234 – PageID.1235.

The Court then converted TSI's Motion into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d) to consider the Affidavit exhibits. Further, the Court held "that plaintiff is entitled to a reasonable opportunity to test and possibly challenge the authenticity and accuracy of Transworld's exhibits, specifically these eight attachments, if the plaintiff wishes to do so or otherwise to argue that these exhibits do not dispose of his claims." *Id.*, PageID.1266; *see also id.*, PageID.1269 ("I do think plaintiff needs a reasonable opportunity to test and possibly challenge the authenticity of these eight exhibits if he wishes to do so. But on the one hand, I think he's entitled to that opportunity, but on the other hand, I am inclined to think that if they are authentic and accurate, the case is over."). In response, plaintiff's counsel advised the Court, "I'd like to consult with an expert that I have talked to about the metadata issues, to demonstrate to the Court

3

what we would need. *And it would strictly be as to the authenticity of the documents, nothing else.*" *Id.*, PageID.1267 (emphasis added).

On October 11, 2021, plaintiff and TSI jointly submitted a Proposed Discovery Plan to the Court. [Dkt. 59]. The Proposed Discovery Plan explicitly acknowledged "Plaintiff only challenges the accuracy or authenticity of the loan schedule (a printed and redacted copy of which was attached as Exhibit 1 to the Bradley Luke affidavit)[3] and, by extension, the printed excerpt of the loan schedule included within Exhibit C to the Aaron Motin affidavit."[4] *Id.*, PageID.1282. At the Court's request, plaintiff and TSI revised the formatting of their Proposed Discovery Plan and filed a proposed Limited Discovery Scheduling Order, [Dkt. 60], which likewise limited the "Nature of claims and any affirmative defenses" to "the accuracy or authenticity of the loan schedule attached as Exhibit 1 to the Bradley Luke affidavit at Dkt. 28-6, PageID.551 through PageID.816, and, by extension, the printed excerpt of the loan schedule included within Exhibit C to the Aaron Motin affidavit at Dkt. 28-5, PageID.513." *Id*.

On October 30, 2021, plaintiff issued limited written discovery to TSI regarding the loan schedule at issue, which TSI responded to on November 29, 2021. [*See* Dkt. 64]. Tellingly, plaintiff has not even referenced TSI's responses in his Supplemental Brief. TSI also offered plaintiff the opportunity to have his expert inspect the electronic loan schedule file from which the referenced exhibits were printed, and to take TSI's Rule 30(b)(6) deposition to obtain any discovery that might be relevant to "test and possibly challenge the authenticity and accuracy" of the exhibits. Plaintiff did not conduct any such discovery. Instead, plaintiff now advances a litany of irrelevant and inadmissible documents to try and avoid dismissal.

---

[3] Exhibit 1 to the Declaration of Bradley Luke [Dkt. 28-6], PageID.551 – PageID.816.
[4] Exhibit C to the Affidavit [Dkt. 28-5], PageID.513.

The discrete issue before the Court is simple: has plaintiff demonstrated that Exhibit C to the Affidavit, or the electronic loan schedule from which it was printed, is inaccurate or inauthentic? Considering plaintiff has presented no evidence regarding that schedule or plaintiff's loan, the Court should grant TSI's Motion.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS[5]

1. On or about May 1, 2002, Bank One, National Association ("Bank One") and First Marblehead Corporation ("FMC") entered into an Amended and Restated Note Purchase Agreement for the Education One Loan Program (the "NPA"), pursuant to which Bank One would originate private education loans under the Education One Loan Program and sell pools of those loans to FMC or Purchaser Trusts. *See* Exhibit A filed herewith.[6]

2. On or about July 1, 2004, Bank One Corporation merged with and into J.P. Morgan Chase & Co.[7] On or about November 13, 2004, Bank One, National Association merged into JPMorgan Chase Bank, National Association ("Chase").[8]

---

[5] Because the Motion was converted into a Motion for Summary Judgment, the Motion did not include a Statement of Undisputed Material Facts pursuant to DUCivR 7-1(b)(3). Further, because plaintiff is the non-moving party, the purported Statement of Facts, PageID.1326 – PageID.1332, included in plaintiff's supplemental brief [Dkt. 70] does not constitute a Statement of Undisputed Material Facts requiring a response per DUCivR 7-1(c)(3). TSI presents the following Statement of Material Facts.

[6] Exhibit A is publicly on file with the U.S. Securities and Exchange Commission ("SEC") [available through the SEC's Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR") at https://www.sec.gov/Archives/edgar/data/1262279/000104746903034713/a2121268zex-10_14.txt], and the Court may independently take judicial notice thereof. *See Jordan v. Sprint Nextel Corp.*, 3 F. Supp. 3d 917, 931 fn. 43 (D. Kan. 2014) ("A court may take judicial notice of the SEC's filings because they are a matter of public record.") (citing *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n. 5 (2d Cir.2010)).

[7] *See* July 1, 2004 Form 8-K Current Report of J.P. Morgan Chase & Co. [available through EDGAR at https://www.sec.gov/Archives/edgar/data/19617/000119312504112906/d8k.htm].

[8] *See* Bank One, National Association merger History ("11/13/2004 Merged and became part of JPMorgan Chase Bank, National Association (628) in Columbus, OH.") [available through the Federal Deposit Insurance Corporation's website at https://banks.data.fdic.gov/bankfind-suite/bankfind/details/3618].

3. As contemplated by the NPA,[9] Chase continued to originate and issue education loans under Bank One's Education One Loan Program. [*See* Dkt. 28-5, PageID.502].

4. On or about July 25, 2006, plaintiff signed a Non-Negotiable Credit Agreement ("Credit Agreement") as Borrower for an Education One Undergraduate Loan with Chase to borrow $15,000.00 for his educational expenses at California State University (the "Loan"). [Dkt. 28-5, PageID.502 – PageID.505].

5. On or about July 28, 2006, the Loan was approved, funded, and disbursed directly to plaintiff, as confirmed by a Note Disclosure Statement issued to him at disbursement [Dkt. 28-5, PageID.506], and a copy of the disbursement check indorsed by plaintiff [Exhibit B filed herewith, May 19, 2022 Declaration of Bradley Luke ("Luke Declaration"), at Exhibit 1].

6. The Credit Agreement and Note Disclosure Statement both contain a unique identifier specific to plaintiff's Loan: 03885764. [Dkt. 28-5, PageID.502 (at bottom left of the Credit Agreement signature page, included in the string "PN01_EO_06-07_CRWO_F_X_SNARR_A103885764"), PageID.506 (at top left of Note Disclosure Statement above "Loan No.")].

7. Effective September 28, 2006, and prior to the Loan entering repayment, the Loan was sold, transferred, and assigned through a two-step transaction to NCSLT 2006-3. The sale,

---

[9] *See* NPA, Exhibit A, p. 3 ("'Program Lender' means Bank One, National Association, a national banking association or an Affiliate that is a successor through merger or an Affiliate to whom the rights and obligations of Bank One are assigned under the terms of this Agreement."), p. 15 ("No party may assign its rights or obligations under this Agreement without the prior written consent of the parties hereto, PROVIDED, HOWEVER, that: (a) Bank One may assign its rights hereunder to an Affiliate that is a national banking association or state-chartered bank having the legal power and right under applicable law (including, without limitation, usury law in the State where it is located) to make educational loans conforming to the Program Guidelines to borrowers located in all states and territories of the United States and (b) FMC shall have the right to create a Purchaser Trust to exercise FMC's rights to purchase each Pool. No assignment shall relieve the assignor of liability hereunder.").

transfer, and assignment of the Loan to NCSLT 2006-3 was made in two near-simultaneous steps (through two sale instruments both effective on the same day), as follows:

Step 1 – Pursuant to a Pool Supplement dated September 28, 2006 (the "Pool Supplement"), and the inclusion of the Loan on the electronic schedule of Transferred Bank One Loans (the "Schedule") subject to that Pool Supplement, Chase[10] sold, transferred, and assigned ownership of the Loan to an intermediary "Depositor," National Collegiate Funding, LLC, [Dkts. 28-5, PageID.508 – PageID.513; 28-6, PageID.551 – PageID.816]; and

Step 2 – Pursuant to a Deposit and Sale Agreement also dated September 28, 2006 (the "Deposit and Sale Agreement"), that same intermediary Depositor (National Collegiate Funding, LLC) sold, transferred, and assigned to NCSLT 2006-3 all of the loans scheduled to the September 28, 2006 Pool Supplement, namely the Transferred Bank One Loans, including plaintiff's Loan. [Dkt. 28-5, PageID.515 – PageID.525].

8. As with the Credit Agreement and Note Disclosure Statement, the Schedule contains on the row listing and describing plaintiff's Loan the unique identifier specific to his Loan: 03885764 (in column "GUARREF"), along with other identfying information relating to plaintiff, including his social security number. [Dkt. 28-6, PageID.739; Dkt. 28-5, PageID.513].

9. In the Schedule, under the column "LOAN_DESC" is the identifier "DTC – Ed

---

[10] Chase entered into the Pool Supplement as the successor by merger to Bank One. Plaintiff's argument that his Loan was issued by Chase and could not have been included in an assignment of "Transferred Bank One Loans" is wrong. First, plaintiff acknowledges Bank One merged into Chase. Second, following the merger, Chase began issuing loans as the Program Lender, as contemplated by the NPA and, indeed, proven by the issuance of the Loan by Chase to plaintiff under Bank One's Education One Loan Program. *See* Dkt. 28-5, PageID.502. Through the Pool Supplement, Chase sold, transferred, and assigned certain loans identified on an electronic schedule and generally referred to as the "Transferred Bank One Loans." By virtue of its inclusion on that electronic schedule, plaintiff's Loan was one of the loans Chase sold, transferred, and assigned. These are undisputed facts, proven by the four corners of the related documents.

7

One – Undergraduate," which corresponds to the Credit Agreement and confirms plaintiff's Loan was issued under the Education One Undergraduate Loan Program and is a "Direct to Consumer" loan, which is why the Disbursement Check was issued directly to plaintiff rather than his school. [Dkt. 28-5, PageID.502].

10. On or about November 1, 2014, TSI received custody of the native .xls (Microsoft Excel) electronic file comprising the Schedule when the company assumed its role as Special Subservicer and Record Custodian. Luke Declaration, ¶ 19; *see also* Default Prevention and Collection Services Agreement ("TSI Agreement"), [Dkt. 28-3], ¶ 2.4(c) ("For this purpose, Special Servicer on behalf of the Trusts hereby appoints [TSI] as keeper of the applicable Trust's records of all [loans] that are the subject of [TSI] administration."), (Second Amendment) ¶ 2.3 ("Special Servicer shall cause the Servicers to provide to [TSI] all documents and information specified in the Servicing Agreements and/or Servicing Guidelines.").

11. Between April 15, 2008 and March 22, 2017, plaintiff made payments on the Loan. All payments were made to NCSLT 2006-3, through its prior servicer, the Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES"). [Dkt. 28-5, PageID.527 – PageID.539].

12. On or about October 2, 2017, plaintiff's Loan charged off after plaintiff failed to make any more payments and defaulted on the Loan. *Id.*; *see also id.*, PageID.545.

13. After charge off, on or about October 5, 2017, TSI began servicing plaintiff's Loan as Special Subservicer pursuant to the TSI Agreement. Luke Declaration, ¶ 20.

14. In December 2019, NCSLT 2006-3's attorneys, Johnson Mark LLC ("JM"), filed suit in Utah County, Case No. 199402928, against Snarr to recover the unpaid balance on the defaulted Loan. [*See* Dkt. 28-4].

15.     At JM's request, TSI employee Aaron Motin provided JM the Affidavit testifying to information regarding the Loan, including its disbursement, assignment to NCSLT 2006-3, and outstanding balance.  [Dkt. 28-5].

16.     Included in the exhibits to the Affidavit[11] was a .pdf printout of the electronic Schedule, limited only to the header and sole row of data on the Schedule relating to plaintiff's Loan (the "Schedule Excerpt").  Because the "BSSN" field contains plaintiff's Social Security Number, the first five digits of that field also were redacted for public filing.  [Dkt. 28-5, PageID.513; *see also* Luke Declaration, ¶¶ 21–22].

17.     On September 10, 2020, the Utah state court entered a default judgment against plaintiff, and plaintiff has not taken any action to vacate, amend, appeal, or otherwise seek relief from that judgment.  [*See* Dkt. 28-4].

IV.     ARGUMENT

A.     **Rule 12(d) And Summary Judgment Standard**

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  "When a 12(b)(6) motion is treated as one for summary judgment under Rule 56, 'all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'"  *Int'l Fid. Ins. Co. v La Porte Constr., Inc.*, No. 2:16-cv-00032, 2017 WL 876261, *5 (D. Utah Mar. 3, 2017) (quoting Fed. R. Civ. P. 12(d)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  And, although "[t]he movant bears the initial burden of making a prima facie

---

[11] Of the several exhibits to the Affidavit, plaintiff only challenges "the printed excerpt of the loan schedule included within Exhibit C to the Aaron Motin affidavit." Dkt. 59, PageID.1282.

demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law[,] a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim [but instead] may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (internal citations omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"Summary judgment is the 'put up or shut up' moment in a lawsuit." *Zisumbo v. Ogden Reg'l Med. Ctr.*, No. 1:10-CV-73 TS EJF, 2013 WL 1194717, *9 (D. Utah Mar. 22, 2013), *aff'd in part*, 801 F.3d 1185 (10th Cir. 2015) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir.2008)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (citing Fed. R. Civ. P. 56(e)).

To be sure, there is only one material fact in this case: whether the Schedule exists or not. As soon as TSI put forward the complete Schedule, it became plaintiff's burden to "set forth specific facts" disputing the accuracy or authenticity of the Schedule Excerpt.

### B. The Schedule Excerpt Is Accurate And Authentic

As discussed in TSI's prior briefing on the Motion, and as the Court recognized and plaintiff's counsel acknowledged, the Schedule Excerpt—if accurate and authentic—is dispositive of plaintiff's claims. The Schedule Excerpt's accuracy is corroborated and confirmed by the other exhibits to the Affidavit, which plaintiff does not challenge. For example, as noted above, the Credit Agreement, Note Disclosure Statement, and Schedule Excerpt all contain a unique identifier

specific to plaintiff's Loan: 03885764. [Dkt. 28-5, PageID.502; PageID.506; PageID.513]. Further, on the Schedule Excerpt under the column "LOAN_DESC" is the identifier "DTC – Ed One – Undergraduate," which corresponds to the Credit Agreement's designation of the Loan as an "Education One Undergraduate Loan" and is "Direct to Consumer," which is why the Disbursement Check was issued directly to plaintiff rather than his school. [Dkt. 28-5, PageID.502]. The $15,000 Loan Amount Requested on the Credit Agreement is also represented on the Schedule Excerpt, and the "BSSN" likewise matches plaintiff's Social Security Number on the Credit Agreement. [Dkt. 28-5, PageID.502]. The Loan Financial Activity Report similarly confirms the original loan balance (including Origination Fee) of $16,216.22, as reflected on the Note Disclosure Statement. [*Id.*, PageID.506 and PageID.539].

Further, the Luke Declaration filed herewith describes TSI's role as custodian of the electronic Schedule, including TSI's receipt and maintenance of that data. The Schedule Excerpt is exactly what it appears to be: a printout of the portion of the electronic Schedule data pertaining to plaintiff's Loan. Indeed, this Court has *already ruled as much* in another case holding the very same types of documents attached to the Affidavit are admissible on the testimony of a TSI employee. *See Taylor*, 2021 WL 673458 at *6–7. As Judge Jenkins held, "Mr. Luke testified through affidavit that he is the designated records custodian for NCSLT, that TSI is the designated records custodian of Mr. Taylor's loan, that Mr. Luke had personal knowledge of the business records maintained by TSI, and that the student loan records were 'created, compiled and recorded as part of a regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge.' Accordingly, Mr. Luke's testimony satisfies the requirements of Rule 803(6), and NCSLT's evidence of schedule 1 is admissible." *Id*.

11

### C. Plaintiff Has Presented No Evidence To Dispute The Accuracy Or Authenticity Of The Schedule Excerpt

Plaintiff's central allegation—the very lynchpin of his case—is that the Schedule to the Pool Supplement is somehow lost or missing. *See* Compl., ¶ 61. False. TSI has produced not only the Schedule Excerpt relating to plaintiff's Loan, [Dkt. 28-5, PageID.513], but also a printout of the *entire* electronic Schedule to the Pool Supplement, [Dkt. 28-6, PageID.551 – PageID.816]. Rather than address the Schedule Excerpt at issue, plaintiff has instead submitted several irrelevant exhibits from other matters where plaintiff was not a party in a transparent attempt to cast TSI as a bad actor. No rational trier of fact could find the Schedule is lost based on the exhibits offered by plaintiff. Simply put, plaintiff is hoping the Court will believe his false allegation about concocted and inauthentic documents because of alleged improper wrongdoing in other matters.

Acknowledging the exhibits he offers are not actually any evidence in support of his claims, plaintiff asserts that he "has raised a question of fact regarding whether Defendants have any admissible evidence to demonstrate they are an assignee of the debt" and that he has "met [h]is burden to survive summary judgment." Plaintiff's Supplemental Brief, PageID.1325. Incredibly, plaintiff goes on to allege "[t]he facts can be further flushed out through discovery in this action, *which has not yet occurred*." *Id*. (emphasis added). Plaintiff neglects to acknowledge that *he had a chance to complete the relevant discovery*, he could have deposed TSI or had his expert inspect the electronic Schedule, but he elected not to do so. Plaintiff cannot avoid summary judgment after not taking the discovery he claims he needs now to prove his claims, which the Court gave him leave to do under a set schedule with an established deadline.

Further, none of plaintiff's exhibits support his false contention that the Schedule is lost or was "concocted" by Defendants. *Id*., PageID.1324. Contrary to the Rules of Evidence, plaintiff offers these exhibits to argue that TSI may have acted wrongly in some other circumstances, so it

12

must have acted wrongly in this case. Such "other wrongs" evidence unrelated to plaintiff's Loan is inadmissible. Fed. R. Evid. 404(b)(1).

### 1. MA AOD and CFPB Consent Order

Plaintiff submits a September 7, 2021 Assurance of Discontinuance between TSI and Massachusetts (the "MA AOD") *solely* for the proposition that "TSI has continued its bad collection practices[.]" Plaintiff's Supplemental Brief, PageID.1332. But the MA AOD does not include any finding that TSI does not or did not possess plaintiff's loan documentation or the Schedule at issue here. And, on its face, the AOD is specifically limited to allegations between November 1, 2014 and April 25, 2016—over 4 years prior to the execution of the Motin Affidavit. Plaintiff does not even attempt to argue how the MA AOD relates to him or the Schedule he challenges. Likewise, plaintiff submits an administrative Consent Order between TSI and the Consumer Financial Protection Bureau (the "Consent Order") as evidence of missing documentation, but fails to explain how that document relates to *his loan documentation* (because it does not).

Nor are the AOD or the Consent Order evidence of anything, as they are settlement agreements that expressly deny any liability. *See*, *e.g.*, *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (refusing to admit consent decree as evidence of merits of challenges claims); *see also Montgomery v. SOMA Fin. Corp.*, 2013 WL 5775637, *1 n.3 (W.D. Wash. Oct. 24, 2013) ("With respect to the consent decrees, defendants argue that plaintiffs have failed to allege that any of the facts asserted in the consent judgment applies to plaintiffs in this case. The court agrees. Accordingly, the court does not take judicial notice of the factual assertions therein as applying to plaintiffs.").

### 2. Employee Affidavits

Similarly, plaintiff offers two affidavits of (disgruntled) former TSI employees without any explanation as to how these affidavits relate to his Loan or the Schedule, which they do not. Moreover, the affidavits contradict plaintiff's allegations regarding missing documents. [*See* Dkts. 71-6, PageID.1522 and 71-7, PageID.1572 ("It is critical to note that, after reviewing hundreds of files during my employment, I did not find any errors of missing documents in the records of the Trusts, including American Educations Services ('AES').")]. The affidavits are merely intended to smear TSI and bear no relevance to plaintiff's Loan or the Schedule.

### 3. BPA "Audit"

Plaintiff beats the same drum with a purported December 30, 2015 "Servicing Performance Review of Pennsylvania Higher Education Assistance Agency" by Boston Portfolio Advisors ("BPA" and the "BPA Audit"). As an initial matter, the "audit" was not undertaken by an impartial outside auditor. Rather, at the time of the audit, BPA, together with an equity owner of the Trusts, VCG Securities, LLC ("VCG"), was a member of Odyssey Education Resources, LLC ("Odyssey"). *See In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 441 (3d Cir. 2020). But, as the Third Circuit concluded, VCG improperly attempted to install Odyssey to perform certain servicing functions for the Trusts. *Id*. at 453 ("Accordingly, the Odyssey Agreement is invalid and, if so, the Odyssey Invoices are likely not payable."). In short, the BPA Audit was undertaken in an apparent attempt to wrest control of servicing functions for Odyssey. In other words, the audit was driven out of self-interest, not as an independent review.

Regardless of the motivations behind the BPA Audit, it bears no relevance to TSI, plaintiff, or his Loan and is offered only in an attempt to improperly disparage NCSLT 2006-3 and/or its servicers. The BPA Audit purports to include a review of "379 accounts." [Dkt. 71-2,

PageID.1403]. Plaintiff has not alleged any of the 379 audited accounts included his Loan. Nor can he. Indeed, as discussed, *supra*, **none of the documents relating to plaintiff's Loan are missing**. Thus, even if the BPA Audit correctly and impartially found documents relating to loans of other unrelated borrowers were not found during the audit, plaintiff cannot use the BPA Audit to demonstrate that documents relating to *his* Loan are missing. Nor does the BPA Audit speak to what documents TSI possesses in its servicing role.

### D. Plaintiff Conflates State Court Admissibility Defenses With His Present Burden To Prove The Schedule Excerpt Is Inaccurate Or Inauthentic

Now grasping for straws, plaintiff pivots from his claim that his Loan Schedule does not exist to allege that it, or the Schedule Excerpt, is *inadmissible—not inaccurate or inauthentic—* and attacks TSI's ability to lay a foundation for admissibility. In support, plaintiff references: (1) an Assurance of Discontinuance between TSI and the New York Attorney General (the "NY AOD"); (2) unauthenticated deposition testimony of TSI employee Bradley Luke from unrelated litigation; and (3) most recently, in a "Notice of Supplemental Authority," an April 6, 2022 Court of Appeals of Oregon decision applying *Oregon's* state evidentiary rules to a collection action involving another borrower's loan and National Collegiate Student Loan Trust 2006-2. Not only does plaintiff ignore the relevant issue—the challenge to the accuracy/authenticity of the Schedule he falsely alleged was lost—his admissibility contentions are wrong.

The Schedule to the Pool Supplement is an electronic .xls (Microsoft Excel) data file containing thousands of rows of information regarding the loans scheduled to the Pool Supplement. Obviously, it would be not only cumbersome, but a risk to the personal Social Security Number information of thousands of unrelated individuals, to attach a printout of the entire Schedule to every affidavit TSI provides in its Subservicing and record custodian roles. Accordingly, as permitted under the Federal Rules of Evidence regarding electronically stored

information, the Schedule Excerpt was attached to the Affidavit. *See* Fed. R. Evid. 1001(d) ("For electronically stored information, 'original' means any printout--or other output readable by sight--if it accurately reflects the information."). The Schedule Excerpt—what plaintiff refers to as the "Roster"—is a .pdf printout of the electronic Schedule, limited only to the header and row of data on the Schedule relating to plaintiff's Loan. [*Compare* Dkt. 28-6, PageID.739 (BSSN ending -4541, GUARREF ending -5764, etc.) *with* Dkt. 28-5, PageID.513 (same)]. But that excerpted status does not make it any less admissible.

Plaintiff argues the Schedule Excerpt is inadmissible because "Defendants lack knowledge of the original parties' recordkeeping practices." But that is not the relevant standard. "Rule 803(6) does not require a party introducing evidence of business records to produce a witness to the creation of such records. Rather, the rule requires the party introducing the records to lay a sufficient foundation by showing that it was the regular practice to base such records upon a transmission from a person with knowledge." *Taylor*, 2021 WL 673458, *14. TSI has done that through the Motin Affidavit attesting to the relevant chain of custody and the attached Schedule Excerpt. *Id*. at *7–8 (finding the loan schedule and other forms of proof proffered by TSI to meet the standard of Rule 803(6): "Plaintiffs further argue the schedule 1 excerpt produced by Defendants cannot be trusted.… The Court notes Defendants identified Mr. Luke as the custodian of records early in litigation, but Plaintiffs did not depose him.… Based on the affidavit of Mr. Luke, the Court finds Defendants' production of the schedule 1 excerpt was sufficient to prove Mr. Taylor's loan was part of the pool sold to NCSLT."). As in *Taylor*, this Court should dismiss plaintiff's baseless claims.

## V.   CONCLUSION

For the foregoing reasons, TSI respectfully requests the Court enter summary judgment in its favor and dismiss plaintiff's Complaint with prejudice.

DATED: May 19, 2022 　　　　　　　　　　*/s/ Justin H. Homes*
　　　　　　　　　　　　　　　　　　　　Bryan C. Shartle (pro hac vice, Dkt. 23)
　　　　　　　　　　　　　　　　　　　　Justin H. Homes (pro hac vice, Dkt. 24)
　　　　　　　　　　　　　　　　　　　　Bradley J. St. Angelo (pro hac vice, Dkt. 22)
　　　　　　　　　　　　　　　　　　　　SESSIONS, ISRAEL & SHARTLE, L.L.C.
　　　　　　　　　　　　　　　　　　　　3850 N. Causeway Blvd., Ste. 200
　　　　　　　　　　　　　　　　　　　　Metairie, LA 70002-7227
　　　　　　　　　　　　　　　　　　　　Telephone: (504) 828-3700
　　　　　　　　　　　　　　　　　　　　bshartle@sessions.legal
　　　　　　　　　　　　　　　　　　　　jhomes@sessions.legal
　　　　　　　　　　　　　　　　　　　　bstangelo@sessions.legal

　　　　　　　　　　　　　　　　　　　　George W. Burbidge II, #6503
　　　　　　　　　　　　　　　　　　　　W. Kevin Tanner, #8872
　　　　　　　　　　　　　　　　　　　　CHRISTENSEN & JENSEN, P.C
　　　　　　　　　　　　　　　　　　　　275 East 200 South, Suite 1100
　　　　　　　　　　　　　　　　　　　　Salt Lake City, Utah  84111
　　　　　　　　　　　　　　　　　　　　Telephone: (801) 323-5000
　　　　　　　　　　　　　　　　　　　　George.burbidge@chrisjen.com

　　　　　　　　　　　　　　　　　　　　***Attorneys for Transworld Systems Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2022, a copy of the foregoing Supplemental Memorandum was electronically filed with the Clerk of the Court, United States District Court for the District of Utah and served on all parties and counsel of record via CM/ECF.

　　　　　　　　　　　　　　　　　　　　*/s/  Justin H. Homes*